IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| NATHAN ROBERTS and FREEDOM TRUCK DISPATCH LLC, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>PROGRESSIVE PREFERRED INSURANCE COMPANY; PROGRESSIVE CASUALTY INSURANCE COMPANY; CIRCULAR BOARD LLC,<br><br>        Defendants. | Case No.: 1:23-cv-01597<br><br>JUDGE PATRICIA A. GAUGHAN<br>Magistrate Judge James E. Grimes, Jr.<br><br><br>**DEFENDANT CIRCULAR BOARD INC.'S MOTION TO DISMISS PLAINTIFFS' <u>CLASS-ACTION COMPLAINT</u>** |

Defendant Circular Board Inc. ("Hello Alice")* respectfully moves this Court under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss Plaintiffs' Class-Action Complaint for the reasons given in the accompanying Memorandum of Law.

Respectfully submitted,

*/s/ Dolores P. Garcia*
Michael N. Ungar (0016989)
Dolores Garcia (0085644)
Halden R. Schwallie (0093665)
ULMER & BERNE LLP
Skylight Office Tower
1660 West 2nd Street, Suite 1100
Cleveland, Ohio 44113-1406
Phone: (216) 583-7000
Facsimile: (216) 583-7001
Email: mungar@ulmer.com
Email: dgarcia@ulmer.com
Email: hschwallie@ulmer.com

---

*Hello Alice is simultaneously filing a motion to reform the caption to reflect that its corporate name is "Circular Board Inc." not "Circular Board LLC."

Neal Kumar Katyal (admitted pro hac vice)
David M. Foster (admitted pro hac vice)
Reedy C. Swanson (admitted pro hac vice)
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, D.C. 20004
Phone: (202) 637-5600
Facsimile: (202) 637-5910
Email: neal.katyal@hoganlovells.com
Email: david.foster@hoganlovells.com
Email: reedy.swanson@hoganlovells.com

*Attorneys for Circular Board Inc.*

## <u>TABLE OF CONTENTS</u>

**Page**

STATEMENT OF ISSUES TO BE DECIDED ........................................................................ vi

SUMMARY OF THE ARGUMENT ............................................................................... vii

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS ...................................................1

BACKGROUND ....................................................................................................1

LEGAL STANDARD................................................................................................2

ARGUMENT .......................................................................................................3

    I.   PLAINTIFFS FAIL TO ALLEGE CAUSATION UNDER ARTICLE III AND SECTION 1981……………………………………………………………………………………..3

    II.  THE CHALLENGED GRANT WAS NOT A CONTRACTUAL RELATIONSHIP........6

    III. APPLYING SECTION 1981 TO THE CHALLENGED GRANT PROGRAM WOULD VIOLATE THE FIRST AMENDMENT........................................................12

    IV. THE CHALLENGED GRANT PROGRAM WAS A VALID AFFIRMATIVE ACTION PROGRAM….............................................................................17

CONCLUSION....................................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*303 Creative LLC v. Elenis*,
  600 U.S. 570 (2023) ..............................................................................13, 14, 15, 16

*Am. All. for Equal Rts. v. Fearless Fund Mgmt., LLC*,
  No. 23-CV-3434, 2023 WL 6295121 (N.D. Ga. Sept. 27, 2023) ..............................10, 11, 15

*Am. All. for Equal Rts. v. Fearless Fund Mgmt., LLC*,
  No. 23-13138, 2023 WL 6520763 (11th Cir. Sept. 30, 2023) ..........................................15, 16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................................3

*Ashwander v. Tenn. Valley Auth.*,
  297 U.S. 288 (1936) ......................................................................................................17

*Boy Scouts of Am. v. Dale*,
  530 U.S. 640 (2000) ..............................................................................12, 13, 14, 15

*Brintley v. St. Mary Mercy Hosp.*,
  545 F. App'x 484 (6th Cir. 2013) ...................................................................................6

*Buckley v. Valeo*,
  424 U.S. 1 (1976) ...........................................................................................................12

*California v. Texas*,
  141 S. Ct. 2104 (2021) .....................................................................................................3

*Carey v. Fedex Ground Package Sys., Inc.*,
  321 F. Supp. 2d 902 (N.D. Ohio 2004) ..........................................................................11

*Carisle v. T&R Excavating, Inc.*,
  704 N.E.2d 39 (Ohio Ct. App. 1997) ..................................................................7, 8, 9, 10

*Carney v. Adams*,
  141 S. Ct. 493 (2020) ..................................................................................................5, 6

*Century 21 v. McIntyre*,
  472 N.E.2d 534 (Ohio Ct. App. 1980) ...........................................................................10

*Citizens United v. FEC*,
  558 U.S. 310 (2010) ..................................................................................................12, 16

*Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*,
  140 S. Ct. 1009 (2020)..................................................................................................4

*Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*,
  6 F.4th 1247 (11th Cir. 2021), *cert denied sub nom. Coral Ridge Ministries
  Media, Inc. v. S. Poverty L. Ctr.*, 142 S. Ct. 2453 (2022)................................. *passim*

*Doe v. Kamehameha Schs.*,
  470 F.3d 827 (9th Cir. 2006) (en banc) ....................................................................17

*Domino's Pizza, Inc. v. McDonald*,
  546 U.S. 470 (2006)..............................................................................................6, 10

*Ferrill v. Parker Gr., Inc.*,
  168 F.3d 468 (11th Cir. 1999) ...................................................................................17

*Fla. Carpenters Reg'l Council Pension Plan v. Eaton Corp.*,
  964 F. Supp. 2d 875 (N.D. Ohio 2013), *aff'd sub nom. In re KBC Asset Mgmt.
  N.V.*, 572 F. App'x 356 (6th Cir. 2014) ...............................................................2, 3, 6

*Glennon v. Dean Witter Reynolds, Inc.*,
  83 F.3d 132 (6th Cir. 1996) ........................................................................................7

*Gratz v. Bollinger*,
  539 U.S. 244 (2003)......................................................................................................5

*Helle v. Landmark, Inc.*,
  472 N.E.2d 765 (Ohio Ct. App. 1984) .......................................................................11

*Hurley v. Irish-American Gay, Lesbian, and Bisexual Group of Boston*,
  515 U.S. 557 (1995)..............................................................................................14, 15

*Imbrogno v. Mimrx.com, Inc.*,
  No. 03AP-345, 2003 WL 22707792 (Ct. App. Ohio Nov. 18 2003)......................10, 11

*Jackson v. Clinic Sec. & Logistics, Inc.*,
  No. 22-cv-985, 2023 WL 2734669 (N.D. Ohio Mar. 31, 2023).................................4

*Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*,
  138 S. Ct. 2448 (2018)................................................................................................15

*Johnson v. Transportation Agency, Santa Clara County*,
  480 U.S. 616 (1987)............................................................................................. *passim*

*Kimble v. Marvel Ent., LLC*,
  576 U.S. 446 (2015)....................................................................................................18

iii

*Lemaster v. Lawrence Cnty.*,
    65 F.4th 302 (6th Cir. 2023) ................................................................4, 5

*Lindsay v. Yates*,
    498 F.3d 434 (6th Cir. 2007) ....................................................................6

*Meriwether v. Hartop*,
    992 F.3d 492 (6th Cir. 2021) ..................................................................13

*Moye v. Chrysler Corp.*,
    465 F. Supp. 1189 (E.D. Mo. 1979), *aff'd* 615 F.2d 1365 (8th Cir. 1979) ..............................8

*Ohayon v. Safeco Ins. Co. of Ill.*,
    747 N.E.2d 206 (Ohio 2001).....................................................................7

*Pelcha v. MW Bancorp, Inc.*,
    988 F.3d 318 (6th Cir. 2021), *cert. denied sub nom. Pelcha v. Watch Hill
    Bank*, 142 S. Ct. 461 (2021).....................................................................5

*Planet Aid v. City of St. Johns*,
    782 F.3d 318 (6th Cir. 2015) ..................................................................13

*Playland Park Inc. v. Quality Mold, Inc.*,
    No. 26039, 2012 WL 1549915 (Ohio Ct. App. May 2, 2012)...................................8

*Ramos v. Louisiana*,
    140 S. Ct. 1390 (2020)..........................................................................18

*Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*,
    487 U.S. 781 (1988)..............................................................................12

*Runyon v. McCrary*,
    427 U.S. 160 (1976)..............................................................................16

*Sowry v. Todd*,
    213 N.E.3d 212 (Ohio Ct. App. 2023), *appeal not allowed* 215 N.E.3d 563
    (Ohio 2023).............................................................................8, 10, 11

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*,
    600 U.S. 181 (2023)..........................................................................18, 19

*Taverns for Tots, Inc. v. City of Toledo*,
    341 F. Supp. 2d 844 (N.D. Ohio 2004)......................................................12

*Torres v. Precision Indus., Inc.*,
    938 F.3d 752 (6th Cir. 2019) ..................................................................17

*United Steelworkers of Am., AFL-CIO-CLC v. Weber*,
    443 U.S. 193 (1979)............................................................................................17

*Williams v. Ormsby*,
    966 N.E.2d 255 (Ohio 2012)..............................................................................7

*Williams v. Richland Cnty. Child. Servs.*,
    489 F. App'x 848 (6th Cir. 2012) ......................................................................6

*Wright v. Bank of Am., N.A.*,
    No. 10-CV-771, 2012 WL 1123832 (S.D. Ohio Apr. 3, 2012), *aff'd* 517 F.
    App'x 304 (6th Cir. 2013) .................................................................................9

*Yeager v. Gen. Motors Corp.*,
    265 F.3d 389 (6th Cir. 2001) .........................................................................3, 5

*Yeager v. Gen. Motors Corp.*,
    67 F. App'x 335 (6th Cir. 2003) .......................................................................3

*Yedlick v. Comm'r, IRS*,
    No. 19 CV 2139, 2020 WL 364245 (N.D. Ohio Jan. 21, 2020) ......................2

**Statutes**

42 U.S.C. § 1981 ................................................................................................... *passim*

42 U.S.C. § 1981(a) ............................................................................................ viii, 6

42 U.S.C. § 1981(b) .................................................................................................6

42 U.S.C. § 1983 ....................................................................................................13

**Rules**

Fed. R. Civ. P. 8 ...................................................................................................5, 6

Fed. R. Civ. P. 12 ....................................................................................................1, 6

Fed. R. Civ. P. 12(b)(1) .........................................................................................1, 2

Fed. R. Civ. P. 12(b)(6).........................................................................................1, 2

**Other Authorities**

Restatement (Second) of Contracts § 71 cmt. c (Am. L. Inst. 1981).............................7

3 *Williston on Contracts* § 7:18 (4th ed. 1992)...........................................................8

## <u>STATEMENT OF ISSUES TO BE DECIDED</u>

Plaintiffs Nathan Roberts and Freedom Truck Dispatch LLC allege that Defendants Hello Alice and Progressive Insurance Company violated the Civil Rights Act of 1866, 42 U.S.C. § 1981, by making grants available for Black owned businesses.

*Issue One*:    Whether Plaintiffs lack Article III standing or fail to state a claim under Section 1981 because they have not pled that race was a "but for" cause of their failure to qualify for the challenged grant program.

*Issue Two*:    Whether the challenged grant program involves a "contract" subject to Section 1981 or is instead a gratuitous promise.

*Issue Three*:    Whether applying Section 1981 to a grant program adopted with the express purpose of combatting sociopolitical inequalities would violate the First Amendment.

*Issue Four*:    Whether the grant program is valid as a voluntary, private affirmative action program under *Johnson v. Transportation Agency, Santa Clara County*, 480 U.S. 616 (1987).

## SUMMARY OF THE ARGUMENT

Plaintiffs' claims are part of a coordinated—and highly publicized—campaign to end the private sector's efforts to combat the lingering economic effects imposed by racism. Plaintiffs contend that the Civil Rights Act of 1866—enacted to help remedy the evils of slavery—somehow prohibits private companies from choosing to make charitable donations available to Black owned businesses. Specifically, they claim that Defendants Progressive Insurance Company and Hello Alice—an online resource platform that facilitates grants to small businesses—violated the Civil Rights Act by offering ten grants for Black owned businesses to use toward the purchase of a commercial vehicle.

This lawsuit is wrong in every relevant respect. Hello Alice's mission is to help small businesses throughout this country, and Hello Alice vehemently opposes racial discrimination. Indeed, Hello Alice's core mission is to *combat* the effects that generations of pernicious racism have had on America's capital infrastructure. Federal law does not compel purely private actors like Hello Alice, when choosing how and to whom they will donate money, to blind themselves to the centuries of invidious racism that have produced substantial existing racial inequities in access to capital.

Plaintiffs' complaint is legally defective in multiple independent respects. *First*, Plaintiffs fail to allege that the race-based eligibility requirement was a "but for" cause of their inability to receive a grant. The grant program had multiple other objective eligibility requirements that had nothing to do with race, and Plaintiffs have not alleged that they met any of those criteria, meaning that they fail to allege both standing under Article III and the essential causation element of a Section 1981 claim. *Second*, the statutory provision that Plaintiffs have sued under, 42 U.S.C. § 1981(a), applies only to the right "to make and enforce contracts." But the grant program alleged involves no contract at all—it is merely a gratuitous promise, because Plaintiffs have alleged no

benefit to Hello Alice or Progressive.  *Third*, applying Section 1981 to this grant program would violate Hello Alice's First Amendment right to freedom of speech.  Its altruistic giving is protected First Amendment expression under long-settled precedent, and it cannot be compelled to make grants out of sync with its political and economic beliefs.  *Fourth*, this program is lawful as a *bona fide* affirmative action program under the Supreme Court's opinion in *Johnson v. Transportation Agency, Santa Clara County*, 480 U.S. 616 (1987).  For each of these reasons, Plaintiffs' misguided attempt to stifle Hello Alice's charitable grantmaking should be dismissed.

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Defendants submit this memorandum of law in support of their motion to dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Plaintiffs' class-action complaint.

## BACKGROUND

Hello Alice is an online resource platform that, among other things, facilitates providing grants to small businesses. *See* Compl. ¶ 8.[1] It has helped "over one million small businesses access capital." Compl. Ex. 4 at 2. Hello Alice is institutionally committed to equitable access to capital for women, people of color, members of the LGBTQ+ community, veterans, entrepreneurs with disabilities, and any entrepreneur with a good idea. *Id.* at 4. Hello Alice's platform thus hosts grants available to "small business owners of all backgrounds and ethnicities." *Id.* at 3.

In May 2023, Hello Alice helped Progressive Insurance Company, with Progressive's decision to offer ten grants of up to $25,000 each for "Black-owned small businesses to use toward the purchase of a commercial vehicle." Compl. ¶¶ 8, 11-12, 16. Hello Alice's role was "[t]o administer the grant program." Compl. Ex. 4 at 2. The stated goal of the grant program was "to alleviate [the] challenge" resulting from demonstrated "inequities" that "have made it harder for Black entrepreneurs to access capital." Compl. Ex. 3 at 2. Press materials explained the motivation for the grant, stating that although "20 percent of Black Americans start businesses, only four percent of these businesses survive the startup stage due in large part to the difficulty Black business owners have in accessing financing." Compl. Ex. 4 at 2 (citing a study by McKinsey & Company).

---

[1] For the limited purposes of this motion, Hello Alice treats all allegations in the complaint as true as required by Rule 12.

The Progressive grants also had numerous eligibility criteria unrelated to race. *See* Compl. Ex. 3 at 3. Applicants had to be a for-profit business with ten or fewer employees. *Id.* The businesses' annual gross revenue had to be less than $5 million. *Id.* Additionally, applicants had to demonstrate "need for a qualifying commercial vehicle" along with "a clear plan for growth as a result of this vehicle purchase." *Id.* Finally, applicants could not be "an independent contractor whose primary business is for a rideshare service . . . or third-party food delivery" service. *Id.*

Plaintiff Nathan Roberts, a White man, is the sole owner and member of Plaintiff Freedom Truck Dispatch LLC. Compl. ¶¶ 10, 17. Roberts received an email from Progressive advertising the grant and "began filling" out the application before "he came to [the] part of the application that made clear that the grants were available only to black-owned businesses." *Id.* ¶ 19. At that point, Roberts "closed the application and did not apply because he is white and his business is white-owned." *Id.* Less than a day later, Roberts forwarded this email to the America First Legal Foundation. Compl. Ex. 1 at 1.

Plaintiffs sued Progressive and Hello Alice, alleging a single cause of action arising under the Civil Rights Act of 1866, 42 U.S.C. § 1981. *See* Compl. ¶¶ 36-37. They seek damages and injunctive relief on behalf of themselves and a putative class including "all individuals who were or are 'able and ready' to apply to Progressive's . . . grant program and have been or would be subjected to adverse racial discrimination" as a result of applying. *See id.* ¶¶ 26, 38.

## LEGAL STANDARD

Rule 12(b)(6) directs the Court to dismiss an action "if the complaint does not state a claim upon which relief can be granted." *Fla. Carpenters Reg'l Council Pension Plan v. Eaton Corp.*, 964 F. Supp. 2d 875, 883 (N.D. Ohio 2013), *aff'd sub nom. In re KBC Asset Mgmt. N.V.*, 572 F. App'x 356 (6th Cir. 2014). Rule 12(b)(1) similarly directs dismissal where complaint on its face fails to allege facts sufficient to establish Article III standing. *Yedlick v. Comm'r, IRS*, No. 19 CV

2139, 2020 WL 364245, at *2 (N.D. Ohio Jan. 21, 2020).  In considering either type of motion, although "the court must construe the complaint in the light most favorable to the nonmoving party" and "accept all factual allegations as true," it need not "accept as true mere legal conclusions unsupported by factual allegations." *Fla. Carpenters*, 964 F. Supp. 2d at 883 (citation omitted).  "Threadbare recitals . . . supported by mere conclusory statements" are insufficient. *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

<u>**ARGUMENT**</u>

**I.     PLAINTIFFS FAIL TO ALLEGE CAUSATION UNDER ARTICLE III AND SECTION 1981.**

A plaintiff must plead "but for" causation both to establish Article III standing and to state a claim under Section 1981.  This means a plaintiff must plead that "but for" the alleged racial discrimination, he would not have suffered the deprivation alleged in the complaint.  Plaintiffs have not done so, because they have not even alleged that they met the threshold, non-racial eligibility requirements for the grant.  Therefore, they cannot claim that they would have been eligible to receive a grant "but for" the Black owned business requirement.

Article III requires a plaintiff seeking to establish standing in federal court to show that any injury is "'fairly traceable' to the 'allegedly unlawful conduct' of which they complain." *California v. Texas*, 141 S. Ct. 2104, 2113 (2021).  Here, the traceability requirement means that "when a white male is alleging 'reverse' discrimination, he must prove that 'but for'" the challenged race-based element, "he would have been considered" for the program. *Yeager v. Gen. Motors Corp.*, 67 F. App'x 335, 338 (6th Cir. 2003) (per curiam) (quoting *Yeager v. Gen. Motors Corp.*, 265 F.3d 389, 395 (6th Cir. 2001)).

Similarly, on the merits, the Supreme Court has recognized that Section 1981 presents no "exception" to the usual rules of causation, therefore a Section 1981 plaintiff "must initially plead

and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020). Concretely, this requires considering "the counterfactual—what would have happened if the plaintiff had been" of a different race? *Id.* at 1015. "[I]f the defendant would have responded the same way to the plaintiff even if he had been" of a different race, "an ordinary speaker of English would say that the plaintiff received the 'same' legally protected right" and therefore that no actionable discrimination has occurred. *Id.* The but-for causation test "is not met if the plaintiff would have suffered the harm" complained of "even if the plaintiff had" been of a different race. *Lemaster v. Lawrence Cnty.*, 65 F.4th 302, 309 (6th Cir. 2023); *accord Jackson v. Clinic Sec. & Logistics, Inc.*, No. 22-cv-985, 2023 WL 2734669, at *3 (N.D. Ohio Mar. 31, 2023) (similar).

Plaintiffs here fail to plead the threshold requirement of standing demanded by Article III and Section 1981. The complaint's exhibits make clear that there were at least five non-race-related eligibility criteria for the grants: (1) having ten or fewer employees; (2) having less than $5 million in annual gross revenue; (3) having a demonstrated need for a qualifying commercial vehicle to run the business; (4) having a clear plan for growth as a result of the vehicle purchase; and (5) not being an independent contractor providing a rideshare or food delivery service. Compl. Ex. 3 at 3. Applicants who did not meet each of these criteria would not receive grants, no matter their race. *See id.* ("Applicants must meet all of the below criteria to be eligible for this opportunity[.]").

Plaintiffs have not alleged that they would qualify under *any* of those criteria. These requirements are not onerous, but Plaintiffs have utterly failed to meet them. There is nothing in the barebones complaint that would allow the reader to infer anything about Plaintiffs' number of employees, gross annual revenue, or even the nature of their customers and the services they

provide.[2]  Plaintiffs likewise do not allege that they had a "demonstrated need" or "plan for growth" in light of a possible truck purchase—much less include factual allegations about such a plan to make it plausible as Rule 8 requires.  Plaintiffs also fail to allege any facts making it likely that they *would* have been selected as one of the ten grantees on the merits, and—as to any claims for future relief—Plaintiffs entirely fail to allege that Progressive and Hello Alice intend to repeat this program in the future.  *See* Compl. Ex. 3 at 2 (noting application deadline was June 2, 2023).

Absent those allegations, this Court cannot conclude that "the plaintiff would [not] have suffered the harm even" without the Black ownership criterion, or that any prospective relief would be appropriate.  *Lemaster*, 65 F.4th at 309.  That is fatal to Plaintiffs' complaint both as a matter of Article III standing and under the causation elements of Section 1981.  *Id.*; *see also Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 323-324 (6th Cir. 2021) ("satisfying but-for cause requires plaintiffs to show that [race] had a 'determinative influence on the outcome'" (citation and emphasis omitted)), *cert. denied sub nom. Pelcha v. Watch Hill Bank*, 142 S. Ct. 461 (Mem.) (2021); *Yeager*, 265 F.3d at 396.

The complaint suggests that Plaintiffs have adequately pled Article III standing so long as they were "able and ready to apply" for a grant.  Compl. ¶ 20 (citing *Carney v. Adams*, 141 S. Ct. 493, 499-500 (2020), and *Gratz v. Bollinger*, 539 U.S. 244, 261 (2003)).  Plaintiffs cite no precedent that this standard could be used to satisfy the causation element of a Section 1981 claim.  And, even with regard to standing, the Supreme Court did not suggest in either *Carney* or *Gratz* that merely being willing to apply for a program conferred standing.  On the contrary, *Carney* reinforced the rule that plaintiffs must provide "evidence" to support the claim that they were likely

---

[2] The complaint alleges Roberts is the "sole owner and member" of Freedom Truck Dispatch, Compl. ¶ 10, but the number of "members" comprising an LLC does not disclose anything about the company's number of employees.

to be under consideration for a program when raising a discrimination claim. 141 S. Ct. at 502. Thus, the Court rejected an attorney's claims that he was "'able and ready' to apply in the imminent future" for a job as a judge where, among other things, he had consistently declined to apply for vacancies when they were available and had also apparently retired. *Id.* at 500, 503. Finally, to the extent Plaintiffs intend for their statement that they were "able and ready to apply" to convey that they in fact qualified under all the eligibility criteria listed above, that statement falls far short of the factual allegations that Plaintiffs are obligated to include under Rule 8. *See Fla. Carpenters*, 964 F. Supp. 2d at 883 ("[t]hreadbare recitals" and "conclusory statements[] do not suffice" under Rule 12 (citation omitted)).

## II.     THE CHALLENGED GRANT WAS NOT A CONTRACTUAL RELATIONSHIP.

Plaintiffs' claims likewise fail because they have not alleged any contractual relationship that they were precluded from forming. Section 1981 governs the right "to make and enforce contracts," and directs that all persons should have "the full and equal benefit" of that right "as is enjoyed by white citizens." 42 U.S.C. § 1981(a). The statute defines "the term 'make and enforce contracts'" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits . . . of the contractual relationship." *Id.* § 1981(b). Consistent with that plain text, the Supreme Court has recognized that "[a]ny claim brought under § 1981 . . . must initially identify" racial discrimination that has "impaired [a] 'contractual relationship'" or "block[ed] the creation of a contractual relationship." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006).

Plaintiffs have failed to make the required allegation of "some contractual right that the defendant blocked or impaired." *Williams v. Richland Cnty. Child. Servs.*, 489 F. App'x 848, 851 (6th Cir. 2012). Courts look to state law to determine whether such a relationship would be formed. *See Lindsay v. Yates*, 498 F.3d 434, 442 (6th Cir. 2007); *Brintley v. St. Mary Mercy Hosp.*, 545 F.

App'x 484, 487-488 (6th Cir. 2013).  This Court therefore looks to Ohio law to determine whether Plaintiffs *would have* formed a contractual relationship with Hello Alice or Progressive had they been awarded a grant, as both Plaintiffs and Progressive are Ohio-based.  *See Glennon v. Dean Witter Reynolds, Inc.*, 83 F.3d 132, 136 (6th Cir. 1996) (courts in federal question cases follow choice of law rules of forum state); *Ohayon v. Safeco Ins. Co. of Ill.*, 747 N.E.2d 206, 211 (Ohio 2001) (noting Ohio follows the Second Restatement and focuses on "the place of contracting, the place of negotiation, the place of performance, the location of the subject matter, and the domicile of the contracting parties"); Compl. ¶¶ 4-7 (stating residency of Plaintiffs and Progressive Defendants).

Under Ohio law, "[g]ratuitous promises are not enforceable as contracts, because there is no consideration." *Williams v. Ormsby*, 966 N.E.2d 255, 259 (Ohio 2012) (quoting *Carisle v. T&R Excavating, Inc.*, 704 N.E.2d 39, 43 (Ohio Ct. App. 1997)).  "A written gratuitous promise, even if it evidences an intent by the promisor to be bound, is not a contract."  *Carlisle*, 704 N.E.2d at 43.  "Whether there is consideration at all"—and, therefore, whether a particular document is a "written gratuitous promise" or a contract—is a question of law "proper . . . for a court" to resolve. *Id.*

Importantly, "conditional gratuitous promises, which require the promisee to do something before the promised act" are likewise "not enforceable as contracts."  *Id.* (citing Restatement (Second) of Contracts ("R.2d Contracts") § 71 cmt. c (Am. L. Inst. 1981).  That is, even when "the terms of the gift" technically "impose a burden on the donee as well as the donor," a promise to make a gift does not become a contract.  R.2d Contracts § 71 cmt. c.  And, from the donor's perspective, "[a] desire to help cannot be consideration for a contract; rather, it is merely a motive."  *Carlisle*, 704 N.E.2d at 43.

*Williston on Contracts* provides an archetypal example of a conditional gratuitous promise—one that has been adopted by Ohio courts.  *Carlisle*, 704 N.E.2d at 45 & n.1 (citing 3 *Williston on Contracts* § 7:18 (4th ed. 1992)).  In the example, "a rich man offer[s] to a poor man that, if the poor man would go around the corner to a clothing store, the rich man would permit him to buy a coat on his credit."  *Id.* at 45 n.1.  "[E]ven though the poor man's walk to the store may be induced by, and taken in reliance on, the promise, it would be unreasonable for either man to understand the walk to the store as 'consideration' or as the price of the promise."  *Id.*  The walk "would bring no benefit to the rich man, and would obviously be for the purpose of enabling the poor man to receive the gift."  *Id.*

In line with this classic example, Ohio cases have consistently found that promises to give a gift—even promises that limit the nature of the gift, or that entail some action on the part of the recipient—are not contracts.  *See, e.g.*, *Carlisle*, 704 N.E.2d at 45-46 (a "promise to provide the excavation and site work services for [a] preschool at no cost was a gratuitous promise," even though the recipient had agreed to pay the costs of materials); *Sowry v. Todd*, 213 N.E.3d 212, 223 (Ohio Ct. App. 2023) (settlement agreement was gratuitous even where both parties purported to agree to drop litigation because the defendant had no "counterclaim or potential counterclaim" and so provided no benefit to the plaintiff), *appeal not allowed* 215 N.E.3d 563 (Ohio 2023); *Playland Park Inc. v. Quality Mold, Inc.*, No. 26039, 2012 WL 1549915, at *1, *3 (Ohio Ct. App. May 2, 2012) (promise to pay costs associated with rezoning was gratuitous where promisor told promisee to "go ahead and do the work").

The grant program alleged here involves a gratuitous promise, not a contract.  *See Moye v. Chrysler Corp.*, 465 F. Supp. 1189, 1190 (E.D. Mo. 1979) (Section 1981 does not a company's choice "to voluntarily confer the benefit of [a charitable] payroll deduction plan" on a particular

organization), *aff'd* 615 F.2d 1365 (8th Cir. 1979) (unpublished table opinion).  According to the complaint, the Progressive grant would offer ten businesses up to $25,000 "to use toward the purchase of a commercial vehicle."  Grant recipients submitted an application explaining how they met the criteria set for the grants—but even submitting an application did not guarantee that an applicant would receive a grant.  *See* Compl. Ex. 4 at 3.

The complaint identifies two things that Plaintiffs suggest are consideration: the requirement to "use the money toward the purchase of a commercial vehicle" and articulating "a clear plan for growth" as part of the application process.  Compl. ¶ 14.  Neither suffices because these requirements provide no *benefit* to Hello Alice (or Progressive).  Rather, these are simply conditions imposed on receiving the grant.  *See Carlisle*, 704 N.E.2d at 43.  Like the benefactor in the *Williston* example, Hello Alice simply directs grantees how to spend the money (on a truck instead of on a coat) and how to apply for the money (fill out a form).  *Id.* at 45 n.1.  The application form is the digital equivalent of the walk to the store—and is far less burdensome than the condition of providing thousands of dollars in material costs found not to be consideration in *Carlisle*.  *Id.* at 45-46.

Critically, the complaint does not allege that Hello Alice or Progressive receives anything in return for the grant money.  *See* Compl. ¶¶ 11-14.  Nor is there any basis for the Court to draw such an inference.  Plaintiffs articulate no way that Progressive or Hello Alice would benefit from the truck that the business acquires, or from any "growth" the business achieves as a result.  *Cf. Wright v. Bank of Am., N.A.*, No. 10-CV-771, 2012 WL 1123832, at *4 (S.D. Ohio Apr. 3, 2012), *aff'd* 517 F. App'x 304 (6th Cir. 2013) (bank did not make enforceable contract when it allegedly promised to allow plaintiffs to keep personal property at residence subject to foreclosure because "Plaintiffs failed to give [the bank] anything in exchange").  On the contrary, the attachments make

clear that there is "[n]o purchase necessary," Compl. Ex. 3 at 3—ruling out any suggestion that Progressive would benefit from an insurance contract associated with the truck—and Plaintiffs do not offer any theory of how Hello Alice might benefit at all. And although Plaintiffs stress that there was in some sense "mutuality of obligation," Compl. ¶ 14, Ohio law is clear that purported mutuality of obligation is not sufficient unless there is *also* bargained-for consideration. *Sowry*, 213 N.E.3d at 223. And, to the extent Plaintiffs suggest that Progressive or Hello Alice will be generally pleased to see grantees succeed, that is exactly the kind of "motive" that *Carlisle* holds does not amount to consideration. 704 N.E.2d at 43. Because the grant program here lacks any consideration, it is not a contract and therefore cannot form the basis of a suit under Section 1981. *Domino's Pizza*, 546 U.S. at 476.

Despite these well-settled principles, a federal district court in Georgia evaluated a program that "awards $20,000 grants to small businesses owned by Black women" and concluded that the program amounted to a contract under Georgia law. *Am. All. for Equal Rts. v. Fearless Fund Mgmt., LLC*, No. 23-CV-3434, 2023 WL 6295121, at *5 (N.D. Ga. Sept. 27, 2023). The *Fearless Fund* district court was wrong on the law (and certainly did not purport to interpret Ohio law), but the grant program alleged here is also materially different from the one alleged in *Fearless Fund*.

On the law, the *Fearless Fund* court believed that the grant program before it was "a unilateral offer to contestants that they may accept by completing their entry." *Id.* But the court did not discuss the corollary principle that, when assessing whether a unilateral contract has been formed, the promise "is illusory" if "the promisor retains an unlimited right to determine the nature or extent of his performance." *Imbrogno v. Mimrx.com, Inc.*, No. 03AP-345, 2003 WL 22707792, at *2 (Ct. App. Ohio Nov. 18 2003) (citing *Century 21 v. McIntyre*, 472 N.E.2d 534 (Ohio Ct.

App. 1980)). In other words, an "apparent promise which according to its terms makes performance optional with the promisor . . . is in fact no promise." *Id.* (citation omitted).

Here, that principle—well-settled under Ohio law—defeats any claim that this grant program was a unilateral promise. The exhibits to the complaint make clear that Hello Alice was under no obligation to award any grants. Rather, application would "be reviewed by a committee according to the criteria." Compl. Ex. 4 at 3. If the committee did not feel any businesses were worthy of a grant—including for failure to articulate a clear plan for growth—they could simply decline to make any awards. *See id.* Nothing in the complaint or exhibits promises to applicants that any winners would be chosen. Performance was entirely "optional with the promisor." *Inmbrogno*, 2003 WL 22707792, at *2 (citation omitted).

In any event, as the *Fearless Fund* court appeared to recognize, even a unilateral contract must still be supported by consideration. *See Helle v. Landmark, Inc.*, 472 N.E.2d 765, 776 (Ohio Ct. App. 1984); *Carey v. Fedex Ground Package Sys., Inc.*, 321 F. Supp. 2d 902, 921 (N.D. Ohio 2004). In *Fearless Fund*, the court believed this requirement to be satisfied because the grantee had to "relinquish rights to the Foundation" as part of the published rules. 2023 WL 6295121, at *5. In contrast, the complaint here contains no similar allegation, nor does it allege that Progressive or Hello Alice receive any benefits from the grants at issue here. *See* Compl. ¶ 14. Moreover, it is not the case that any purported relinquishing of rights automatically constitutes consideration. For example, in *Sowry*, the Ohio Court of Appeals rejected the argument that a settlement with a mutual agreement to drop claims constituted consideration when the defendant had no "counterclaim or potential counterclaim" against the plaintiff. 213 N.E.3d at 223. Because the complaint alleges no consideration, Plaintiffs have not alleged a contractual relationship governed by Section 1981 and thus fail to state a claim.

11

III.    **APPLYING SECTION 1981 TO THE CHALLENGED GRANT PROGRAM WOULD VIOLATE THE FIRST AMENDMENT.**

Even if the Court concludes that, by its terms, Section 1981 applies to the challenged grant program, the case must still be dismissed because applying Section 1981 to Hello Alice in this context would violate First Amendment guarantees of freedom of speech and expression.

The attachments to the complaint make clear that the express purpose of the grant program is to express disapproval of—and to emphasize the importance of remedying—the "inequities" that "have made it harder for Black entrepreneurs to access capital."  Compl. Ex. 3 at 2; *see also* Compl. Ex. 4 at 2 ("With the Driving Business Forward grant program, Progressive is extending support to help close these gaps for Black entrepreneurs and elevate their businesses.").  "[D]onating money qualifies as expressive conduct."  *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247, 1254 (11th Cir. 2021), *cert denied sub nom. Coral Ridge Ministries Media, Inc. v. S. Poverty L. Ctr.*, 142 S. Ct. 2453 (Mem.) (2022); *see also Taverns for Tots, Inc. v. City of Toledo*, 341 F. Supp. 2d 844, 855 (N.D. Ohio 2004) (recognizing "giving money to charity as a form of speech or expression").  These donations clearly involve "some form of expression" regarding the historical conditions that led to the current inequities, and the vital importance of remedying those problems.  *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000).  Alternatively, the grants here are a form of "political speech."  *Citizens United v. FEC*, 558 U.S. 310, 342 (2010).  As a charitable grant directed specifically at sociopolitical inequities in America's capital infrastructure, the grants are one of those "forms of communication made possible by the giving and spending of money" that "involve speech alone."  *Buckley v. Valeo*, 424 U.S. 1, 16 (1976) (per curiam).

Viewed as either expressive conduct or political speech, the grants trigger the protections of the First Amendment.  *See Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 788-

12

801 (1988) (holding the First Amendment protects various aspects of a charitable organization's business operations given the burdens those restrictions imposed on charitable giving); *Planet Aid v. City of St. Johns*, 782 F.3d 318, 326 (6th Cir. 2015) ("speech regarding charitable giving and solicitation is entitled to strong constitutional protection").  The First Amendment therefore prohibits plaintiffs from using the courts to alter the sociopolitical message that a private party conveys through the terms on which it offers monetary donations.  "The First Amendment protects 'the right to speak freely and the right to refrain from speaking at all.'"  *Meriwether v. Hartop*, 992 F.3d 492, 503 (6th Cir. 2021).  The government therefore "may not compel affirmation of a belief with which the speaker disagrees," and when it "tries to do so anyway, it violates this 'cardinal constitutional command.'"  *Id.* (citations omitted).  Because the "choice of what charities are eligible to receive donations" is part and parcel of the expression involved in this grant program, the government cannot dictate the terms on which the donor chooses to offer the grant.  *Coral Ridge*, 6 F.4th at 1255; *see also Dale*, 530 U.S. at 653 (noting courts must "give deference to an association's assertions regarding the nature of its expression," as well as "give deference to an association's view of what would impair its expression").

The First Amendment's prohibition on compelling speech extends to applying general non-discrimination laws like Section 1983 to expressive conduct or political speech.  The Supreme Court's recent opinion in *303 Creative LLC v. Elenis*, 600 U.S. 570 (2023), illustrates the rule. *303 Creative* recognized that the First Amendment prohibits seeking "to compel a person to speak its message . . . or to force an individual to include other ideas with his own speech that he would prefer not to include."  *Id.* at 586.  The Court applied that rule in the context of website designer, holding that Colorado's general anti-discrimination provision—which covers sexual orientation—could not be used to compel the provider to design a website for a same-sex marriage.  *Id.* at 588.

The Court held that "no public accommodations law is immune from the demands of the Constitution" and therefore could not be used "to compel speech." *Id.* at 592.

*303 Creative* built on principles from *Hurley v. Irish-American Gay, Lesbian, and Bisexual Group of Boston*, 515 U.S. 557 (1995), and *Boy Scouts of America v. Dale*. *Hurley* held that Massachusetts's public accommodations law could not be used to force parade organizers to include a group whose inclusion would amount to "alter[ing] the expressive content of their parade." 515 U.S. at 572-573. The Court emphasized the right of one engaged in protected expressive conduct "to tailor the speech" and avoid "endorsement . . . the speaker would rather avoid." *Id.* at 573. *Dale* similarly held that the Boy Scouts could not be compelled by public accommodation laws to include a gay scoutmaster, whose inclusion "would significantly affect its expression" in the form of teaching against homosexuality. 530 U.S. at 656. *Dale* recognized that where enforcing such non-discrimination laws would "materially interfere with the ideas that the organization sought to express," such laws cannot be constitutionally applied. *Id.* at 657.

The collective teaching of these cases is clear: Where the purpose of an altruistic grant is to express disapproval of and remedy the pernicious effects of racism, the First Amendment prohibits using Section 1981 to interfere with the message a donor chooses to send. A contrary rule would "modify the content of" the donor's speech," *Coral Ridge*, 6 F.4th at 1256, or "deny speakers the right 'to choose the content of [their] own message[s],'" *303 Creative*, 600 U.S. at 592 (citation omitted). Here, compelling Hello Alice to expand the terms of its grant would dilute its message beyond recognition, precluding it from conveying its message about existing racial inequalities in the market. The First Amendment does not permit a person engaged in speech or expressive conduct to be "shanghaied for [such] an unwanted voyage." *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2466 (2018).

The district court in *Fearless Fund* recently reached a similar conclusion when denying a preliminary injunction.  The court recognized that, through the grants at issue, the defendant "clearly intends to convey a particular message" about the value of businesses owned by Black women.  2023 WL 6295121 at *6.  And it concluded that, under *303 Creative*, the First Amendment's protections would apply to that message and prevent Section 1981 from altering "the [defendant's] chosen speech and expression."  *Id.* at *6-7.  The court relied on the Eleventh Circuit's opinion in *Coral Ridge*, which held that federal anti-discrimination laws could not compel Amazon to include organizations whose religious views the company found objectionable among the list of recipients for its charitable donations.  *Coral Ridge*, 6 F.4th at 1254-56.

A motions panel of the Eleventh Circuit granted an injunction pending appeal of the district court's order, but the panel's conclusory reasoning is deeply flawed.  The court attempted to distinguish *303 Creative* on the grounds that the grants there did not "provide 'expressive services' or otherwise engage in 'pure speech.'"  *Am. All. for Equal Rts. v. Fearless Fund Mgms., LLC*, No. 23-13138, 2023 WL 6520763, at *1 (11th Cir. Sept. 30, 2023).  But *303 Creative* did not turn on such a distinction at all.  On the contrary, it applied principles developed in the context of expressive conduct cases, such as *Hurley* and *Dale*, even recognizing that those cases "may not have implicated pure speech."  *303 Creative*, 600 U.S. at 586 (citing *Dale*, 530 U.S. at 656).  Nevertheless, the organizations were entitled to the First Amendment's protection from public accommodations laws that would have "materially interfere[d] with the ideas that the organization sought to express."  *Dale*, 530 U.S. at 657.  Moreover, even if "pure speech" were required to invoke *303 Creative*, the particular message conveyed with the challenged grants here is directly targeted at the sociopolitical conditions that led to inequitable access to capital for Black

entrepreneurs, Compl. Ex. 3 at 2; Compl. Ex. 4 at 2, and therefore constitutes protected "political speech" under Supreme Court precedent, *Citizens United*, 558 U.S. at 342.

The Eleventh Circuit stay panel also cited *Runyon v. McCrary*, 427 U.S. 160 (1976), but *Runyon* does not undermine the First Amendment's protection here.  In *Runyon*, the Supreme Court held that the conduct at issue—excluding children from private schools based on race—was not "accorded affirmative constitutional protections." *Id.* at 161 (citation omitted).  In other words, the Court held that the segregation policy at issue in *Runyon* simply did not implicate the constitutional freedom of association embodied in the First Amendment. *Id.* at 176; *see also id.* (recognizing that admission of Black students would not "inhibit in any way the teaching in these schools of any ideas or dogma" (citation omitted)).  Accordingly, *Runyon* did not consider how to handle a conflict between First Amendment-protected conduct and a public-accommodation law. The Eleventh Circuit was therefore wrong to read *Runyon* to conclude that the First Amendment "does not give the defendants the right to exclude persons from a contractual regime based on their race." *Fearless Fund*, 2023 WL 6520763, at *1.  On the contrary, *303 Creative* squarely held that "no public accommodations law is immune from the demands of the Constitution." 600 U.S. at 592.  Because the grants here *are* protected by the First Amendment, *Runyon* does not undermine *303 Creative*'s clear command.

Tellingly, the *Fearless Fund* stay panel altogether ignored *Coral Ridge* and its conclusion that compelled donations to charitable organizations were incompatible with the First Amendment. *See Fearless Fund*, 2023 WL 6520763, at *1.  The Eleventh Circuit's detailed, reasoned opinion in *Coral Ridge* correctly assessed the Supreme Court's precedent in this area—not the summary order in *Fearless Fund*—and this Court should follow *Coral Ridge*'s persuasive reasoning to conclude that the First Amendment bars Plaintiffs from interfering with protected speech.  At a

minimum, this Court should read Section 1981 in light of these constitutional concerns and construe it to permit the grants at issue here. *See Torres v. Precision Indus., Inc.*, 938 F.3d 752, 754-755 (6th Cir. 2019) (citing *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288 (1936) (Brandeis, J., concurring)); *see supra* pp. 6-11 (explaining Section 1981 is inapplicable to non-contractual grants); *infra* pp. 17-19 (discussing application of federal anti-discrimination statutes to private affirmative action programs).

## IV.  THE CHALLENGED GRANT PROGRAM WAS A VALID AFFIRMATIVE ACTION PROGRAM.

The Supreme Court has recognized that anti-discrimination provisions like Section 1981 are not applicable to private-sector affirmative action programs. *Johnson v. Transp. Agency, Santa Clara Cnty.*, 480 U.S. 616, 626-627 (1987).  Specifically, it recognized that "an affirmative action plan" is a permissible "nondiscriminatory rationale" for race-conscious behavior under federal anti-discrimination statutes. *Id.*  Where a defendant asserts "reliance on [an] affirmative action plan," the "burden of proving its invalidity remains on the plaintiff." *Id.* at 627.  These principles apply in Section 1981 cases. *See, e.g.*, *Doe v. Kamehameha Schs.*, 470 F.3d 827, 837-38 (9th Cir. 2006) (en banc); *Ferrill v. Parker Gr., Inc.*, 168 F.3d 468, 474 & n.12 (11th Cir. 1999); *see also United Steelworkers of Am., AFL-CIO-CLC v. Weber*, 443 U.S. 193, 204 (1979) (recognizing that, even after Title VII, Congress had not passed a "legislative prohibition of all voluntary, private, race-conscious efforts to abolish traditional patterns of racial segregation and hierarchy").

A lawful affirmative action program exists where there is "a 'manifest imbalance' . . . that would justify taking . . . race into account" and the plan does not "unnecessarily trammel[] the rights of" other groups. *Johnson*, 480 U.S. at 631-632, 637.  Plaintiff has failed to allege facts that would establish that the Progressive grant program is inconsistent with these principles.  On the contrary, the exhibits to the complaint evidence precisely the kind of "manifest imbalance" that

17

*Johnson* contemplates, noting "[w]hile 20 percent of Black Americans start businesses, only four percent of these businesses survive the startup stage due in large part to the difficulty Black business owners have in accessing financing."  Compl. Ex. 4 at 2; *see also* Compl. Ex. 3 at 2 ("Multiple studies have shown how inequities have made it harder for Black entrepreneurs to access capital.").  Plaintiffs allege nothing to support a contrary position.

Plaintiffs have also not alleged that ineligibility for the specific grant at issue in this case "unnecessarily trammel[s]" their rights.  *Johnson*, 480 U.S. at 637.  Once again, their allegations establish that the opposite is true.  The promotional materials for the grant expressly state that "the Hello Alice Small Business Growth Fund . . . awards grants to small business owners of all backgrounds and ethnicities."  Compl. Ex. 4 at 3; *see also id.* at 4 (noting Hello Alice serves "women, people of color, members of the LGBTQ+ community, veterans, and entrepreneurs with disabilities").  Indeed, the complaint's exhibits establish that another grant open to "small business owners of all backgrounds" was available immediately after the grant at issue here.  Compl. Ex. 1 at 2.  There are no allegations to support the notion that the overall grantmaking program described in the complaint "trammels" on the rights of White entrepreneurs.

Plaintiffs may attempt to argue that *Johnson* was implicitly overruled by *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181 (2023).  They would be wrong.  Most critically, *Johnson* and its progeny are *statutory* decisions, not constitutional decisions.  Stare decisis "carries enhanced force when a decision . . . interprets a statute" because "critics of [the] ruling can take their objections" to Congress, who "can correct any mistake it sees."  *Kimble v. Marvel Ent., LLC*, 576 U.S. 446, 456 (2015); *accord Ramos v. Louisiana*, 140 S. Ct. 1390, 1413 & n.2 (2020) (Kavanaugh, J., concurring).  The reasoning of *Students for Fair Admissions* is also trained on the Equal Protection Clause's "core purpose" of "doing away with

all *governmentally imposed* discrimination based on race."  600 U.S. at 206 (cleaned up) (emphasis added).  It does not undermine *Johnson*'s focus on Congress's decision not to proscribe "voluntary, private, race-conscious efforts to abolish traditional patterns of racial segregation and hierarchy." 480 U.S. at 629 (citation omitted).  The Court should therefore apply *Johnson*'s settled principles to conclude that the grant program alleged here is an affirmative action program that does not violate Section 1981.

## CONCLUSION

For the foregoing reasons, Hello Alice's motion should be granted and the complaint should be dismissed for lack of Article III standing, or else dismissed with prejudice for failure to state a claim.

Dated: December 13, 2023

Respectfully submitted,

*/s/ Dolores P. Garcia*
Michael N. Ungar (0016989)
Dolores Garcia (0085644)
Halden R. Schwallie (0093665)
ULMER & BERNE LLP
Skylight Office Tower
1660 West 2nd Street, Suite 1100
Cleveland, Ohio 44113-1406
Phone: (216) 583-7000
Facsimile: (216) 583-7001
Email: mungar@ulmer.com
Email: dgarcia@ulmer.com
Email: hschwallie@ulmer.com

Neal Kumar Katyal (admitted pro hac vice)
David M. Foster (admitted pro hac vice)
Reedy C. Swanson (admitted pro hac vice)
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, D.C. 20004
Phone: (202) 637-5600
Facsimile: (202) 637-5910
Email: neal.katyal@hoganlovells.com
Email: david.foster@hoganlovells.com
Email: reedy.swanson@hoganlovells.com

*Attorneys for Defendant*
*Circular Board Inc.*

## CERTIFICATE OF COMPLIANCE

I, Dolores P. Garcia, certify that this case has not been assigned to any track under L.R. 16.2(a).  I further certify that this memorandum complies with the page limitation set forth in L.R. 7.1(f) for unassigned cases.

*/s/ Dolores P. Garcia*
*One of the Attorneys for Defendant*
*Circular Board Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of December, 2023, a copy of Defendants' Motion to Dismiss and Memorandum in Support of Motion to Dismiss was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Dolores P. Garcia*
*One of the Attorneys for Defendant*
*Circular Board Inc.*
