**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

|  |  |
|---|---|
| Nathan Roberts and Freedom Truck Dispatch LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>Progressive Preferred Insurance Company; Progressive Casualty Insurance Company; and Circular Board Inc.,<br><br>    Defendants. | Case No. 1:23-cv-01597 (PAG)<br><br>Judge Patricia A. Gaughan |

**DEFENDANTS PROGRESSIVE PREFERRED INSURANCE COMPANY AND
PROGRESSIVE CASUALTY INSURANCE COMPANY'S MOTION TO DISMISS**

Defendants Progressive Casualty Insurance Company and Progressive Preferred Insurance Company, by and through counsel, move to dismiss Plaintiffs' First Amended Complaint for lack of subject-matter jurisdiction and, alternatively, with prejudice for failure to state a claim upon which relief can be granted pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively. In the alternative, Defendants move to compel arbitration and stay proceedings pursuant to 9 U.S.C. §§ 3 and 4. The grounds for the motion are set forth in the memorandum in support attached hereto.

Dated: February 7, 2024

Respectfully submitted,

*/s/ Michael J. Ruttinger*
Michael J. Ruttinger (0083850)
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113
Telephone:  216.696.4456
Facsimile:   216.592.5009
E-mail: michael.ruttinger@tuckerellis.com

Stephanie Schuster*
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone:  202.373.6595
Facsimile:   202.739.3001
E-mail: stephanie.schuster@morganlewis.com

Emily Cuneo DeSmedt*
MORGAN, LEWIS & BOCKIUS LLP
502 Carnegie Center
Princeton, NJ 08540
Telephone:  609.919.6673
Facsimile:   877.432.9652
E-mail: emily.desmedt@morganlewis.com

Hanna E. Martin*
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Telephone:  212.309.6716
Facsimile:   212.309.6000
E-mail: hanna.martin@morganlewis.com

*admitted *pro hac vice*

*Attorneys for Defendants Progressive Preferred*
*Insurance Company and Progressive Casualty*
*Insurance Company*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Nathan Roberts and Freedom Truck Dispatch LLC, | |
| Plaintiffs, | Case No. 1:23-cv-01597 (PAG) |
| v. | |
| Progressive Preferred Insurance Company; Progressive Casualty Insurance Company; and Circular Board Inc., | Judge Patricia A. Gaughan |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS PROGRESSIVE PREFERRED INSURANCE COMPANY AND PROGRESSIVE CASUALTY INSURANCE COMPANY'S MOTION TO DISMISS THE AMENDED COMPLAINT**

## **TABLE OF CONTENTS**

STATEMENT OF ISSUES ............................................................................................... 1

SUMMARY OF ARGUMENT ........................................................................................ 2

BACKGROUND ............................................................................................................. 3

ARGUMENT .................................................................................................................. 5

      I.      PLAINTIFFS LACK STANDING ............................................................ 6

      II.     PLAINTIFFS FAIL TO STATE A CLAIM ........................................... 12

           A.    Plaintiffs Do Not Allege Any Contractual Relationship ................................ 12

           B.    At The Very Least, Plaintiff Roberts Fails To Allege Any Contract Under Which He Personally Has Or Would Have Rights ............................. 15

           C.    In These Circumstances, Section 1981 Does Not Override Progressive's First Amendment Right To Express Itself Through Charitable Giving .......... 16

CONCLUSION ............................................................................................................. 19

# TABLE OF AUTHORITIES

**Pages**

<u>**Cases**</u>

*303 Creative LLC v. Elenis,*
    143 S. Ct. 2298 (2023) ...........................................................................................16, 17, 18

*Aaron Priv. Clinic Mgmt. v. Berry,*
    912 F.3d 1330 (11th Cir. 2019) ..............................................................................9

*Aiellos v. Zisa,*
    2009 WL 3424190 (D.N.J. 2009) ..........................................................................16

*Aiken v. Hackett,*
    281 F.3d 516 (6th Cir. 2002) ..............................................................................7, 8

*Allen v. Wright,*
    468 U.S. 737 (1984) .............................................................................................7

*ASARCO v. Kadish,*
    490 U.S. 605 (1989) .............................................................................................7

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ......................................................................................5, 6, 8

*Ass'n of Am. Physicians & Surgeons v. U.S. F.D.A.,*
    13 F.4th 531 (6th Cir. 2021) ................................................................................6

*Barfield v. Commerce Bank, N.A.,*
    484 F.3d 1276 (10th Cir. 2007) ............................................................................13

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ..........................................................................................5, 6

*Betzak Land Co. v. City of Detroit,*
    298 F.3d 559 (6th Cir. 2002) ................................................................................8

*Binno v. Am. Bar Ass'n,*
    826 F.3d 338 (6th Cir. 2016) ................................................................................5

*Braunstein v. Ariz. Dep't of Transp.,*
    683 F.3d 1177 (9th Cir. 2012) ..............................................................................9

*Brintley v. Aeroquip Credit Union,*
    936 F.3d 489 (6th Cir. 2019) .............................................................................8, 9

*Carlisle v. T & R Excavating, Inc.*,
　704 N.E.2d 39 (Ohio 1997).........................................................................13, 14, 15

*Carney v. Adams*,
　141 S. Ct. 493 (2020).........................................................................................6, 8

*Carroll v. Hill*,
　37 F.4th 1119 (6th Cir. 2022) ...............................................................................8

*Carroll v. Nakatani*,
　342 F.3d 934 (9th Cir. 2003) ...............................................................................10

*Christian Legal Soc'y v. Walker*,
　453 F.3d 853 (7th Cir. 2006) ...............................................................................18

*Claybrooks v. ABC*,
　898 F. Supp. 2d 986 (M.D. Tenn. 2012).............................................................18

*Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*,
　140 S. Ct. 1009 (2020).........................................................................................10

*Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*,
　6 F.4th 1247 (11th Cir. 2021) .........................................................................16, 17

*In re Darvocet*,
　756 F.3d at 931 ....................................................................................................11

*Do No Harm v. Pfizer Inc.*,
　646 F. Supp. 3d 490 (S.D.N.Y. 2022)...................................................................8

*Doe v. Kamehameha Schs.*,
　470 F.3d 827 (9th Cir. 2006) ...............................................................................12

*Domino's Pizza, Inc. v. McDonald*,
　546 U.S. 470 (2006).......................................................................................12, 15

*Edwards v. Woodforest Nat. Bank*,
　2012 WL 1906309 (N.D. Ohio 2012) .................................................................15

*Ellison v. Am. Bd. Of Orthopaedic Surgery*,
　11 F.4th 200 (3d Cir. 2021) ...................................................................................9

*Fulton v. City of Philadelphia*,
　141 S. Ct. 1868 (2021).........................................................................................18

*Grain v. Trinity Health*,
　431 F. App'x 434 (6th Cir. 2011) .........................................................................13

*Green v. Miss USA, LLC*,
   52 F.4th 773 (9th Cir. 2022) ..................................................................................17

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp.*,
   515 U.S. 557 (1995) ............................................................................................16

*Jones v. E. Ctr. For Cmty. Mental Health, Inc.*,
   482 N.E.2d 969 (Ohio App. 1984) ........................................................................13

*Judie v. Hamilton*,
   872 F.2d 919 (9th Cir. 1989) ................................................................................13

*Kinnon v. Arcoub, Gopman, & Assocs.*,
   490 F.3d 886 (11th Cir. 2007) ..............................................................................13

*Lake Land Emp. Grp. v. Columber*,
   804 N.E.2d 27 (Ohio 2004) ..................................................................................13

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ..........................................................................................5, 6

*Marks v. Tennessee*,
   562 F. App'x 341 (6th Cir. 2014) ...........................................................................7

*Miami Herald Publ'g Co. v. Tornillo*,
   418 U.S. 241 (1974) ............................................................................................17

*Mitchell v. BMI Fed. Credit Union*,
   374 F. Supp. 3d 664 (S.D. Ohio 2019) ................................................................11

*Moose Lodge No. 107 v. Irvis*,
   407 U.S. 163 (1972) ..............................................................................................7

*Moye v. Chrysler Corp.*,
   465 F. Supp. 1189 (D. Mo. 1979) ........................................................................12

*Nat'l Inst. of Fam. & Life Advocs. v. Becerra*,
   138 S. Ct. 2361 (2018) .........................................................................................18

*O'Brien & Assocs. v. E. Worthington, L.L.C.*,
   2023 WL 6307762 (Ohio. App. 2023) ..................................................................15

*Pucket v. Hot Springs Sch. Dist. No. 23-2*,
   526 F.3d 1151 (8th Cir. 2008) ................................................................................8

*Reed v. Town of Gilbert*,
   576 U.S. 155 (2015) .............................................................................................18

iv

*Riley v. Nat'l Fed'n of the Blind, Inc.*,
    487 U.S. 781 (1988)................................................................................................16, 17, 18

*Sierra Club v. Morton*,
    405 U.S. 727 (1972).........................................................................................................6

*Smith v. Gen. Motors LLC*,
    988 F.3d 873 (6th Cir. 2021) .......................................................................................11

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016).........................................................................................................6

*Talwar v. Cath. Healthcare Partners*,
    258 F. App'x 800 (6th Cir. 2007) ............................................................................12, 13

*Texas v. Johnson*,
    491 U.S. 397 (1989)..................................................................................................16, 17

*Thomas v. Publishers Clearing House, Inc.*,
    29 F. App'x 319 (6th Cir. 2002) ..................................................................................14

*Town of Chester v. Laroe Estates, Inc.*,
    518 U.S. 433 (2017)........................................................................................................7

*USA Entm't Grp. v. Israel*,
    2017 WL 4553441 (S.D. Fla. 2017) ............................................................................16

*Vill. of Schaumburg v. Citizens for a Better Env't*,
    444 U.S. 620 (1980)......................................................................................................17

*Williams v. Ormsby*,
    966 N.E.2d 255 (Ohio 2012)........................................................................................13

**Statutes**

42 U.S.C. § 1981....................................................................................................................2, 5

42 U.S.C. § 1981(a) ................................................................................................................12

**STATEMENT OF ISSUES**

Plaintiffs, a limited liability company and its sole member, contend that Progressive Casualty Insurance Company and Progressive Preferred Insurance Company (together, "Progressive") violated 42 U.S.C. § 1981 when, in 2023, Progressive sponsored a grant program for eligible Black-owned small businesses. Progressive's motion to dismiss raises the following issues:

1.    Whether Plaintiffs lack Article III standing.

2.    Whether Plaintiffs fail to state a claim under 42 U.S.C. § 1981 because the challenged program does not involve any contractual relationship.

3.    Whether Plaintiff Nathan Roberts fails to state a claim under 42 U.S.C. § 1981 because the challenged program does not involve any actual or potential contract under which he would have rights.

4.    Whether applying 42 U.S.C. § 1981 in these circumstances would violate Progressive's rights under the First Amendment.

5.    Whether, if there is any contract, Plaintiffs' claims must be arbitrated.

6.    Whether Plaintiffs fail to state a claim under 42 U.S.C. § 1981 because they do not plausibly allege but-for causation.

1

## SUMMARY OF ARGUMENT

Progressive sells automobile and other types of insurance. Progressive also supports various initiatives and causes through charitable giving. One of Progressive's many philanthropic programs in 2023 was the Driving Small Business Forward grant program (the "Grant Program"). Through the Grant Program, Progressive offered $25,000 grants to ten eligible Black-owned small businesses for the express purpose of addressing the documented challenges Black entrepreneurs face in accessing capital. Plaintiff Nathan Roberts and his business, Plaintiff Freedom Truck Dispatch LLC, claim that these charitable grants violate 42 U.S.C. § 1981 because they discriminate against white-owned businesses in the making and enforcement of contracts. These claims lack merit, and the First Amended Complaint ("FAC") should be dismissed.

At the threshold, Plaintiffs lack Article III standing. Although Plaintiffs attempt in their FAC to cure a fatal deficiency in their original complaint—namely, their failure to allege they were otherwise eligible for the grant—their new allegations to the contrary are purely conclusory and thus insufficient to plausibly allege standing. Disregarding their conclusory allegations, Plaintiffs fail to plausibly allege *facts* that give rise to a reasonable inference that they were "able and ready" to compete for a grant, much less that they would have been one of the ten applicants selected (out of more than 30,000 who applied). Plaintiffs therefore lack standing to seek prospective relief or damages.

Even if they had standing, Plaintiffs fail to state a Section 1981 claim for three independently sufficient reasons. *First*, Section 1981 applies only to the making and enforcement *of contracts*, and Plaintiffs' new allegations notwithstanding, Plaintiffs do not plausibly allege that applying for or receiving a grant creates a contract. The grant is a charitable gift lacking the key

2

element of a contract: consideration. The grant application is just that—*an application* to be considered for a charitable gift. Neither is a contract.

*Second*, Section 1981 provides a right of action for a plaintiff to sue over his own contracts only. If the Grant Program creates any contracts, those contracts are between Progressive and the grant-recipient *business entities*, not any individual who owns or runs a business that receives the grant. For this reason, at the very least, Plaintiff Roberts fails to state a claim.

*Finally*, Progressive's decisions about which causes to support via charitable donations is expressive conduct protected by the First Amendment. Applying Section 1981 to impose liability on Progressive for the content of its expression—*i.e.*, its choice of which causes to support and not support—and to compel Progressive to change the content of its expression would unlawfully infringe Progressive's First Amendment rights.

For these reasons and others, as discussed below, the FAC should be dismissed for lack of subject-matter jurisdiction or, alternatively, with prejudice for failure to state a claim.

## BACKGROUND

Progressive sells insurance, including commercial auto insurance. ECF No. 32 ("FAC") ¶ 9. Progressive also engages in various philanthropic activities, including funding grants that support small businesses. FAC Ex. 1. In 2023, via the Grant Program, Progressive offered $25,000 grants to ten Black-owned small businesses.[1] FAC ¶ 12. It did so because "[m]ultiple studies have

---

[1]    Plaintiffs sue Progressive Casualty Insurance Company ("PCIC") and Progressive Preferred Insurance Company ("PPIC"). For simplicity, this motion refers to the two entities collectively as "Progressive." However, PPIC has nothing to do with the Grant Program and thus is not a proper defendant. Plaintiffs appear to have joined PPIC solely based on their allegation that the email attached as Exhibit 1 to the Complaint "was sent by Progressive Preferred Insurance Company." FAC ¶ 11. But it is clear from the face of Exhibit 1 that it was *not* sent by PPIC. The only mention of that entity is at the end of the email, which notes that Plaintiffs' insurance policy was "underwritten by Progressive Preferred Insurance Company." FAC Ex. 1. Accordingly,

shown how inequities have made it hard for Black entrepreneurs to access capital."[2] Progressive thus determined to donate funds "to alleviate this challenge." *Id.* ¶ 13. The application period for the Grant Program closed on June 2, 2023, and the ten grantees have been selected. FAC Ex. 3.

There were several race-neutral eligibility criteria for the 2023 Driving Small Business Forward grant. Specifically, the applicant must have (i) been "a for-profit business"; (ii) had "10 or fewer employees"; (iii) had "less than $5M in annual gross revenue"; (iv) had "a demonstrated need for a qualifying commercial vehicle to run [its] business"; (v) had "a clear plan for growth as a result of this vehicle purchase"; and (vi) not been "an independent contractor whose primary business is for a rideshare service such as Uber or Lyft, or a third-party food delivery such as UberEats, DoorDash, PostMates, Gruhub, Instacart, etc." FAC Ex. 3.

Plaintiff Freedom Truck Dispatch is an LLC, and its sole member is Plaintiff Nathan Roberts. FAC ¶¶ 5, 10. In the FAC, Plaintiffs allege for the first time—and in a conclusory fashion—that Freedom Truck Dispatch "satisfied all of the purported eligibility requirements except for the requirement that the application be a black-owned business." *Id.* ¶ 31; *see also* FAC Ex. 8. At the same time, Plaintiffs allege—"on information and belief" only—that "the black-owned business criterion was the only one of these eligibility criteria that applicants had to satisfy in order to compete for the grant funds." FAC ¶ 20. Plaintiffs further allege, without any factual basis or support, that Progressive and Hello Alice "were both able and willing to excuse non-compliance with the other purported requirements." *Id.*

On May 23, 2023, Plaintiff Roberts received an email about two grant opportunities from Progressive: (i) the Driving Small Business Forward grant at issue, for which certain "Black-

---

insofar as any claim survives this motion (and none should), at the very least, PPIC must be dismissed.

[2]        https://helloalice.com/grants/progressive/ (quoted and cited in FAC ¶ 13).

owned small businesses" were eligible; and (ii) a separate Small Business Growth grant for "small business owners of all backgrounds." FAC Ex. 1; *see* FAC ¶ 26. Plaintiffs applied for neither grant. Instead, less than 24 hours after receiving the email, Plaintiff Roberts forwarded it to America First Legal Foundation, one of his counsel of record in this action. FAC Ex. 1.

Presumably at the same time, and despite the criteria expressly stated in the short email, *see id.*, Plaintiffs allege "Roberts opened the application and began filling it out," but stopped when "he came to a part of the application that made clear that the grants were available only to black-owned businesses." FAC ¶¶ 27–28. (Plaintiff Roberts alleges "he is white and his business is white-owned." *Id.* ¶ 28.) Plaintiff Roberts alleges that, "on behalf of himself and Freedom Truck Dispatch LLC, [he] wished to apply for the grant and was able and ready to apply." *Id.* ¶ 29 (quotation omitted). Plaintiffs claim the 2023 Driving Small Business Forward grant violated 42 U.S.C. § 1981, and they sue for declaratory relief, injunctive relief, and damages. *Id.* ¶ 51.

## ARGUMENT

Rule 12(b)(6) tests the legal sufficiency of a plaintiff's factual allegations. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). Accepting all factual allegations as true and disregarding any implausible or conclusory assertions, the complaint must "raise a right to relief above the speculative level." *Id.* at 555. A Rule 12(b)(6) motion must be granted unless the plaintiff alleges "facts with sufficient specificity to state a claim for relief that is plausible on its face." *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 345 (6th Cir. 2016). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A plaintiff's burden to establish standing tracks his burden to establish the other "indispensable" elements of his case. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992).

Standing must be demonstrated in the "manner and degree" demanded by the standards that govern at "the successive stages of the litigation." *Id.* As discussed, at the pleading stage, the standard is "facial plausibility." *Iqbal*, 556 U.S. at 678; *accord Twombly*, 550 U.S. at 570. Thus, to survive a Rule 12(b)(1) motion that asserts a facial challenge to Article III standing, a plaintiff must allege sufficient facts to plausibly have standing. *See Ass'n of Am. Physicians & Surgeons v. U.S. F.D.A.*, 13 F.4th 531, 544 (6th Cir. 2021) (holding *Twombly*/*Iqbal* plausibility standard applies to a "motion to dismiss on standing grounds").

## I.    PLAINTIFFS LACK STANDING.

Article III standing requires injury-in-fact, causation, and redressability. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Plaintiffs fail to plausibly allege any injury-in-fact.

An injury-in-fact is "an invasion of a legally protected interest" that is (i) "concrete," (ii) "particularized," *and* (iii) "actual or imminent." *Lujan*, 504 U.S. at 560. The injury-in-fact requirement prevents litigation of generalized grievances and, instead, requires that the plaintiff "be himself among the injured." *Sierra Club v. Morton*, 405 U.S. 727, 734–35 (1972). To be concrete, the injury must be real, as opposed to abstract, procedural, or purely legal. *Spokeo*, 578 U.S. at 340. To be particularized, the injury must affect the plaintiff "in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1. Injuries that aren't concrete and particularized are generalized grievances, litigation of which risks turning federal courts into roving commissions or mini-legislatures. *See id.* at 576 ("A suit rest[ing] upon an impermissible generalized grievance" is "inconsistent with the framework of Article III" because "vindicating the public interest … is the function of Congress and the Chief Executive"); *see Carney v. Adams*, 141 S. Ct. 493, 498 (2020) ("[A] grievance that amounts to nothing more than an abstract and generalized harm to a citizen's interest in the proper application of the law does not count as an 'injury in fact.'"). Federal

courts are not "a vehicle for the vindication of the value interests of concerned bystanders." *Allen v. Wright*, 468 U.S. 737, 756 (1984) (quoting *United States v. SCRAP*, 412 U.S. 669, 687 (1973)).[3]

A plaintiff who was "not personally subject to the challenged discrimination" lacks a concrete and particularized injury. *Id.* at 755 (collecting cases); *see also, e.g.*, *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 166–67 (1972) (plaintiff lacked standing to challenge a racially discriminatory membership policy because he never applied for membership and thus had not been personally subject to the policy). Mere knowledge or "observation of conduct with which one disagrees do[es] not provide the kind of particular, direct, and concrete injury that is necessary to confer standing to sue in federal courts." *ASARCO v. Kadish*, 490 U.S. 605, 616 (1989). Instead, a "stigmatizing injury," like alleged discrimination, is concrete and particularized only when suffered by "persons who are *personally denied* equal treatment." *Allen*, 468 U.S. at 755 (emphasis added). Otherwise, "standing would extend nationwide to all members of the particular racial groups" against whom the discrimination was allegedly directed. *Id.* at 755–56.

When, as here, a plaintiff has declined to compete for a benefit because of an allegedly discriminatory preference, the test for whether the plaintiff was personally subject to the alleged discrimination varies with the type of relief sought. *See Town of Chester v. Laroe Estates, Inc.*, 518 U.S. 433, 434 (2017) ("[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought."). A plaintiff lacks standing to sue for retrospective relief unless he shows that, had he applied, he would have received the benefit. *See, e.g.*, *Aiken v. Hackett*, 281 F.3d 516, 519 (6th Cir. 2002) ("If the plaintiffs allege that a racial preference cost them some benefit ... , those plaintiffs may have alleged an injury in fact. But if those same

---

[3]     *Allen* was "arguably abrogated on other grounds by *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)," *Marks v. Tennessee*, 562 F. App'x 341, 344 (6th Cir. 2014), but remains good law on the issues relevant to this motion.

plaintiffs cannot also allege and show that 'under a race-neutral policy' they would have received the benefit, those plaintiffs have not alleged an injury in fact because they have not alleged an invasion of some interest that the law protects."). By contrast, to have standing to seek prospective relief, a plaintiff must show he is at least "able and ready" to apply for the benefit. *Betzak Land Co. v. City of Detroit*, 298 F.3d 559, 566 (6th Cir. 2002) (quoting *Assoc. Gen. Contractors v. City of Jacksonville*, 508 U.S. 656, 666 (1993)); *accord Carney*, 141 S. Ct. at 500.

Plaintiffs seek retrospective relief—damages. FAC ¶ 51(d). However, Plaintiffs do not even attempt to allege—let alone plausibly allege—that Freedom Truck Dispatch would have been selected to receive one of the 10 grants awarded (to ten of more than 30,000 applicants) in 2023 but for the challenged preference. Plaintiffs therefore lack standing to pursue any claim for damages. *See Aiken*, 281 F.3d at 519.

Plaintiffs also lack standing to seek prospective relief. *See* FAC ¶ 39(b)–(c). Conclusory allegations that Plaintiffs were "able and ready to apply" (*id.* ¶ 29) and "satisfied all of the purported eligibility requirements" (*id.* ¶ 31) are not enough to transform a generalized grievance into a concrete and particularized injury. *See, e.g.*, *Carney*, 141 S. Ct. at 500; *Do No Harm v. Pfizer Inc.*, 646 F. Supp. 3d 490, 506 (S.D.N.Y. 2022). At the pleading stage, such allegations must be plausible. *See Iqbal*, 556 U.S. at 678 ("naked assertions devoid of further factual enhancement" are insufficient) (cleaned up). This requires the plaintiff to allege facts that plausibly suggest that, save for the challenged preference, he is eligible to compete for the benefit at issue, *see Carroll v. Hill*, 37 F.4th 1119, 1122 (6th Cir. 2022) ("If a plaintiff lacks the ability to take advantage of an opportunity, the deprivation of that opportunity does not count as an injury under Article III."), or at least "has made … efforts to become eligible," *Brintley v. Aeroquip Credit Union*, 936 F.3d 489, 492 (6th Cir. 2019); *accord Pucket v. Hot Springs Sch. Dist. No. 23-2*, 526 F.3d 1151, 1161 (8th

Cir. 2008) ("[I]f a plaintiff is required to meet a precondition or follow a certain procedure to engage in an activity or enjoy a benefit and fails to attempt to do so, that plaintiff lacks standing to sue because he or she should have at least taken steps to attempt to satisfy the precondition.").

Thus, for example, a person with a disability who claimed a credit union's allegedly inaccessible website denied her access to the credit union's banking services lacked standing because she was not eligible to receive those services for reasons unrelated to her disability. *Brintley*, 936 F.3d at 492. Likewise, a California doctor who claimed a medical board's certification policies unlawfully prevented him from obtaining privileges at New Jersey hospitals lacked standing because he had not taken any steps to become eligible to practice there, "such as obtaining a license to practice medicine in New Jersey." *Ellison v. Am. Bd. Of Orthopaedic Surgery*, 11 F.4th 200, 206–07 (3d Cir. 2021); *see, e.g.*, *Aaron Priv. Clinic Mgmt. v. Berry*, 912 F.3d 1330, 1337 (11th Cir. 2019) (plaintiff who failed to allege any concrete moves toward founding a clinic, "such as selecting a clinic location, securing a lease option, consulting with relevant government officials, applying for the necessary permits or certifications, or associating with potential clients" lacked standing); *Braunstein v. Ariz. Dep't of Transp.*, 683 F.3d 1177, 1185–86 (9th Cir. 2012) (subcontractor failed to show he was "able and ready" to perform work under a contract where he did not submit a bid and presented no evidence of his qualifications).

Here, Plaintiffs offer nothing more than conclusory assertions. Plaintiffs did not apply for the grant. FAC ¶ 28. Plaintiffs' conclusory allegation that "Freedom Truck Dispatch satisfied all of the purported eligibility requirements," *id.* ¶ 31, is insufficient to plausibly allege standing as a matter of law.  It does not matter that Plaintiffs purport to support this conclusory allegation by citing a new declaration from Plaintiff Roberts, *see id.* (citing FAC Ex. 8), for that declaration is equally conclusory. In it, Plaintiff Roberts simply parrots the eligibility requirements and asserts

that they were met by Freedom Truck Dispatch, rather than alleging actual *facts* to make those assertions of eligibility plausible.  Moreover, Plaintiff Roberts's conclusory assertions are only that Freedom Truck Dispatch *met* the eligibility requirements in or around June 2023; he does not assert, even in conclusory fashion, that Freedom Truck Dispatch meets those requirements today or would meet them in the future. FAC Ex. 8 ¶¶ 4–5.

Plaintiffs provide no factual allegations, for instance, about the number of employees Freedom Truck Dispatch actually had in 2023 or has now, or, more critically, the supposed "demonstrated need for a qualifying commercial vehicle" or "clear plan for growth." *Id.* Plaintiffs do not even allege what sort of business Freedom Truck Dispatch was or is engaged in. Plaintiffs therefore lack standing. *See, e.g.*, *Carroll v. Nakatani*, 342 F.3d 934, 942–43 (9th Cir. 2003) (plaintiff lacked standing to challenge business loan program available only to native Hawaiians because, despite his allegation that he was "able and ready" to compete and filed an application for the loan, he had not put together a basic business plan or researched necessary expenses).[4] And, even if not fatal to their standing (it is), Plaintiffs' failure to plausibly allege that would have satisfied the Grant Program's race-neutral eligibility requirements is also fatal to their claim on the merits. Without those allegations, Plaintiffs cannot plausibly allege that their race was a but-for cause of their purported harm—an essential element of a Section 1981 claim. *See Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020).

Perhaps more fundamentally, Plaintiffs lack standing to pursue prospective relief because they challenge a Grant Program that concluded months before they filed this lawsuit. The

---

[4]      Plaintiffs' errant allegation, "on information and belief" no less, that Defendants would have waived the eligibility requirements, FAC ¶ 20, further undermines their conclusory assertion that Freedom Truck Dispatch met the eligibility requirements.

application period for the Grant Program closed more than half a year ago, on June 2, 2023, FAC Ex. 3, and the 10 grant recipients have been selected.[5] Plaintiffs' unsupported allegation "on information and belief" that Progressive will sponsor a similar grant in the future is insufficient, on its own, to demonstrate their standing to sue prospective relief.  *See, e.g.*, *In re Darvocet*, 756 F.3d at 931; *see also Smith v. Gen. Motors LLC*, 988 F.3d 873, 885 (6th Cir. 2021) ("[A]lthough complaints grounding claims on information and belief can survive a motion to dismiss, they must set forth a factual basis for such belief.") (cleaned up).

In fact, Plaintiffs' allegation "on information and belief" is without support for good reason: Progressive's 2024 Driving Small Business Forward grant will be open to eligible small businesses with owners of all backgrounds, and Progressive does not plan to sponsor future grants that include race- or other demographic-based eligibility criteria. Declaration of Gargi Patel Duirk ¶¶ 5–7, attached as Exhibit A. Progressive made this determination for business reasons that have nothing to do with this or any other legal proceeding; indeed, Progressive's intended plan for expanding the 2024 Driving Small Businesses Forward grant preceded the filing of this lawsuit by months. *Id.* ¶¶ 5–6. So even if Plaintiffs' on-information-and-belief allegation were sufficient to allege standing to seek prospective relief and withstand a facial challenge to subject-matter jurisdiction, those allegations cannot survive a factual challenge. *See, e.g.*, *Mitchell v. BMI Fed. Credit Union*, 374 F. Supp. 3d 664, 667 (S.D. Ohio 2019) (unlike a facial challenge to subject-matter jurisdiction, under Rule 12(b)(1), "a factual attack raises a factual controversy requiring the district court to weigh the conflicting evidence to arrive at the factual predicate that subject-matter

---

[5]    *See* https://helloalice.com/grants/progressive. The cited URL is alleged and relied on by Plaintiffs in the Complaint, and Plaintiffs even created a preserved reference link to that URL (https://perma.cc/65S7-7W6V). *See* FAC ¶ 13.

jurisdiction does or does not exist," and the Court may consider affidavits or other evidence "to resolve disputed jurisdictional facts"). For this reason, too, Plaintiffs lack standing to seek prospective relief.[6]

## II.    PLAINTIFFS FAIL TO STATE A CLAIM.

### A.    Plaintiffs Do Not Allege Any Contractual Relationship.

Plaintiffs also fail to state a Section 1981 claim because Progressive does not enter into contracts with applicants for the Driving Small Business Forward grant or with grant recipients. Enacted in the wake of the Civil War as part of the Civil Rights Act of 1866, Section 1981 entitles all persons to the same right "to make and enforce contracts … as is enjoyed by white citizens." 42 U.S.C. § 1981(a). It is well-settled that the impairment of a "contractual relationship" is an essential element of a Section 1981 claim. *E.g.*, *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006); *Talwar v. Cath. Healthcare Partners,* 258 F. App'x 800, 803 (6th Cir. 2007). Charitable donations are discretionary gifts, not contractual payments made in exchange for consideration. *See, e.g.*, *Doe v. Kamehameha Schs*., 470 F.3d 827, 889 (9th Cir. 2006) (en banc) (Kozinski, J., dissenting) (while disagreeing with the majority's analysis under Section 1981, highlighting that Section 1981 was only implicated in the case because the defendant private school charged tuition rather than providing services for free because there is no "case where section 1981 has been applied to a charity"); *Moye v. Chrysler Corp.*, 465 F. Supp. 1189, 1190 (D. Mo. 1979) (Section 1981 not implicated by payroll plan, which permitted a deduction for certain charitable contributions, because the decision "to voluntarily confer the benefit of the payroll deduction … does not … rise to the level

---

[6]    Put another way, because the challenged grants have already been awarded and because Progressive has no plans or intent to sponsor similar grants in the future, Plaintiffs' requests for prospective relief are moot.

of contract"). Plaintiffs do not plausibly allege that Progressive's Driving Small Business Forward Grant was a contract, rather than a gift.

There is, of course, no federal common law of contracts, so courts usually apply the law of the forum state to determine whether a contract exists for purposes of Section 1981. *See, e.g.*, *Talwar*, 258 F. App'x at 803–04 (applying Ohio law); *Grain v. Trinity Health*, 431 F. App'x 434, 450 (6th Cir. 2011) (applying Michigan law); *Kinnon v. Arcoub, Gopman, & Assocs.*, 490 F.3d 886, 890–91 (11th Cir. 2007) (applying Florida law); *Barfield v. Commerce Bank, N.A.*, 484 F.3d 1276, 1278 (10th Cir. 2007) (applying Kansas law); *Judie v. Hamilton*, 872 F.2d 919, 922–23 (9th Cir. 1989) (applying Washington law). Here, the law of the forum—Ohio law—confirms that Plaintiffs fail to plausibly allege any contract that could support their Section 1981 claim.

Under Ohio law, only an offer, acceptance, and consideration can create a contract. *Lake Land Emp. Grp. v. Columber*, 804 N.E.2d 27, 31 (Ohio 2004). Consideration is the most critical ingredient, for "consideration is what distinguishes a contract from a gift." *Williams v. Ormsby*, 966 N.E.2d 255, 260 (Ohio 2012). An exchange creates consideration only if it induced the promisor's promise, was bargained for, and resulted in a benefit (to the promisor) or detriment (to the promisee) that "is reasonably understood by the parties as the consideration for the promise." *Carlisle v. T & R Excavating, Inc.*, 704 N.E.2d 39, 45 (Ohio 1997). A "gratuitous promise with no consideration" does not make a contract. *Id.*; *see also Jones v. E. Ctr. For Cmty. Mental Health, Inc.*, 482 N.E.2d 969, 973 (Ohio App. 1984) ("The detriment must induce the promise. In other words the promisor must have made the promise because he wishes to exchange it at least in part for the detriment to be suffered by the promisee.") (cleaned up).

Plaintiffs do not plausibly allege that the grant application or the grant itself were contracts supported by consideration. Applicants did not give up anything to apply for the grant. As the

13

materials attached to the FAC show, that there was "NO PURCHASE NECESSARY TO ENTER OR WIN." FAC Ex. 3. Plaintiffs also do not allege that the grant itself provides any benefit to Progressive or causes any detriment to grantees. Plaintiffs allege that grantees "must use the money toward the purchase of a commercial vehicle and must 'have a clear plan for growth as a result of this vehicle purchase.'" FAC ¶ 22 (quoting FAC Ex. 3). The exhibit Plaintiffs cite, however, does not reflect any contractual restriction on how grantees "use the money" awarded. That exhibit simply lists the eligibility requirements for grant applicants, which include "a demonstrated need for a qualifying commercial vehicle to run [its] business and a clear plan for growth as a result of this vehicle purchase." FAC Ex. 3; *see id.* ("Applicants must meet all of the below criteria to be eligible for this opportunity."). Eligibility requirements for a cash prize do not create consideration for that prize and thus cannot create a contract. *See, e.g.*, *Thomas v. Publishers Clearing House, Inc.*, 29 F. App'x 319, 323 (6th Cir. 2002) (applying Ohio law). For the same reasons, neither do eligibility requirements for a charitable grant. Thus, Plaintiffs do not plausibly allege any actual or prospective contractual relationship and, therefore, fail to state a claim.

Plaintiffs' new take on the Grant Program as actually involving *two* contracts (the grant application and the grant itself), *see* FAC at ¶ 1, is meritless. Their new allegation that Progressive received "consideration" in the form of "goodwill" and marketing benefits, *id.* ¶ 25, misunderstands consideration under Ohio law. Goodwill and marketing benefits were not what Progressive and applicants or recipients bargained for. *See Carlisle,* 704 N.E.2d at 45. Put another way, these may be benefits that Progressive enjoys as a result of the Grant Program, but they are not—and Plaintiffs do not plausibly allege they are—*detriments* to grant applicants or grant recipients. Nor are they the sorts of benefits that are "reasonably understood by the parties as the consideration for the promise." *Id.* They are, therefore, not consideration as a matter of law.

In all events, were Plaintiffs correct that either the grant application or grant itself were contracts, Ohio's equitable estoppel doctrine would require Plaintiffs to pursue that claim in moo. The rules for the Grant Program[7] state that disputes relating to the program will be resolved in arbitration. *See id.* Plaintiffs cannot have it both ways; if they wish to seek the purported benefits of an alleged contractual arrangement with Progressive, then they must too submit to the arbitral forum specified for resolving disputes under that supposed contract. Ohio's equitable estoppel doctrine would compel this result—that is, if the application or grant were contracts to begin with. *See O'Brien & Assocs. v. E. Worthington, L.L.C.*, 2023 WL 6307762, at *5 (Ohio. App. 2023) ("Because the plaintiffs are suing the defendants as if the defendants were parties to the contract, the plaintiffs cannot then claim the defendants are not parties to other portions of the contract.") (cleaned up).

### B.    At The Very Least, Plaintiff Roberts Fails To Allege Any Contract Under Which He Personally Has Or Would Have Rights.

Even if *arguendo* the grants created contracts between Progressive and its grantees (they do not), Plaintiff Roberts does not plausibly allege that he would have rights under that contractual relationship. "[A] plaintiff cannot state a claim under § 1981 unless *he* has (or would have) rights under the existing (or proposed) contract that he wishes to make and enforce." *Domino's Pizza*, 546 U.S. at 479–80 (emphasis added). That is, "Section 1981 plaintiffs must identify injuries flowing from a racially motivated breach of their own contractual relationship, not of someone else's." *Id.* at 480.

The Grant Program could never have created a contract between Progressive and Plaintiff Roberts. Only "for-profit *business[es]*" were eligible for the grant, not their owners, members, or

---

[7]    *See* https://helloalice.notion.site/Progressive-Driving-Small-Business-Forward-Terms-and-Conditions-5ad8d731baad4c99961526b616cf07af (referenced in FAC Ex. 1)

anyone else. FAC Ex. 3 (emphasis added). For this simple reason, Plaintiff Roberts fails to state a claim. *See, e.g.*, *Edwards v. Woodforest Nat. Bank*, 2012 WL 1906309, at *10 (N.D. Ohio 2012) (Gaughan, J.) (dismissing Section 1981 claim brought by "owner and founder" of contracting business because that individual did not "*personally* ha[ve] rights under the contract allegedly breached").

### C. In These Circumstances, Section 1981 Does Not Override Progressive's First Amendment Right To Express Itself Through Charitable Giving.

Even if Plaintiffs had plausibly alleged a contractual relationship (they have not), the First Amendment would still bar their claim. In certain circumstances, application of a civil rights law that would infringe expressive conduct must yield to the First Amendment. *See, e.g.*, *303 Creative LLC v. Elenis*, 143 S. Ct. 2298, 2314–15, 2320 (2023) (state public accommodations law); *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247, 1256 (11th Cir. 2021) (Title II of the Civil Rights Act). This case involves such a circumstance.

The First Amendment protects speech in many forms, including expressive conduct. *See Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp.*, 515 U.S. 557, 569 (1995) (collecting cases); *Texas v. Johnson*, 491 U.S. 397, 404 (1989) ("The First Amendment literally forbids the abridgment only of 'speech,' but we have long recognized that its protection does not end at the spoken or written word."). It is well-settled that making charitable donations is expression entitled to rigorous First Amendment protection because it is "inextricably intertwined with the … fully protected speech" of advocating for causes and ideals. *Riley v. Nat'l Fed'n of the Blind, Inc.*, 487 U.S. 781, 787–88 (1988); *accord Coral Ridge*, 6 F.4th at 1254 (Amazon "engage[d] in expressive conduct when it decide[d] which charities to support" through its AmazonSmile program); *USA Entm't Grp. v. Israel*, 2017 WL 4553441, at * 4 (S.D. Fla. 2017) (refusal to donate to someone is protected by First Amendment); *Aiellos v. Zisa*, 2009 WL 3424190, at *6 (D.N.J. 2009) (police officers' refusal to donate to the

16

political campaigns of fellow officers was expressive).

Compelling Progressive to alter the eligibility criteria for the Grant Program would infringe Progressive's First Amendment right to freedom of expression. A decision about where or to whom to donate money expresses a distinct message of support for the recipient. *See, e.g.*, *Coral Ridge*, 6 F.4th at 1254 ("[D]onating money qualifies as expressive conduct. Indeed, it is [a] bedrock principle that, except perhaps in the rarest of circumstances, no person in this country may be compelled to subsidize speech by a third party that he she does not wish to support.") (cleaned up). Prohibiting an organization from making grants to only the grantees it wishes to support alters that organization's expression. *See, e.g.*, *Riley*, 487 U.S. at 795 ("Mandating speech that a speaker would not otherwise make necessarily alters the content of the speech."); *Miami Herald Publ'g Co. v. Tornillo,* 418 U.S. 241, 256 (1974) (statute compelling newspaper to print an editorial reply "exacts a penalty on the basis of the content of a newspaper"); *Green v. Miss USA, LLC*, 52 F.4th 773, 786 (9th Cir. 2022) ("Speech must be viewed as a whole, and even one word or brush stroke can change its entire meaning.").

Because philanthropy is expressive, it is entitled to the highest level of First Amendment protection. *Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 633–37 (1980). This is true even if—indeed, *especially if*—the government disagrees with the message that the organization's philanthropy conveys. *Johnson*, 491 U.S. at 414 ("If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable."). Thus, Plaintiffs' effort to restrict Progressive's ability to make expressive grants that are consistent with its philanthropic goals violates the First Amendment *per se*. *See 303 Creative LLC*, 143 S. Ct. at 2317 (citing *W. Va. Bd. of Educ. v. Barnette*, 319 U.S. 624, 634 (1943)). And even if it did not, strict scrutiny, at a *minimum*,

would apply, meaning that the relief Plaintiffs seek is "presumptively unconstitutional" and may be justified only if restricting the Grant Program would be narrowly tailored to serve compelling state interests. *See Riley*, 487 U.S. at 795; *see also Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2371–73 (2018) (regulations that compel organizations to "alter the content of their speech" are subject to strict scrutiny); *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015).

Plaintiffs bear the burden of identifying a compelling interest that would justify applying Section 1981 to restrict the Grant Program. Plaintiffs cannot meet that burden. While preventing discrimination is a compelling interest, "a 'peculiar' application of antidiscrimination laws that require[s] speakers 'to alter their expressive content' [i]s not." *Riley*, 487 U.S. at 792 (citing *Telescope Media Grp. v. Lucero*, 936 F.3d 740, 755 (8th Cir. 2019)); *see also Christian Legal Soc'y v. Walker*, 453 F.3d 853, 863 (7th Cir. 2006) ("[T]he Supreme Court has made it clear that antidiscrimination regulations may not be applied to expressive conduct with the purpose of either suppressing or promoting a particular viewpoint."); *303 Creative LLC*, 143 S. Ct. at 2314–15, 2320 n.6 (while the First Amendment does not create a blanket objection to antidiscrimination rules, "context matters and … very different considerations come into play when a law is used to force individuals to toe the government's preferred line when speaking (or associating to express themselves) on matters of significance"). "[U]nder appropriate circumstances, anti-discrimination statutes of general applicability must yield to the First Amendment." *Claybrooks v. ABC*, 898 F. Supp. 2d 986, 996 (M.D. Tenn. 2012). When determining whether to apply an antidiscrimination law to restrict allegedly discriminatory expression, "the First Amendment demands a more precise analysis." *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1882 (2021) (citing *Gonzales v. O Centro Espírita Beneficente União do Vegetal*, 546 U.S. 418, 430–32 (2006)). Rather than rely on "broadly formulated interests," courts must "scrutinize[] the asserted harm of granting specific exemptions to particular …

18

claimants." *O Centro*, 546 U.S. at 431. The question, then, is not whether non-discrimination policies generally serve compelling interests; it is whether, in this specific context, the government has a compelling interest in applying Section 1981 to infringe expressive conduct protected by the First Amendment. It does not.

No court has *ever* identified a government interest compelling enough to justify prohibiting an organization from choosing where to donate its money. In fact, interfering with Progressive's grant decisions would have a chilling effect that would undermine critical societal interests in corporate philanthropy. The government also does not have a compelling interest in imposing liability on Progressive under Section 1981, which was enacted to protect the same underserved group that Progressive's Grant Program supported. The Court should reject Plaintiffs' effort to interfere with Progressive's charitable giving and reaffirm the First Amendment right of organizations to express their missions and ideals through philanthropy.

## <u>CONCLUSION</u>

For all of the reasons set forth above, the Complaint should be dismissed for lack of subject-matter jurisdiction or, alternatively, with prejudice for failure to state a claim.

Dated: February 7, 2024                     Respectfully submitted,


*/s/ Michael J. Ruttinger*
Michael J. Ruttinger (0083850)
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113
Telephone:  216.696.4456
Facsimile:   216.592.5009
E-mail: michael.ruttinger@tuckerellis.com

Stephanie Schuster*
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone:  202.373.6595
Facsimile:   202.739.3001
E-mail: stephanie.schuster@morganlewis.com

Emily Cuneo DeSmedt*
MORGAN, LEWIS & BOCKIUS LLP
502 Carnegie Center
Princeton, NJ 08540
Telephone:  609.919.6673
Facsimile:   877.432.9652
E-mail: emily.desmedt@morganlewis.com

Hanna E. Martin*
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Telephone:  212.309.6716
Facsimile:   212.309.6000
E-mail: hanna.martin@morganlewis.com

*admitted *pro hac vice*

*Attorneys for Defendants Progressive Preferred
Insurance Company and Progressive Casualty
Insurance Company*

20

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(f)</u>

I hereby certify that this brief complies with the track and page-number limitations required

by Local Rule 7.1(f) for cases that have not yet been assigned to a track.

<u>*/s/ Michael J. Ruttinger*</u>
Michael J. Ruttinger (0083850)
Tucker Ellis LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113-7213
Telephone:  216.592.5000
Facsimile:   216.592.5009
E-mail:        michael.ruttinger@tuckerellis.com

*One of the Attorneys for Defendants Progressive*
*Preferred Insurance Company and Progressive*
*Casualty Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that, on February 7, 2024, a copy of the foregoing Defendants Progressive

Preferred Insurance Company and Progressive Casualty Insurance Company's Motion to Dismiss

was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's

electronic filing system.  Parties may access this filing through the Court's system.

*/s/ Michael J. Ruttinger*
Michael J. Ruttinger (0083850)
Tucker Ellis LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113-7213
Telephone:  216.592.5000
Facsimile:  216.592.5009
E-mail:      michael.ruttinger@tuckerellis.com

*One of the Attorneys for Defendants Progressive*
*Preferred Insurance Company and Progressive*
*Casualty Insurance Company*