**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| NATHAN ROBERTS and FREEDOM TRUCK DISPATCH LLC, on behalf of themselves and all others similarly situated, | Case No.: 1:23-cv-01597-PAG |
| Plaintiffs, | JUDGE PATRICIA A. GAUGHAN<br>Magistrate Judge James E. Grimes, Jr. |
| v. | **DEFENDANT CIRCULAR BOARD INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS-ACTION COMPLAINT, OR TO STAY AND COMPEL ARBITRATION UNDER THE FEDERAL ARBITRATION ACT, OR TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(A)** |
| PROGRESSIVE PREFERRED INSURANCE COMPANY; PROGRESSIVE CASUALTY INSURANCE COMPANY; CIRCULAR BOARD INC., | |
| Defendants. | |

Defendant Circular Board Inc. ("Hello Alice") respectfully moves this Court under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss Plaintiffs' First Amended Class-Action Complaint ("Amended Complaint" or "FAC") for the reasons given in the accompanying Memorandum of Law.  In the alternative, Hello Alice respectfully moves the Court to stay this action and compel arbitration under the Federal Arbitration Act, 9 U.S.C. §§ 3-4, or, at a minimum, to transfer venue under 28 U.S.C. § 1404(a).

Respectfully submitted,

*/s/ Michael N. Ungar*
Michael N. Ungar (0016989)
Dolores Garcia (0085644)
Halden R. Schwallie (0093665)
UB GREENSFELDER LLP
Skylight Office Tower
1660 West 2nd Street, Suite 1100
Cleveland, Ohio 44113-1406
Phone: (216) 583-7000
Facsimile: (216) 583-7001
Email: mungar@ubglaw.com
Email: dgarcia@ubglaw.com
Email: hschwallie@ubglaw.com

Neal Kumar Katyal (admitted pro hac vice)
David M. Foster (admitted pro hac vice)
Reedy C. Swanson (admitted pro hac vice)
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, D.C. 20004
Phone: (202) 637-5600
Facsimile: (202) 637-5910
Email: neal.katyal@hoganlovells.com
Email: david.foster@hoganlovells.com
Email: reedy.swanson@hoganlovells.com

*Attorneys for Circular Board Inc.*

## TABLE OF CONTENTS

**Page**

STATEMENT OF ISSUES TO BE DECIDED ............................................................ vii

SUMMARY OF THE ARGUMENT ......................................................................... viii

BACKGROUND ...................................................................................................... 1

LEGAL STANDARDS ............................................................................................ 3

ARGUMENT ........................................................................................................... 4

    I.    PLAINTIFFS FAIL TO ALLEGE CAUSATION UNDER ARTICLE
    III AND SECTION 1981. ............................................................................... 4

    II.    THE CHALLENGED GRANT WAS NOT A CONTRACTUAL
    RELATIONSHIP. ........................................................................................... 8

    III.    IF THE COURT CONCLUDES CONTRACT LAW GOVERNS
    THE GRANT, PLAINTIFFS' CLAIM MUST BE SENT TO ARBITRATION;
    ALTERNATIVELY, THE COURT SHOULD TRANSFER THE CASE TO THE
    NORTHERN DISTRICT OF CALIFORNIA. ................................................ 11

    IV.    APPLYING SECTION 1981 TO THE CHALLENGED GRANT PROGRAM
    WOULD VIOLATE THE FIRST AMENDMENT................................... 13

    V.    THE CHALLENGED GRANT PROGRAM WAS A VALID AFFIRMATIVE
    ACTION PROGRAM................................................................................. 19

CONCLUSION....................................................................................................... 20

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*,
    727 F.3d 502 (6th Cir. 2013) ..............................................................................3, 6, 8

*303 Creative LLC v. Elenis*,
    600 U.S. 570 (2023)................................................................................15, 16, 17, 18

*Aggarwal v. Raytheon Co.*,
    No. 08 CV 1158, 2008 WL 11381827 (N.D. Ohio Sept. 16, 2008) ...........................3

*Am. All. for Equal Rts. v. Fearless Fund Mgms., LLC*,
    No. 23-13138, 2023 WL 6520763 (11th Cir. Sept. 30, 2023) ...................16, 17, 18

*Am. All. for Equal Rts. v. Fearless Fund Mgmt., LLC*,
    No. 23-CV-3434, 2023 WL 6295121 (N.D. Ga. Sept. 27, 2023) ....................16, 18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................................................3

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W.D. Tex.*,
    571 U.S. 49 (2013)...............................................................................................4, 13

*Atricure, Inc. v. Meng*,
    12 F.4th 516 (6th Cir. 2021) ..............................................................................11, 12

*Barber v. Charter Twp. of Springfield, Mich.*,
    31 F.4th 382 (6th Cir. 2022) ......................................................................................8

*Barner v. Mackie*,
    No. 17-1608, 2017 WL 5633399 (6th Cir. Nov. 2, 2017) ..........................................6

*Becker v. Delek US Energy, Inc.*,
    39 F.4th 351 (6th Cir. 2022) ....................................................................................12

*Blanton v. Domino's Pizza Franchising LLC*,
    962 F.3d 842 (6th Cir. 2020) ...................................................................................12

*Boy Scouts of Am. v. Dale*,
    530 U.S. 640 (2000)................................................................................14, 15, 16, 17

*Buckley v. Valeo*,
    424 U.S. 1 (1976)......................................................................................................14

*California v. Texas*,
   141 S. Ct. 2104 (2021) ................................................................................................4

*Carisle v. T&R Excavating, Inc.*,
   704 N.E.2d 39 (Ohio Ct. App. 1997) .............................................................9, 10, 11

*Carney v. Adams*,
   141 S. Ct. 493 (2020) ...................................................................................................7

*Citizens United v. FEC*,
   558 U.S. 310 (2010) ..............................................................................................14, 17

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983) .......................................................................................................8

*Cleveland-Akron-Canton Advert. Coop v. Physician's Weight Loss Ctrs. of Am.,*
   *Inc.*,
   922 N.E.2d 1012 (Ohio Ct. App. 2009) ................................................................11, 12

*Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*,
   140 S. Ct. 1009 (2020) ..............................................................................................4, 5

*Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*,
   6 F.4th 1247 (11th Cir. 2021), *cert denied sub nom., Coral Ridge Ministries
   Media, Inc. v. S. Poverty L. Ctr.*, 142 S. Ct. 2453 (2022) ...............................14, 15, 16, 18

*Doe v. Kamehameha Schs.*,
   470 F.3d 827 (9th Cir. 2006) (en banc) ......................................................................19

*Domino's Pizza, Inc. v. McDonald*,
   546 U.S. 470 (2006) .....................................................................................................8

*Dulberg v. Uber Techs., Inc.*,
   No. C 17-00850 WHA, 2017 WL 3232426 (N.D. Cal. July 31, 2017) .....................2

*Ferrill v. Parker Gr., Inc.*,
   168 F.3d 468 (11th Cir. 1999) ....................................................................................19

*Fla. Carpenters Reg'l Council Pension Plan v. Eaton Corp.*,
   964 F. Supp. 2d 875 (N.D. Ohio 2013), *aff'd sub nom., In re KBC Asset
   Mgmt. N.V.*, 572 F. App'x 356 (6th Cir. 2014) .......................................................3, 7

*Glennon v. Dean Witter Reynolds, Inc.*,
   83 F.3d 132 (6th Cir. 1996) ..........................................................................................9

*Gratz v. Bollinger*,
   539 U.S. 244 (2003) ......................................................................................................7

*Hurley v. Irish-American Gay, Lesbian, and Bisexual Group of Boston*,
  515 U.S. 557 (1995)........................................................................................................15

*Jackson v. Clinic Sec. & Logistics, Inc.*,
  No. 22-cv-985, 2023 WL 2734669 (N.D. Ohio Mar. 31, 2023)...................................5

*Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*,
  138 S. Ct. 2448 (2018)..................................................................................................16

*Johnson v. Transportation Agency, Santa Clara County*,
  480 U.S. 616 (1987)................................................................................................19, 20

*Keys v. Humana, Inc.*,
  684 F.3d 605 (6th Cir. 2012) .........................................................................................3

*Kimble v. Marvel Ent., LLC*,
  576 U.S. 446 (2015).......................................................................................................20

*Lemaster v. Lawrence Cnty.*,
  65 F.4th 302 (6th Cir. 2023) ...................................................................................5, 6, 7

*Lindsay v. Yates*,
  498 F.3d 434 (6th Cir. 2007) .........................................................................................9

*Meriwether v. Hartop*,
  992 F.3d 492 (6th Cir. 2021) .......................................................................................14

*Moye v. Chrysler Corp.*,
  465 F. Supp. 1189 (E.D. Mo. 1979), *aff'd*, 615 F.2d 1365 (8th Cir. 1979)...........10

*New Albany Tractor, Inc. v. Louisville Tractor, Inc.*,
  650 F.3d 1046 (6th Cir. 2011) .......................................................................................6

*Ohayon v. Safeco Ins. Co. of Ill.*,
  747 N.E.2d 206 (Ohio 2001)..........................................................................................9

*Pelcha v. MW Bancorp, Inc.*,
  988 F.3d 318 (6th Cir. 2021) .........................................................................................7

*Planet Aid v. City of St. Johns*,
  782 F.3d 318 (6th Cir. 2015) .......................................................................................14

*Playland Park Inc. v. Quality Mold, Inc.*,
  No. 26039, 2012 WL 1549915 (Ohio Ct. App. May 2, 2012)..................................10

*Ramos v. Louisiana*,
  140 S. Ct. 1390 (2020)..................................................................................................20

iv

*Regan v. Encompass Sols.*,
   No. 1:20 CV 02305, 2020 WL 7352665 (N.D. Ohio Dec. 14, 2020) ........................................4

*Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*,
   487 U.S. 781 (1988)..................................................................................................................14

*Rondigo, L.L.C. v. Twp. of Richmond*,
   641 F.3d 673 (6th Cir. 2011) ...............................................................................................6, 18

*Rosskamm v. Amazon.com, Inc.*,
   637 F. Supp. 3d 500 (N.D. Ohio 2022)....................................................................................13

*Runyon v. McCrary*,
   427 U.S. 160 (1976)..................................................................................................................17

*Sam Han v. Univ. of Dayton*,
   541 F. App'x 622 (6th Cir. 2013) ...............................................................................................6

*Sowry v. Todd*,
   213 N.E.3d 212 (Ohio Ct. App. 2023), *appeal not allowed*, 215 N.E.3d 563
   (Ohio 2023).........................................................................................................................10, 11

*Spencer v. City of Hendersonville, Tenn.*,
   No. 20-6168, 2021 WL 8016828 (6th Cir. Oct. 8, 2021) ...........................................................6

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*,
   600 U.S. 181 (2023)..................................................................................................................20

*Swinger v. Rosette*,
   989 F.3d 501 (6th Cir. 2021) ....................................................................................................12

*Taverns for Tots, Inc. v. City of Toledo*,
   341 F. Supp. 2d 844 (N.D. Ohio 2004).....................................................................................14

*Torres v. Precision Indus., Inc.*,
   938 F.3d 752 (6th Cir. 2019) ....................................................................................................18

*United Steelworkers of Am., AFL-CIO-CLC v. Weber*,
   443 U.S. 193 (1979)..................................................................................................................19

*Vartinelli v. Aramark Corr. Servs. LLC*,
   796 F. App'x 867 (6th Cir. 2019) ...............................................................................................6

*Williams v. Ormsby*,
   966 N.E.2d 255 (Ohio 2012)......................................................................................................9

*Williams v. Richland Cnty. Child. Servs.*,
   489 F. App'x 848 (6th Cir. 2012) ...............................................................................................8

*Yeager v. Gen. Motors Corp.*,
    265 F.3d 389 (6th Cir. 2001) ............................................................................4, 7

*Yeager v. Gen. Motors Corp.*,
    67 F. App'x 335 (6th Cir. 2003) ..........................................................................4

*Yedlick v. Comm'r, IRS*,
    No. 19 CV 2139, 2020 WL 364245 (N.D. Ohio Jan. 21, 2020) ...........................3

**Statutes**

9 U.S.C. § 3 ..............................................................................................................3

9 U.S.C. § 4 ..............................................................................................................4

28 U.S.C. § 1404(a) ..........................................................................................1, 4, 13

42 U.S.C. § 1981 ...................................................................................................3, 8

**Other Authorities**

American Arbitration Association, *Commercial Arbitration Rules & Mediation
    Procedures*, R-7(a) (2022) ................................................................................12

Fed. R. Civ. P. 12 ...............................................................................................1, 2, 3

Restatement (Second) of Contracts ........................................................................7, 9

3 *Williston on Contracts* (4th ed. 1992) ....................................................................9

## STATEMENT OF ISSUES TO BE DECIDED

Plaintiffs Nathan Roberts and Freedom Truck Dispatch LLC allege that Defendants Hello Alice and Progressive Insurance Company violated the Civil Rights Act of 1866, 42 U.S.C. § 1981, by making grants available for Black owned businesses.

*Issue One*:  Whether Plaintiffs lack Article III standing or fail to state a claim under Section 1981 because they have not plausibly pled that race was a "but for" cause of their failure to qualify for the challenged grant program.

*Issue Two*:  Whether the challenged grant program involves a "contract" subject to Section 1981 or is instead a gratuitous promise.

*Issue Three:*  If the Court concludes there is a contract, whether the Court must stay this action and compel arbitration under the Federal Arbitration Act, 9 U.S.C. §§ 3-4.

*Issue Four:*  If the Court does not compel arbitration, whether the Court should transfer venue to the Northern District of California under 28 U.S.C. § 1404(a).

*Issue Five*:  Whether applying Section 1981 to a grant program adopted with the express purpose of combatting sociopolitical inequalities would violate the First Amendment.

*Issue Six*:  Whether the grant program is valid as a voluntary, private affirmative action program under *Johnson v. Transportation Agency, Santa Clara County*, 480 U.S. 616 (1987).

## <u>SUMMARY OF THE ARGUMENT</u>

Plaintiffs' claims are part of a coordinated campaign to end the private sector's efforts to combat the lingering economic effects of racism.  Plaintiffs contend that the Civil Rights Act of 1866—enacted to remedy the evils of slavery—prohibits private companies from choosing to make charitable grants available to Black owned businesses.  Specifically, they claim that Defendants Progressive Insurance Company and Circular Board Inc. ("Hello Alice")—an online resource platform that facilitates grants to small businesses—violated the Civil Rights Act by offering ten grants for Black owned businesses to use toward the purchase of commercial vehicles.

This lawsuit is wrong in every relevant respect.  Hello Alice's mission is to help small businesses, and Hello Alice vehemently opposes racial discrimination.  Indeed, a critical component of Hello Alice's mission is to *combat* the effects that generations of pernicious racism have had on America's capital infrastructure.  Federal law does not compel purely private actors like Hello Alice, when choosing how and to whom they will donate money, to blind themselves to the centuries of invidious racism that have produced substantial existing racial inequities in access to capital.  As the amici organizations explain, this suit is in fact "antithetical to and outside the scope of Section 1981's congressional purpose."  Br. of Southern Poverty Law Center et al., ECF No. 21-1, at 2 (Dec. 20, 2023) ("Amicus Br.").

Despite their efforts to cure the complaint's many problems through amendment, Plaintiffs' complaint remains legally defective in multiple independent respects and, in any event, should not have been filed in this Court.

*First*, Plaintiffs still fail to allege that the race-based eligibility requirement was a "but for" cause of their inability to receive a grant.  The grant program had multiple other eligibility requirements that had nothing to do with race, and Plaintiffs must allege that they met those criteria to allege both standing under Article III and the essential causation element of a Section 1981

claim.  Plaintiffs' initial complaint failed to include any allegations about these requirements, and their amendments fail to cure that defect.  They now include a barebones statement that they "met" the criteria devoid of any corroborating factual content—a statement that fails to clear the plausibility threshold.

*Second*, the statutory provision that Plaintiffs have sued under, 42 U.S.C. § 1981(a), applies only to the right "to make and enforce contracts."  But the grant program alleged involves no contract at all—it is a gratuitous promise accompanied by minimally burdensome conditions.

*Third*, if Plaintiffs are correct that contract law governs the grant program, the Court must send this case to arbitration.  The terms and conditions that Plaintiffs rely upon to establish the existence of a contract require any dispute "arising out of or related to" the terms to be resolved through arbitration.  Equitable estoppel prevents Plaintiffs from evading these terms simply by refusing to complete the application before filing suit.  And, critically, the question of arbitrability under an estoppel theory has itself been delegated to an arbitrator.

*Fourth*, if the Court does not dismiss on standing grounds or compel arbitration, it should enforce the forum selection clause that Plaintiffs agreed to when they opened a Hello Alice account and transfer this action to the Northern District of California.

*Fifth*, applying Section 1981 to this grant program would violate Hello Alice's First Amendment right to freedom of speech.  Hello Alice's altruistic giving is protected First Amendment activity under long-settled precedent, and cannot be compelled to make grants that conflict with its political and economic beliefs.

*Sixth*, this program is lawful as a *bona fide* affirmative action program under *Johnson v. Transportation Agency, Santa Clara County*, 480 U.S. 616 (1987).

Hello Alice respectfully submits this memorandum in support of its motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), or to stay this litigation and compel arbitration under the Federal Arbitration Act (FAA), 9 U.S.C. §§ 3-4, or, at a minimum, to transfer venue under 28 U.S.C. § 1404(a).

## BACKGROUND

Hello Alice is an online resource platform that, among other things, facilitates providing grants to small businesses.  *See* First Am. Compl. ("FAC") ¶ 8.[1]  It has helped "over one million small businesses access capital."  FAC Ex. 4 at 2.  Hello Alice's platform hosts grants for "small business owners of all backgrounds and ethnicities."  *Id.* at 3.

In May 2023, Hello Alice, working with Progressive Insurance Company, offered ten grants of up to $25,000 each for "Black-owned small businesses to use toward the purchase of a commercial vehicle."  FAC ¶¶ 8, 11-12, 16.  Hello Alice's role was "[t]o administer the grant program."  FAC Ex. 4 at 2; FAC ¶ 16.  The grant program's goal was "to alleviate [the] challenge" resulting from demonstrated "inequities" that "have made it harder for Black entrepreneurs to access capital."  FAC Ex. 3 at 2.  Press materials cited a study stating that although "20 percent of Black Americans start businesses, only four percent of these businesses survive the startup stage due in large part to the difficulty Black business owners have in accessing financing."  FAC Ex. 4 at 2 (citing a study by McKinsey & Company).

The Progressive grants also had numerous eligibility criteria unrelated to race.  *See* FAC Ex. 3 at 3; *see also* FAC ¶ 18.  Applicants had to be a for-profit business with ten or fewer employees and under $5 million in gross annual revenue.  FAC Ex. 3 at 3.  Applicants also had to demonstrate "need for a qualifying commercial vehicle" along with "a clear plan for growth as a

---

[1] For the limited purposes of this motion, Hello Alice treats all allegations in the complaint as true as required by Rule 12.

result of this vehicle purchase." *Id.* Finally, applicants could not be "an independent contractor whose primary business is for a rideshare . . . or third-party food delivery" service. *Id.* Applications had to be submitted by June 2023. *See* FAC Ex. 3 at 2.

The grant's full terms and conditions ("Grant Terms") required "acknowledg[ing] that [Hello Alice] will collect private or personal data . . . submitted" in the application, may share that information with Progressive, and may use the information for promotional and marketing purposes. Mot. Ex. 1 at 6-7.[2] The Grant Terms also require any "dispute arising out of or relating to the Program or these Terms and Conditions" to be resolved "individually and exclusively by final and binding arbitration." *Id.*

Plaintiff Nathan Roberts, a White man, is the sole owner and member of Plaintiff Freedom Truck Dispatch LLC. FAC ¶¶ 10, 28. Roberts received an email from Progressive advertising the grant and "began filling" out the application. *Id.* ¶¶ 26-28. Filling out the application required Roberts to create an account with Hello Alice, which he did within a day of receiving the email advertising the grant program. *See* Mot. Ex. 2. The terms and conditions for creating an account ("Account Terms") included a forum selection clause designating the state and federal courts of Sonoma County, California, as the exclusive venue for disputes between Roberts and Hello Alice. Mot. Ex. 3 at 16. Roberts agreed to the Account Terms by creating an account. *See* Mot. Ex. 4.

When "Roberts came to [the] part of the application that made clear that the grants were available only to black-owned businesses," he "closed the application" and did not finish applying "because he is white and his business is white-owned." FAC ¶ 28. Within a day of receiving the grant email, Roberts forwarded it to the America First Legal Foundation. FAC Ex. 1 at 1.

---

[2] The Amended Complaint links to the Grant Terms, FAC ¶ 19, and the Grant Terms are therefore incorporated by reference and may be considered under Rule 12. *See Dulberg v. Uber Techs., Inc.*, No. C 17-00850 WHA, 2017 WL 3232426, at *3 (N.D. Cal. July 31, 2017).

Plaintiffs sued Progressive and Hello Alice, alleging a single cause of action under the Civil Rights Act of 1866, 42 U.S.C. § 1981.  *See* FAC ¶¶ 45-50.  They seek damages and injunctive relief on behalf of themselves and a putative class including "all individuals who were or are 'able and ready' to apply to Progressive's . . . grant program . . . and have been or would be subjected to adverse racial discrimination" as a result of applying.  *See id.* ¶¶ 36, 51.

## LEGAL STANDARDS

Rule 12(b)(6) directs the Court to dismiss an action "if the complaint does not state a claim upon which relief can be granted."  *Fla. Carpenters Reg'l Council Pension Plan v. Eaton Corp.*, 964 F. Supp. 2d 875, 883 (N.D. Ohio 2013), *aff'd sub nom.*, *In re KBC Asset Mgmt. N.V.*, 572 F. App'x 356 (6th Cir. 2014).  Rule 12(b)(1) similarly directs dismissal where a complaint on its face fails to allege facts sufficient to establish Article III standing.  *Yedlick v. Comm'r, IRS*, No. 19 CV 2139, 2020 WL 364245, at *2 (N.D. Ohio Jan. 21, 2020).  Under both rules, a court must "accept all factual allegations as true" but cannot accept "legal conclusions unsupported by factual allegations."  *Fla. Carpenters*, 964 F. Supp. 2d at 883 (citation omitted).  As to factual allegations, a complaint must include "sufficient 'factual content' from which a court . . . could 'draw the reasonable inference'" that the allegation is true.  *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "'[N]aked assertions . . .' contribute nothing to the sufficiency of the complaint."  *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).

Under Section 3 of the FAA, a court "shall stay the action until arbitration is had where the issue before the court is 'referrable to arbitration under such an agreement.'"  *Aggarwal v. Raytheon Co.*, No. 08 CV 1158, 2008 WL 11381827, at *3 (N.D. Ohio Sept. 16, 2008) (quoting 9 U.S.C. § 3).  Section 4 of the FAA authorizes the court to issue "an order directing that . . . arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.

3

Under 28 U.S.C. § 1404(a), a court "may transfer any civil action to any other district or division where it might have been brought or to any district or division in which all parties have consented." "In all but the most unusual cases," this provision requires courts to "transfer the case to the forum specified in a" forum selection clause. *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W.D. Tex.*, 571 U.S. 49, 52, 66 (2013). In considering a motion to transfer, a court may consider "[w]ritten documentary evidence submitted" outside the complaint. *Regan v. Encompass Sols.*, No. 1:20 CV 02305, 2020 WL 7352665, at *1 (N.D. Ohio Dec. 14, 2020).

## ARGUMENT

## I.    PLAINTIFFS FAIL TO ALLEGE CAUSATION UNDER ARTICLE III AND SECTION 1981.

A plaintiff must plead "but for" causation both to establish Article III standing and to state a claim under Section 1981. This means a plaintiff must plead that "but for" the alleged racial discrimination, he would not have suffered the deprivations alleged. Plaintiffs fail this test because they have not plausibly alleged that they met the threshold, non-racial eligibility requirements.

To plead standing, Article III requires plaintiffs to show that any injury is "'fairly traceable' to the 'allegedly unlawful conduct' of which they complain." *California v. Texas*, 141 S. Ct. 2104, 2113 (2021). The traceability requirement means that "when a white male is alleging 'reverse' discrimination, he must prove that 'but for'" the challenged race-based element, "he would have been considered" for the program. *Yeager v. Gen. Motors Corp.*, 67 F. App'x 335, 338 (6th Cir. 2003) (per curiam) (quoting *Yeager v. Gen. Motors Corp.*, 265 F.3d 389, 395 (6th Cir. 2001)).

Similarly, on the merits, a Section 1981 plaintiff "must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020). Concretely, this requires considering "the counterfactual—what would have happened if the plaintiff had been" of a

different race?  *Id.* at 1015.  The but-for causation test "is not met if the plaintiff would have suffered the harm" complained of "even if the plaintiff had" been of a different race.  *Lemaster v. Lawrence Cnty.*, 65 F.4th 302, 309 (6th Cir. 2023); *accord Jackson v. Clinic Sec. & Logistics, Inc.*, No. 22-cv-985, 2023 WL 2734669, at *3 (N.D. Ohio Mar. 31, 2023) (similar).

Plaintiffs here fail to plead the threshold causation requirement demanded by Article III and Section 1981.  There were at least five non-race-related eligibility criteria for the grants: (1) having ten or fewer employees; (2) having less than $5 million in annual gross revenue; (3) having a demonstrated need for a qualifying commercial vehicle to run the business; (4) having a clear plan for growth as a result of the vehicle purchase; and (5) not being an independent contractor providing a rideshare or food delivery service.  FAC ¶ 18; FAC Ex. 3 at 3.  Applicants who did not meet these criteria would not receive grants, no matter their race.  FAC Ex. 3 at 3.

In their original complaint, Plaintiffs did not allege that they met *any* of these non-race related criteria.  Their attempt to cure this deficiency falls well short of Rule 8's plausibility threshold.  Plaintiff Roberts executed a threadbare affidavit summarily stating that he "met the . . . eligibility criteria."  FAC Ex. 8 ¶¶ 4-5.  Roberts then lists the criteria, without providing *any* factual content supporting his conclusory assertion—even though all relevant facts are within his control.  The affidavit's deficiency is most striking with respect to whether Roberts had "a clear plan for growth as a result of the vehicle purchase."  *See id.* ¶ 5.  What was that plan?  What made it "clear"?  What would Plaintiffs even have done with the truck?  Plaintiffs offer exactly zero details— perhaps unsurprising, given that Roberts forwarded the listing to litigation counsel less than 24 hours after receiving it.  FAC Ex. 1 at 1.  Similar questions go unanswered regarding Roberts' supposed "demonstrated need for a qualifying commercial vehicle."  And even regarding the

5

number of employees, revenue, and nature of Plaintiffs' business, Roberts summarily states that he "met" the criteria without a single corroborating detail.

These allegations are "devoid of facts that would allow the Court to draw" the inference Plaintiffs seek. *Sam Han v. Univ. of Dayton*, 541 F. App'x 622, 626 (6th Cir. 2013); *accord Vartinelli v. Aramark Corr. Servs. LLC*, 796 F. App'x 867, 872 (6th Cir. 2019). There is no reason Roberts could not have provided this information. Indeed, if plaintiffs must include factual details "even if those facts are only within the head or hands of the defendants," it is all the more important to include them when they are within the plaintiffs' exclusive control. *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011).

Perhaps recognizing the problem, Plaintiffs throw in an allegation on "information and belief" that Hello Alice and Progressive would simply have overlooked failure to meet the non-race related eligibility criteria. FAC ¶ 20. The exhibits to Plaintiffs' complaint contradict that allegation. FAC Ex. 3 at 3 ("Applicants *must* meet all of the below criteria to be eligible" (emphasis added)); *see Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 684 (6th Cir. 2011) (allegations must be "viewed in light of the exhibits attached to the complaint"). And, in any event, the Sixth Circuit has repeatedly held that similarly unsupported "information and belief" allegations "contribute nothing" to a complaint. *16630 Southfield*, 727 F.3d at 506; *accord Spencer v. City of Hendersonville, Tenn.*, No. 20-6168, 2021 WL 8016828, at *6 (6th Cir. Oct. 8, 2021); *Barner v. Mackie*, No. 17-1608, 2017 WL 5633399, at *3 (6th Cir. Nov. 2, 2017).

Absent sufficient allegations of causation, this Court cannot conclude that "the plaintiff would have suffered the harm even" without the Black ownership criterion. *Lemaster*, 65 F.4th at 309. That is fatal both as a matter of Article III standing and under the causation element of Section 1981. *Id.*; *see also Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 323-324 (6th Cir. 2021) ("satisfying

but-for cause requires plaintiffs to show that [race] had a 'determinative influence on the outcome'" (citation and emphasis omitted)); *Yeager*, 265 F.3d at 396.

Attempting to dodge this straightforward conclusion, Plaintiffs puzzlingly allege that there were *two* contracts, one providing merely a chance to compete.  There is no legal authority to slice and dice the grant program in this way.  Even where a contest is governed by contract law—which is *not* the case here, *infra* pp. 8-11—courts treat the entire program as a single "option contract" that is "conditional on completion of . . . the terms of the offer."  *See* Restatement (Second) of Contracts ("R.2d Contracts") § 45.  Moreover, as Plaintiffs have not alleged they were eligible aside from the race requirement, they have not alleged they lost any "opportunity to compete."

The complaint suggests that Plaintiffs have adequately pled Article III standing so long as they were "able and ready to apply" for a grant.  FAC ¶ 29 (citing *Carney v. Adams*, 141 S. Ct. 493, 499-500 (2020), and *Gratz v. Bollinger*, 539 U.S. 244, 261 (2003)).  The Sixth Circuit has explained that a Plaintiff must allege he would have at least received "consideration" absent the race-based criterion.  *Yeager*, 265 F.3d at 395.  Someone ineligible based on *non*-race related criteria cannot satisfy that test, because they would not be under "consideration" regardless of their willingness to apply.  In other words, someone ineligible for unrelated reasons is not "able" to apply.  *Carney* illustrates that plaintiffs must supply factual support for claims that they are "ready and able" to apply.  141 S. Ct. at 502.  There, the Court rejected an attorney's assertion that he was "'able and ready' to apply in the imminent future" for a job as a judge where, among other things, he had consistently declined to apply for vacancies and had also apparently retired.  *Id.* at 500, 503.  Here, Plaintiffs have not adequately pled that they would have been "able" to apply absent the Black owned business requirement.  *See Fla. Carpenters*, 964 F. Supp. 2d at 883 ("[t]hreadbare recitals" and "conclusory statements[] do not suffice" (citation omitted)).  Additionally, Plaintiffs

cite no precedent that the ready-and-able-to-apply standard governs the causation element of a Section 1981 claim under *Comcast*.  So, even if Plaintiffs have adequately alleged Article III standing, they still do not state a claim on the merits.[3]

Plaintiffs' also have not pled standing for injunctive relief because they have not alleged a "sufficiently imminent and substantial" threat of *future* injury.  *Barber v. Charter Twp. of Springfield, Mich.*, 31 F.4th 382, 390 (6th Cir. 2022) (citation omitted).  Allegations of past harm are insufficient.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 111-112 (1983).  The application deadline was June 2023, FAC Ex. 3 at 2, and Plaintiffs cite nothing except "information and belief" to claim the grant will be offered again on similar terms, FAC ¶ 24.  Such an allegation "contribute[s] nothing" to the complaint.  *16630 Southfield*, 727 F.3d at 506; *see supra* p. 6 (collecting cases).

## II.   THE CHALLENGED GRANT WAS NOT A CONTRACTUAL RELATIONSHIP.

Plaintiffs' claims likewise fail because they have not alleged any contractual relationship that they were precluded from forming.  Section 1981 governs the right "to make and enforce contracts," and directs that all persons should have "the full and equal benefit" of that right "as is enjoyed by white citizens."  42 U.S.C. § 1981(a).  Consistent with that plain text, the Supreme Court has recognized that "[a]ny claim brought under § 1981 . . . must initially identify" racial discrimination that has "impaired [a] 'contractual relationship'" or "block[ed] the creation of a contractual relationship."  *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006).

Plaintiffs have failed to make the required allegation of "some contractual right."  *Williams v. Richland Cnty. Child. Servs.*, 489 F. App'x 848, 851 (6th Cir. 2012).  Courts look to state law

---

[3] If the Court believes separate standards govern these issues, it should address Article III standing before Hello Alice's arbitration and venue arguments, and address causation on the merits only if it rejects Hello Alice's arbitration and venue arguments.

to determine whether such a relationship would be formed.  *See, e.g.*, *Lindsay v. Yates*, 498 F.3d 434, 442 (6th Cir. 2007).  This Court therefore looks to Ohio law to determine whether Plaintiffs *would have* formed a contractual relationship with Hello Alice or Progressive.[4]

Ohio courts have held that "[g]ratuitous promises are not enforceable as contracts, because there is no consideration."  *Williams v. Ormsby*, 966 N.E.2d 255, 259 (Ohio 2012) (quoting *Carisle v. T&R Excavating, Inc.*, 704 N.E.2d 39, 43 (Ohio Ct. App. 1997)).  "A written gratuitous promise, even if it evidences an intent by the promisor to be bound, is not a contract."  *Carlisle*, 704 N.E.2d at 43.  "Whether there is consideration at all"—and, therefore, whether a document is a "written gratuitous promise" or a contract—is a question of law "proper . . . for a court" to resolve.  *Id.*

Importantly, "conditional gratuitous promises, which require the promisee to do something before the promised act" are likewise "not enforceable as contracts."  *Id.* (citing R.2d Contracts § 71 cmt. C).  That is, even when "the terms of the gift" technically "impose a burden on the donee as well as the donor," a promise to make a gift does not become a contract.  R.2d Contracts § 71 cmt. C.  And, from the donor's perspective, "[a] desire to help cannot be consideration for a contract; rather, it is merely a motive."  *Carlisle*, 704 N.E.2d at 43.

*Williston on Contracts* provides an archetypal example of a conditional gratuitous promise—an example adopted by Ohio courts.  *See Carlisle*, 704 N.E.2d at 45 & n.1 (citing 3 *Williston on Contracts* § 7:18 (4th ed. 1992)).  In the example, "a rich man offer[s] to a poor man that, if the poor man would go around the corner to a clothing store, the rich man would permit him to buy a coat on his credit."  *Id.* at 45 n.1.  "[E]ven though the poor man's walk to the store

---

[4] *See Glennon v. Dean Witter Reynolds, Inc.*, 83 F.3d 132, 136 (6th Cir. 1996) (courts in federal question cases follow choice of law rules of forum state); *Ohayon v. Safeco Ins. Co. of Ill.*, 747 N.E.2d 206, 211 (Ohio 2001) (Ohio focuses on "the place of contracting, the place of negotiation, the place of performance, the location of the subject matter, and the domicile of the contracting parties"); FAC ¶¶ 4-7 (stating residency of Plaintiffs and Progressive Defendants).

may be induced by, and taken in reliance on, the promise, it would be unreasonable for either man to understand the walk to the store as 'consideration' or as the price of the promise." *Id.*

In line with this example, Ohio cases have consistently found that conditional promises to give something are not contracts. *See, e.g.*, *Carlisle*, 704 N.E.2d at 45-46 (a "promise to provide the excavation and site work services for [a] preschool at no cost was a gratuitous promise," even though recipient agreed to pay the costs of materials); *Sowry v. Todd*, 213 N.E.3d 212, 223 (Ohio Ct. App. 2023) (settlement agreement gratuitous because the defendant had no "counterclaim or potential counterclaim" and so provided no benefit to the plaintiff), *appeal not allowed*, 215 N.E.3d 563 (Ohio 2023); *Playland Park Inc. v. Quality Mold, Inc.*, No. 26039, 2012 WL 1549915, at *1, *3 (Ohio Ct. App. May 2, 2012) (promise to pay costs associated with rezoning was gratuitous where promisor told promisee to "go ahead and do the work").

The grant program alleged here involves a gratuitous promise, not a contract. *See Moye v. Chrysler Corp.*, 465 F. Supp. 1189, 1190 (E.D. Mo. 1979) (Section 1981 does not apply to a company's choice "to voluntarily confer the benefit of [a charitable] payroll deduction plan" on a particular organization), *aff'd*, 615 F.2d 1365 (8th Cir. 1979) (unpublished table opinion).  The complaint identifies two of the Grant Terms it considers "consideration": (1) allowing "defendants to use the applicant's information for cross-selling and other . . . commercial use," and (2) the obligation to "use the money toward the purchase of a commercial vehicle."  FAC ¶¶ 21-22.

Neither condition turns this gratuitous promise into a contract.  *See Carlisle*, 704 N.E.2d at 43.  Allowing Hello Alice and Progressive to make limited use of information submitted during the grant process is no more onerous than the walk to the store in the *Williston* example—and it is far less burdensome than the condition of providing thousands of dollars in material costs found

10

not to be consideration in *Carlisle*. *Id.* at 45-46.  Likewise, specifying that grantees purchase a commercial vehicle is equivalent to directing the poor man to purchase a coat.  *Id.* at 45 n.1.

To be sure, the Grant Terms also include an arbitration provision—a provision Plaintiffs do not even attempt to rely on to establish consideration.  But, under Ohio law, even requiring a party to sign a full release of liability does not turn a gratuitous promise into a binding contract where the releasing party has no existing claim.  *Sowry*, 213 N.E.3d at 223.  By the same logic, a provision purporting to channel hypothetical future disputes to arbitration does not nudge an otherwise gratuitous promise into the territory of contract law.

### III.  IF THE COURT CONCLUDES CONTRACT LAW GOVERNS THE GRANT, PLAINTIFFS' CLAIM MUST BE SENT TO ARBITRATION; ALTERNATIVELY, THE COURT SHOULD TRANSFER THE CASE TO THE NORTHERN DISTRICT OF CALIFORNIA.

If the Court concludes the Grant Terms are a contract, then the Court should enforce the arbitration clause.  The Grant Terms require "any dispute arising out of or relating to the Program or these Terms and Conditions" to be resolved "individually and exclusively by final binding arbitration" under American Arbitration Association (AAA) "arbitration rules."  Mot. Ex. 1.

It is no answer that Roberts stopped filling out the application halfway through.  Under Ohio law, Plaintiffs are still required to arbitrate under the doctrine of equitable estoppel.  "Estoppel applies when a party who knowingly accepts the benefits of an agreement is estopped from denying a corresponding obligation to arbitrate."  *Cleveland-Akron-Canton Advert. Coop v. Physician's Weight Loss Ctrs. of Am., Inc.*, 922 N.E.2d 1012, 1016 (Ohio Ct. App. 2009) (citation omitted) ("*PWLC*").  It "prevents a party from picking and choosing the contract terms that it alleges govern its relationship with the other litigant."  *Atricure, Inc. v. Meng*, 12 F.4th 516, 527 (6th Cir. 2021).  Estoppel applies when a plaintiff "seek[s] to enforce duties that 'arise from the

contract containing the arbitration clause.'"  *Id.* at 527 (quoting *Taylor v. Ernest & Young, L.L.P.*, 958 N.E.2d 1203, 1213 (Ohio 2011)).

Ohio law requires Plaintiffs to arbitrate.  Through this suit, Plaintiffs seek to enforce the Grant Terms against Hello Alice and Progressive.  *See, e.g.*, FAC ¶ 23 (alleging Plaintiffs were precluded from the opportunity "to compete for and obtain the grant"); *id.* ¶ 32 (alleging Plaintiffs "were denied the ability to enter into contracts with the defendants").  Indeed, the relief Plaintiffs seek includes an injunction allowing them "to enter into the contracts described herein." *Id.* ¶ 49. Had Roberts simply finished filling out the application, there could be no dispute Plaintiffs were required to arbitrate.  They cannot avoid that obligation by leaving the application half-finished even as they continue to seek "the benefits of [the] agreement."  *PWLC*, 922 N.E.2d at 1016.[5]

Critically, the question of whether equitable estoppel binds the Plaintiffs is itself a question for the arbitrator, not the Court.  The arbitration provision here incorporates AAA rules.  Mot. Ex. 1.  Under controlling Sixth Circuit precedent, incorporating AAA rules amounts to a "clear and unmistakable" delegation of the question of arbitrability to the arbitrator.  *See Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 846 (6th Cir. 2020); *accord* AAA, *Commercial Arbitration Rules & Mediation Procedures*, R-7(a) (2022).  When such a delegation clause exists, whether equitable estoppel applies "presents a question of arbitrability . . . delegated to an arbitrator." *Swinger v. Rosette*, 989 F.3d 501, 507 (6th Cir. 2021); *accord Becker v. Delek US Energy, Inc.*, 39 F.4th 351, 355 (6th Cir. 2022).  The FAA thus requires this Court to stay litigation and compel arbitration.

---

[5] Roberts acted on behalf of himself and Freedom Truck Dispatch in filling out the forms.  *See* FAC ¶ 29.

If the Court does not compel arbitration, at a minimum it should enforce the forum selection clause Roberts agreed to when he created an account with Hello Alice.  The Account Terms provide that "exclusive jurisdiction for resolving any claim or dispute with [Hello Alice] or relating in any way to your use of the Platform or the Services resides in the state and federal courts of Sonoma County, California" and provide consent to personal jurisdiction there, too.  Mot. Ex. 3 at 16.  The clause extends to all "Services," including all "products, and personalized content," available on the "Platform," defined to include Hello Alice's website, or any "related websites and mobile applications."  Mot. Ex. 3 at 1.[6]  That broad scope encompasses this suit, and this Court should therefore transfer this case to the Northern District of California (the federal court serving Sonoma County).  *See Atl. Marine*, 571 U.S. at 62 ("Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion" based on a forum selection clause "be denied."); *Rosskamm v. Amazon.com, Inc.*, 637 F. Supp. 3d 500, 510-511 (N.D. Ohio 2022) (collecting cases enforcing similar forum selection clauses).

## IV. APPLYING SECTION 1981 TO THE CHALLENGED GRANT PROGRAM WOULD VIOLATE THE FIRST AMENDMENT.

On the merits, the Court should dismiss this case because applying Section 1981 to Hello Alice would violate First Amendment guarantees of freedom of speech and expression.

The attachments to the complaint establish that the purpose of the grant program is to express disapproval of—and to emphasize the importance of remedying—the "inequities" that "have made it harder for Black entrepreneurs to access capital."  FAC Ex. 3 at 2; *see also* FAC Ex. 4 at 2 ("With the Driving Business Forward grant program, Progressive is extending support to

---

[6] The forum selection clause covers all activities on Hello Alice's websites, while the arbitration clause applies solely to grant applicants.  Even if the Court concludes Plaintiffs are not bound to arbitrate through equitable estoppel, they remain bound by the forum selection clause Roberts agreed to when he created an account.

help close these gaps for Black entrepreneurs and elevate their businesses."); Amicus Br. at 10-11 (detailing these inequalities).  "[D]onating money qualifies as expressive conduct."  *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247, 1254 (11th Cir. 2021), *cert denied sub nom.*, *Coral Ridge Ministries Media, Inc. v. S. Poverty L. Ctr.*, 142 S. Ct. 2453 (2022); *see also Taverns for Tots, Inc. v. City of Toledo*, 341 F. Supp. 2d 844, 855 (N.D. Ohio 2004) (recognizing "giving money to charity as a form of speech or expression").  These grants clearly involve "some form of expression" regarding racial inequities, and the vital importance of remedying those problems.  *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000).  Alternatively, the grants here are a form of "political speech."  *Citizens United v. FEC*, 558 U.S. 310, 342 (2010).  As a charitable grant directed specifically at sociopolitical inequities in America's capital infrastructure, the grants are one of those "forms of communication made possible by the giving and spending of money" that "involve speech alone."  *Buckley v. Valeo*, 424 U.S. 1, 16 (1976) (per curiam).

Viewed as either expressive conduct or political speech, the grants trigger First Amendment protections.  *See Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 788-801 (1988) (holding the First Amendment protects various aspects of a charitable organization's business operations); *Planet Aid v. City of St. Johns*, 782 F.3d 318, 326 (6th Cir. 2015) ("speech regarding charitable giving and solicitation is entitled to strong constitutional protection").  The First Amendment therefore prohibits plaintiffs from using the courts to alter the sociopolitical message that a private party conveys through the terms on which it offers monetary donations.  "The First Amendment protects 'the right to speak freely and the right to refrain from speaking at all.'"  *Meriwether v. Hartop*, 992 F.3d 492, 503 (6th Cir. 2021).  The government therefore "may not compel affirmance of a belief with which the speaker disagrees," and when it "tries to do so anyway, it violates this 'cardinal constitutional command.'"  *Id.* (citations omitted).  Because the

"choice of what charities are eligible to receive donations" is part and parcel of the expression involved in this grant program, the government cannot dictate the terms on which the donor chooses to offer the grant. *Coral Ridge*, 6 F.4th at 1255; *see also Dale*, 530 U.S. at 653 (courts must "give deference to an association's assertions regarding the nature of its expression," as well as "what would impair [that] expression").

The First Amendment's prohibition on compelling speech extends to applying general non-discrimination laws like Section 1981 to expressive conduct or political speech. The Supreme Court's recent opinion in *303 Creative LLC v. Elenis*, 600 U.S. 570 (2023), illustrates this rule. *303 Creative* recognized that the First Amendment prohibits seeking "to compel a person to speak its message . . . or to force an individual to include other ideas with his own speech that he would prefer not to include." *Id.* at 586. The Court applied that rule in the context of website designer, holding that Colorado's general anti-discrimination provision—which covers sexual orientation—could not be used to compel the provider to design a website for a same-sex marriage. *Id.* at 588. The Court held that "no public accommodations law is immune from the demands of the Constitution" and therefore the law could not be used "to compel speech." *Id.* at 592.

*303 Creative* built on principles from *Hurley v. Irish-American Gay, Lesbian, and Bisexual Group of Boston*, 515 U.S. 557 (1995), and *Boy Scouts of America v. Dale*. *Hurley* held that Massachusetts's public accommodations law could not be used to force parade organizers to include a group when doing so would amount to "alter[ing] the expressive content of their parade." 515 U.S. at 572-573. The Court emphasized the right of one engaged in protected expressive conduct "to tailor the speech" and avoid "endorsement . . . the speaker would rather avoid." *Id.* at 573. *Dale* similarly held that the Boy Scouts could not be compelled to include a gay scoutmaster, whose inclusion "would significantly affect its expression" in the form of teaching against

15

homosexuality.  530 U.S. at 656.  *Dale* recognized that enforcing such non-discrimination laws would impermissibly "interfere with the ideas that the organization sought to express."  *Id.* at 657.

Thus, where an altruistic grant's purpose is to disapprove of and remedy racism's pernicious effects, the First Amendment prohibits using Section 1981 to interfere with that message.  A contrary rule would "modify the content of" the donor's speech," *Coral Ridge*, 6 F.4th at 1256, or "deny speakers the right 'to choose the content of [their] own message[s],'" *303 Creative*, 600 U.S. at 592 (citation omitted).  Here, compelling Hello Alice to expand the grant's terms would dilute its message regarding racial inequality beyond recognition.  The First Amendment does not permit a person to be "shanghaied for [such] an unwanted voyage."  *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2466 (2018).  Indeed, there is a long tradition in this country of providing support and charity to particular ethnic or racial groups that have historically faced stigma—including, for example, the Sons of Italy[7] and the Hebrew Free Burial Association.[8]

A district court in Georgia reached a similar conclusion.  *Am. All. for Equal Rts. v. Fearless Fund Mgmt., LLC*, No. 23-CV-3434, 2023 WL 6295121 (N.D. Ga. Sept. 27, 2023).  The court recognized that, through grants, the defendant "clearly intends to convey a particular message" about the value of businesses owned by Black women.  *Id.* at *6.  And it concluded that, under *303 Creative*, the First Amendment would prevent Section 1981 from altering that "speech and expression."  *Id.* at *6-7.  The court relied on *Coral Ridge*, which held federal anti-discrimination laws could not compel Amazon to include organizations with religious views the company found objectionable among potential recipients for donations.  *Coral Ridge*, 6 F.4th at 1254-56.

---

[7] https://www.osdia.org/
[8] https://www.hebrewfreeburial.org/

An Eleventh Circuit motions panel granted an injunction pending appeal, but the panel's conclusory reasoning is deeply flawed.  The court attempted to distinguish *303 Creative* on the grounds that the grants there did not "provide 'expressive services' or otherwise engage in 'pure speech.'" *Am. All. for Equal Rts. v. Fearless Fund Mgms., LLC*, No. 23-13138, 2023 WL 6520763, at *1 (11th Cir. Sept. 30, 2023).  But *303 Creative* did not turn on such a distinction.  On the contrary, it applied principles developed in expressive conduct cases, such as *Hurley* and *Dale*, recognizing those cases "may not have implicated pure speech." *303 Creative*, 600 U.S. at 586 (citing *Dale*, 530 U.S. at 656).  Nevertheless, the organizations were entitled to First Amendment protection from laws that would have "materially interfere[d] with the ideas that the organization sought to express." *Dale*, 530 U.S. at 657.  Moreover, even if "pure speech" were required, the challenged grants here are directly targeted at the sociopolitical conditions fueling inequitable access to capital, FAC Ex. 3 at 2; FAC Ex. 4 at 2, and therefore constitute protected "political speech" under Supreme Court precedent, *Citizens United*, 558 U.S. at 342.

The Eleventh Circuit stay panel also cited *Runyon v. McCrary*, 427 U.S. 160 (1976), but *Runyon* does not undermine the First Amendment's protection here.  In *Runyon*, the Supreme Court held that the conduct at issue—excluding children from private schools based on race—was not "accorded affirmative constitutional protections." *Id.* at 161 (citation omitted).  In other words, the Court held that the segregation policy at issue in *Runyon* simply did not implicate the constitutional freedom of association embodied in the First Amendment. *Id.* at 176; *see also id.* (recognizing that admission of Black students would not "inhibit in any way the teaching in these schools of any ideas or dogma" (citation omitted)).  Accordingly, *Runyon* did not consider how to handle a conflict between First Amendment-protected conduct and a public accommodation law.  The Eleventh Circuit was therefore wrong to read *Runyon* to conclude that the First Amendment

17

"does not give the defendants the right to exclude persons from a contractual regime based on their race." *Fearless Fund*, 2023 WL 6520763, at *1. On the contrary, *303 Creative* squarely held that "no public accommodations law is immune from the demands of the Constitution." 600 U.S. at 592. As the grants here *are* protected, *Runyon* does not undermine *303 Creative*'s clear command.

Tellingly, the *Fearless Fund* stay panel altogether ignored *Coral Ridge* and its conclusion that compelled donations were incompatible with the First Amendment. *See Fearless Fund*, 2023 WL 6520763, at *1. The Eleventh Circuit's reasoned opinion in *Coral Ridge* correctly assessed the Supreme Court's precedent in this area—not the *Fearless Fund* summary order—and this Court should follow *Coral Ridge*'s persuasive reasoning to conclude that the First Amendment bars Plaintiffs' suit. At minimum, the Court should read Section 1981 in light of these concerns and construe it to permit these grants. *See Torres v. Precision Indus., Inc.*, 938 F.3d 752, 754-755 (6th Cir. 2019) (citation omitted); *see supra* pp. 8-11 (Section 1981 inapplicable to non-contractual grants); *infra* pp. 19-20 (discussing private affirmative action programs).

Plaintiffs also appear to argue that the grants were really a "marketing scheme" and therefore unprotected by the First Amendment. *See* FAC ¶ 25. That allegation is not plausible because it contradicts the complaint exhibits explaining the grant's motivations. *See* FAC Ex. 3 at 2; FAC Ex. 4 at 2; *Rondigo*, 641 F.3d at 684 (allegations must be viewed alongside exhibits). Moreover, Plaintiffs' theory appears to be that *any* element of commercial motivation defeats a protected First Amendment purpose. That argument fails as a matter of law. In *303 Creative*, for instance, the Court found a service offered for sale to be protected. *See* 600 U.S. at 596. *Coral Ridge* likewise involved a donation program that incentivized commercial transactions by donating a percentage of "every purchase . . . to an eligible charity selected by the consumer." 6 F.4th at 1250. Thus, Plaintiffs fail to allege any facts inconsistent with First Amendment protections.

18

## V.     THE CHALLENGED GRANT PROGRAM WAS A VALID AFFIRMATIVE ACTION PROGRAM.

The Supreme Court has recognized that anti-discrimination provisions like Section 1981 are not applicable to private-sector affirmative action programs.  *Johnson v. Transp. Agency, Santa Clara Cnty.*, 480 U.S. 616, 626-627 (1987).  Specifically, it recognized that "an affirmative action plan" is a permissible "nondiscriminatory rationale" for race-conscious behavior under federal anti-discrimination statutes.  *Id.*  Where a defendant asserts "reliance on [an] affirmative action plan," the "burden of proving its invalidity remains on the plaintiff."  *Id.* at 627.  These principles apply in Section 1981 cases.  *See, e.g., Doe v. Kamehameha Schs.*, 470 F.3d 827, 837-838 (9th Cir. 2006) (en banc); *Ferrill v. Parker Gr., Inc.*, 168 F.3d 468, 474 & n.12 (11th Cir. 1999); *see also United Steelworkers of Am., AFL-CIO-CLC v. Weber*, 443 U.S. 193, 204 (1979) (recognizing that, even after Section 1981 and Title VII, Congress had not passed a "legislative prohibition of all voluntary, private, race-conscious efforts to abolish traditional patterns of racial segregation").

A lawful affirmative action program exists where there is "a 'manifest imbalance' . . . that would justify taking . . . race into account" and the plan does not "unnecessarily trammel[] the rights of" other groups.  *Johnson*, 480 U.S. at 631-632, 637.  Those criteria encompass the challenged grant program.  The complaint's exhibits evidence precisely the kind of "manifest imbalance" that *Johnson* contemplates, noting "[w]hile 20 percent of Black Americans start businesses, only four percent of these businesses survive the startup stage due in large part to the difficulty Black business owners have in accessing financing."  FAC Ex. 4 at 2; *see also* FAC Ex. 3 at 2 ("Multiple studies have shown how inequities have made it harder for Black entrepreneurs to access capital."); Amicus Br. at 10-11.  Plaintiffs allege nothing to support a contrary position.

Plaintiffs have also not alleged that ineligibility for the specific grant at issue "unnecessarily trammel[s]" their rights.  *Johnson*, 480 U.S. at 637.  Once again, their allegations

establish that the opposite is true.  The grant's promotional materials expressly state that "the Hello Alice Small Business Growth Fund . . . awards grants to small business owners of all backgrounds and ethnicities."  FAC Ex. 4 at 3; *see also id.* at 4.  Indeed, another grant open to "small business owners of all backgrounds" was available immediately after the grant at issue.  FAC Ex. 1 at 2.

Plaintiffs may attempt to argue that *Johnson* was implicitly overruled by *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181 (2023).  They would be wrong.  Most critically, *Johnson* and its progeny are *statutory* decisions, not constitutional decisions.  Stare decisis "carries enhanced force when a decision . . . interprets a statute" because "critics of [the] ruling can take their objections" to Congress, who "can correct any mistake it sees."  *Kimble v. Marvel Ent., LLC*, 576 U.S. 446, 456 (2015); *accord Ramos v. Louisiana*, 140 S. Ct. 1390, 1413 & n.2 (2020) (Kavanaugh, J., concurring).  *Students for Fair Admissions* is also trained on "*governmentally imposed* discrimination based on race."  600 U.S. at 206 (cleaned up) (emphasis added).  It does not undermine *Johnson*'s focus on Congress's decision not to proscribe "voluntary, private, race-conscious efforts to abolish traditional patterns of racial segregation."  480 U.S. at 629 (citation omitted); *see also* Amicus Br. at 4-7 (discussing this history).  The Court should thus apply *Johnson* to hold this grant is a permissible private affirmative action program.

## <u>CONCLUSION</u>

For these reasons, Hello Alice's motion should be granted and the complaint should be dismissed for lack of Article III standing under Rule 12(b)(1).  If the Court concludes that Plaintiffs have standing and have alleged a contractual relationship, the Court should stay this litigation and compel arbitration under the FAA or, alternatively, transfer venue to the Northern District of California under 28 U.S.C. § 1404(a).  Otherwise, the complaint should be dismissed under Rule 12(b)(6).  If the Court dismisses under Rule 12(b)(6), it should do so with prejudice because Plaintiffs have already taken a full opportunity to cure the deficiencies identified in this Motion.

Dated: February 7, 2024

Respectfully submitted,

*/s/ Michael N. Ungar*
Michael N. Ungar (0016989)
Dolores Garcia (0085644)
Halden R. Schwallie (0093665)
UB GREENSFELDER LLP
Skylight Office Tower
1660 West 2nd Street, Suite 1100
Cleveland, Ohio 44113-1406
Phone: (216) 583-7000
Facsimile: (216) 583-7001
Email: mungar@ubglaw.com
Email: dgarcia@ubglaw.com
Email: hschwallie@ubglaw.com

Neal Kumar Katyal (admitted pro hac vice)
David M. Foster (admitted pro hac vice)
Reedy C. Swanson (admitted pro hac vice)
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, D.C. 20004
Phone: (202) 637-5600
Facsimile: (202) 637-5910
Email: neal.katyal@hoganlovells.com
Email: david.foster@hoganlovells.com
Email: reedy.swanson@hoganlovells.com

*Attorneys for Defendant*
*Circular Board Inc.*

## CERTIFICATE OF COMPLIANCE

I, Michael N. Ungar, certify that this case has not been assigned to any track under L.R. 16.2(a).  I further certify that this memorandum complies with the page limitation set forth in L.R. 7.1(f) for unassigned cases.

*/s/ Michael N. Ungar* _____
*One of the Attorneys for Defendant*
*Circular Board Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of February, 2023, a copy of Defendants' Motion to Dismiss and Memorandum in Support of Motion to Dismiss was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Michael N. Ungar* _____
*One of the Attorneys for Defendant*
*Circular Board Inc.*