IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

NATHAN ROBERTS and FREEDOM
TRUCK DISPATCH LLC, on behalf of
themselves and all others similarly situated,

    Plaintiffs,

v.

PROGRESSIVE PREFERRED INSURANCE
COMPANY; PROGRESSIVE CASUALTY
INSURANCE COMPANY; CIRCULAR
BOARD INC.,

    Defendants.

Case No. 1:23-cv-01597
Hon. Patricia A. Gaughan
Mag. Judge James E. Grimes, Jr.

**BRIEF OF THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION AS
AMICUS CURIAE SUPPORTING DEFENDANTS ON THE ISSUE ADDRESSED
HEREIN**

## TABLE OF CONTENTS

Table of Contents ................................................................................................................. i

Table of Authorities ............................................................................................................ ii

Statement of Interest .......................................................................................................... 1

Background ........................................................................................................................ 1

Argument ........................................................................................................................... 2

    I.    Title VII standards, which courts have applied to 42 U.S.C. § 1981, permit private employers to adopt voluntary affirmative-action plans to remedy manifest imbalances. .......... 3

    II.    Voluntary affirmative-action programs implemented by private entities are not subject to strict scrutiny .................................................................................................................. 5

Conclusion ........................................................................................................................ 11

## TABLE OF AUTHORITIES

**Cases**

*Am. All. for Equal Rts. v. Fearless Fund Mgmt., LLC*,
   No. 1:23-CV-3424-TWT, 2023 WL 6295121 (N.D. Ga. Sept. 27, 2023)..................................8

*Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*,
   140 S. Ct. 1009 (2020).............................................................................................................4

*Cooper v. MRM Inv. Co.*,
   367 F.3d 493 (6th Cir. 2004)....................................................................................................9

*Doe v. Kamehameha Schs./Bernice Pauahi Bishop Est.*,
   470 F.3d 827 (9th Cir. 2006) (en banc) .......................................................................4, 7, 8, 9

*Edmonson v. U.S. Steel Corp.*,
   659 F.2d 582 (5th Cir. 1981) (per curiam)...............................................................................4

*EEOC v. Green JobWorks, LLC*,
   No. CV RDB-21-1743, 2022 WL 1213478 (D. Md. Apr. 25, 2022)......................................10

*EEOC v. Mavis Discount Tire, Inc.*,
   129 F. Supp. 3d 90 (S.D.N.Y. 2015).......................................................................................10

*EEOC v. Rosebud Rests., Inc.*,
   85 F. Supp. 3d 1002 (N.D. Ill. 2015) ......................................................................................10

*Frost v. Chrysler Motor Corp.*,
   826 F. Supp. 1290 (W.D. Okla. 1993) .....................................................................................4

*Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*,
   458 U.S. 375 (1982).................................................................................................................9

*Gratz v. Bollinger*,
   539 U.S. 244 (2003)..............................................................................................................8, 9

*Griggs v. Duke Power Co.*,
   401 U.S. 424 (1971).................................................................................................................5

*Johnson v. Transp. Agency*,
   480 U.S. 616 (1987)........................................................................................................ passim

*Price Waterhouse v. Hopkins*,
   490 U.S. 228 (1989).................................................................................................................3

*Rabbani v. Gen. Motors Corp.*,
   No. 3:98CV425/RV, 2000 WL 36752977 (N.D. Fla. July 26, 2000).......................................5

*Rabbani v. Gen. Motors Corp.*,
   252 F.3d 443 (11th Cir. 2001) ................................................................................................5

*Rudebusch v. Hughes*,
   313 F.3d 506 (9th Cir. 2002) ..............................................................................................7, 8

*Schurr v. Resorts Int'l Hotel, Inc.*,
   196 F.3d 486 (3d Cir. 1999)...................................................................................................4

*Setser v. Novack Inv. Co.*,
   657 F.2d 962 (8th Cir. 1981) (en banc) ....................................................................1, 4, 9, 10

*Shalala v. Ill. Council on Long Term Care, Inc.*,
   529 U.S. 1 (2000)...................................................................................................................9

*Sharkey v. Dixie Elec. Membership Corp.*,
   262 F. App'x 598 (5th Cir. 2008) ...........................................................................................6

*Shea v. Kerry*,
   796 F.3d 42 (D.C. Cir. 2015) .................................................................................................4

*Stock v. Universal Foods Corp.*,
   817 F. Supp. 1300 (D. Md. 1993) ..........................................................................................4

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
   600 U.S. 181 (2023)............................................................................................................8, 9

*United Steel Workers of Am. v. Weber*,
   443 U.S. 193 (1979)....................................................................................................... passim

**Statutes**

42 U.S.C. § 1981................................................................................................................. passim

42 U.S.C. §§ 2000e et seq............................................................................................... passim

**Other Authorities**

29 C.F.R. pt. 1608..................................................................................................................1, 5

29 C.F.R. § 1608.1 .....................................................................................................................3

29 C.F.R. § 1608.2 .....................................................................................................................6

29 C.F.R. § 1608.3 .....................................................................................................................5

29 C.F.R. § 1608.4 ..................................................................................................................6, 7

EEOC Compliance Manual .......................................................................................................3

N.Y. State Bar Ass'n, Task Force on Advancing Diversity, Report and
  Recommendation (Sept. 20, 2023),
  https://nysba.org/app/uploads/2023/09/NYSBA-Report-on-Advancing-
  Diversity-9.20.23-FINAL-with-cover.pdf ...............................................................................1

Reply Br. of Appellant, *Am. All. for Equal Rts. v. Fearless Fund Mgmt., LLC*,
  No. 23-13138 (11th Cir. Jan. 3, 2024) .....................................................................................8

## STATEMENT OF INTEREST

The Equal Employment Opportunity Commission (EEOC) is charged by Congress with enforcing Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. The EEOC has accordingly promulgated Guidelines regarding permissible voluntary affirmative-action plans[1] under Title VII to remedy the effects of past discrimination. *See* 29 C.F.R. pt. 1608.

The EEOC has a strong interest in the proper interpretation of Title VII as it relates to private-sector, voluntary affirmative-action plans. This case implicates the standards governing private-sector, voluntary affirmative-action plans under 42 U.S.C. § 1981, which courts have modeled on Title VII race-based affirmative-action standards. *See Setser v. Novack Inv. Co.*, 657 F.2d 962, 966-67 (8th Cir. 1981) (en banc). The EEOC accordingly offers its views regarding the Title VII standards.

## BACKGROUND

According to the First Amended Complaint (FAC), in 2023, defendants Progressive Preferred Insurance Company and Progressive Casualty Insurance Company (Progressive) announced their "Driving Small Businesses Forward" grant program, administered by defendant Circular Board Inc. (Hello Alice). R.32-4 at 3.[2] Through the grant program, defendants would award ten $25,000 grants to small, Black-owned businesses to use toward purchasing a

---

[1] We note that voluntary affirmative-action programs are generally distinct from employer programs to achieve diversity, equity, inclusion, and accessibility, or "DEIA programs." Permissible DEIA programs are designed to ensure that all employees have a full and equal opportunity to participate, contribute, and succeed in the workforce and typically "do not make or encourage decisions to be made on the basis of race or another protected characteristic." N.Y. State Bar Ass'n, Task Force on Advancing Diversity, Report and Recommendation 57 (Sept. 20, 2023), https://nysba.org/app/uploads/2023/09/NYSBA-Report-on-Advancing-Diversity-9.20.23-FINAL-with-cover.pdf. DEIA programs are not at issue in this case.

[2] We reference documents filed with the Court as R.# at *, with # referring to the document's number on the docket, and * referring to the court-stamped page number.

1

commercial vehicle. *Id*. In announcing the program, defendants cited consulting firm McKinsey & Company's finding that "[w]hile 20 percent of Black Americans start businesses, only four percent of these businesses survive the startup stage due in large part to the difficulty Black business owners have in accessing financing." *Id*. Through the "Driving Small Businesses Forward" grant program, defendants sought to "extend[] support to help close these gaps for Black entrepreneurs and elevate their businesses." *Id*. Defendants also partnered to offer grants of between $5,000 and $25,000 to small-business owners "of all backgrounds" through their Small Business Growth Fund. R.32-1 at 3.

Progressive emailed plaintiff Nathan Roberts promoting these two grant programs and encouraging him to apply. *Id*. Roberts, who is White, wanted to apply for the "Driving Small Business Forward" grant on behalf of his company, plaintiff Freedom Truck Dispatch LLC, but when he realized the grant was available only to Black-owned businesses, he did not complete an application. R.32 ¶¶ 26-30.

Roberts and Freedom Truck Dispatch sued Progressive and Hello Alice, alleging that the "Driving Small Business Forward" grant program violates 42 U.S.C. § 1981. The plaintiffs purport to represent a class of "all individuals who were or are 'able and ready' to apply to Progressive's 'Driving Small Business Forward' grant program . . . and have been or would be subjected to adverse racial discrimination on account of the defendants' behavior." R.32 ¶ 36.

On February 7, Progressive and Hello Alice moved to dismiss the FAC. Among other things, Hello Alice argued that the challenged grant program is a valid affirmative-action program under section 1981, invoking the Title VII affirmative-action framework. R.35 at 30-31.

## ARGUMENT

The EEOC and the Supreme Court have long agreed that Title VII permits employers to adopt voluntary affirmative-action plans to remedy manifest imbalances in their workforces.

2

Courts have interpreted section 1981 to allow voluntary race-based affirmative action as well, in employment and non-employment cases, guided by the framework established in the Supreme Court's Title VII affirmative-action caselaw. The Supreme Court did not alter the standards for purely private affirmative-action measures in its postsecondary education affirmative-action decisions under the Equal Protection Clause and Title VI of the Civil Rights Act of 1964.[3]

## I. Title VII standards, which courts have applied to 42 U.S.C. § 1981, permit private employers to adopt voluntary affirmative-action plans to remedy manifest imbalances.

The Supreme Court has long held that Title VII permits voluntary affirmative-action plans in private employment. *See generally Johnson v. Transp. Agency*, 480 U.S. 616 (1987);[4] *United Steel Workers of Am. v. Weber*, 443 U.S. 193 (1979); *see also Price Waterhouse v. Hopkins,* 490 U.S. 228, 239 & n.3 (1989) (plurality opinion) (noting that Title VII's "announcement that sex, race, religion, and national origin are not relevant to the selection, evaluation, or compensation of employees" did not encompass "the special context of affirmative action").

According to the EEOC's Compliance Manual, "[a]ffirmative action . . . is not a type of discrimination but a justification for a policy or practice based on race, sex, or national origin." EEOC Compliance Manual § 607.1(a), 2006 WL 4673406 (1981); *id*. § 607.2(a), 2006 WL 4672863; *see also* 29 C.F.R. § 1608.1 (voluntary affirmative-action plans are consistent with, and further the purpose of, Title VII). A voluntary affirmative-action plan is an effort by an employer, absent a court order or legal requirement, to address identified barriers to equal

---

[3] The EEOC takes no position on any other arguments defendants advanced in their motions to dismiss.

[4] The employer in *Johnson* was a public entity subject to the Equal Protection Clause. But because the plaintiff did not raise a "constitutional issue," the Court decided "only the issue of the prohibitory scope of Title VII." *Johnson*, 480 U.S. at 620 n.2.

employment opportunity by increasing the representation of underrepresented groups in specific job categories in the employer's workforce to a level that is commensurate with their proportion of the relevant labor market. *See Johnson,* 480 U.S. at 640-42 (upholding employer plan that included sex as "one of several factors that may be taken into account in evaluating qualified applicants for a position" as part of employer's plan to increase representation of women in positions where they had traditionally been underrepresented); *Weber,* 443 U.S. at 197 (upholding voluntary plan that reserved openings in a training program for Black employees "until the percentage of black craft-workers in the plant is commensurate with the percentage of blacks in the local labor force"); *Shea v. Kerry*, 796 F.3d 42, 65 (D.C. Cir. 2015) (upholding a short-term race-conscious plan that allowed racial minorities to be exempted from State Department's usual preference for internal hiring).

Courts have similarly held that 42 U.S.C. § 1981 permits voluntary race-based affirmative-action programs and have looked to Title VII standards to evaluate such programs.[5] *Setser*, 657 F.2d at 966-69; *see also Schurr v. Resorts Int'l Hotel, Inc.*, 196 F.3d 486, 498-99 (3d Cir. 1999); *Edmonson v. U.S. Steel Corp.*, 659 F.2d 582, 583-84 (5th Cir. Unit B 1981) (per curiam); *Frost v. Chrysler Motor Corp.*, 826 F. Supp. 1290, 1294 (W.D. Okla. 1993); *Stock v. Universal Foods Corp.*, 817 F. Supp. 1300, 1306 (D. Md. 1993). Courts, including the *en banc* Ninth Circuit, have also upheld affirmative action under section 1981 in cases not involving employment, adapting the Title VII framework to fit the case's context. *See Doe v. Kamehameha Schs./Bernice Pauahi Bishop Est.*, 470 F.3d 827, 839, 849 (9th Cir. 2006) (en banc) (upholding section 1981 voluntary affirmative-action program implemented by private school that receives

---

[5] The EEOC notes that Title VII and section 1981 have not been interpreted coterminously in all respects. *See Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1017-19 (2020) (Title VII's "motivating factor" causation standard inapplicable to section 1981).

4

no federal funding); *see also Rabbani v. Gen. Motors Corp.*, No. 3:98cv425/RV, 2000 WL 36752977, at *4 (N.D. Fla. July 26, 2000) (upholding General Motors's Minority Dealer Development Program as valid section 1981 affirmative-action program), *aff'd*, 252 F.3d 443 (11th Cir. 2001).

## II. Voluntary affirmative-action programs implemented by private entities are not subject to strict scrutiny.

The Supreme Court's decisions in *Johnson* and *Weber* govern the analysis of Title VII private affirmative-action plans. Under those precedents, courts assess three factors: (1) whether the plan responds to a "manifest imbalance" in "traditionally segregated job categories"; (2) whether the plan "unnecessarily trammel[s] the rights of" employees not favored by the plan; and (3) whether the plan is temporary and intended to attain, rather than maintain, a balanced workforce. *Johnson*, 480 U.S. at 631-39.

EEOC Guidelines provide a roadmap for employers seeking to implement valid affirmative-action plans. *See* 29 C.F.R. Part 1608. Mirroring the *Johnson*/*Weber* framework, the Guidelines recognize that entities covered by Title VII may "take affirmative action to correct the effects of prior discriminatory practices." *Id*. § 1608.3(b). Those prior discriminatory practices need not be attributable to the party initiating the affirmative-action plan; indeed, the Guidelines suggest that a covered entity should "be concerned with the effect on its employment practices of circumstances which may be the result of discrimination by other persons or institutions." *Id*. § 1608.4(a) (citing *Griggs v. Duke Power Co.*, 401 U.S. 424 (1971)); *see also Johnson*, 480 U.S. at 632-33 (manifest imbalance in employer's workforce need not rise to the level of a prima facie case to justify a voluntary affirmative-action plan). Thus, the Guidelines implicitly recognize that employers need not remain passive in the face of historical

5

discrimination in their industry or geographic area that has caused a racial or gender imbalance in their workforce.

Reasonableness governs the process: once a Title VII-covered employer concludes, through a reasonable self-assessment, that it has a reasonable basis to take affirmative action, it can then take action that is reasonable in relation to the problems disclosed by the self-analysis to address the effects of past discrimination. 29 C.F.R. § 1608.4(a)-(c). Reasonable action "may include the adoption of practices which will eliminate the . . . effect o[f] past discrimination by providing opportunities for members of groups which have been excluded, regardless of whether the persons benefited were themselves the victims of prior policies or procedures which produced the adverse impact or disparate treatment or which perpetuated past discrimination." *Id*. § 1608.4(c). Moreover, the race- or gender-dependent aspects of the affirmative-action program must last "only so long as is necessary to achieve [the program's reasonable] objectives" and "avoid[] unnecessary restrictions on opportunities for the workforce as a whole." *Id*. § 1608.4(c)(2)(i). Thus, the Title VII standard for voluntary affirmative action requires the employer to take care to limit the burden on non-beneficiaries of the program. *See Johnson*, 480 U.S. at 637-38.

In Title VII litigation challenging action taken pursuant to an affirmative-action plan, the plaintiff bears the burden of proving that the plan is invalid. *See id.* at 626 (acknowledging that it is the plaintiff's burden to establish that a challenged voluntary affirmative-action plan is invalid); *see also Sharkey v. Dixie Elec. Membership Corp.*, 262 F. App'x 598, 603 (5th Cir. 2008) (affirmative-action plan is not an affirmative defense). Employers enjoy a safe harbor from Title VII liability when their affirmative-action plans are in writing and conform with EEOC Guidelines. *See* 29 C.F.R. §§ 1608.2, 1608.4(d)(1). An unwritten plan does not enjoy this safe

6

harbor, but it may nonetheless constitute a viable defense to a discrimination charge filed with the Commission. *Id*. § 1608.4(d)(2).

As discussed above, multiple courts have held that affirmative action is appropriate under section 1981 as well and have looked to Title VII principles to guide the affirmative-action analysis. *See supra* at 4-5. When assessing affirmative-action programs implemented by private entities outside the hiring and promotion context, courts have adapted the *Johnson*/*Weber* framework to fit the case's context. In *Doe*, for instance, the Ninth Circuit adapted the employment-related affirmative-action analysis to fit the context of admissions at a private high school that does not accept federal funding. 470 F.3d at 839-46. The court looked to the *Johnson* factors but modified them to account for the fact that an affirmative-action program in school admissions—one with the broad goal of "ensuring that significantly underachieving minority groups are included fully as tomorrow's citizens, leaders, and workers"—should focus externally on the community at large, not just on the school's current population. *Id*. at 842.

Likewise, in *Rudebusch v. Hughes*, 313 F.3d 506 (9th Cir. 2002), a Title VII case, the court modified the affirmative-action analysis to assess the legality of an employer's efforts to remedy pay disparities adversely affecting female and minority faculty. The most significant modification came in the court's analysis of whether the employer's pay adjustments unnecessarily trammeled the rights of White, male faculty. *Id*. at 521-23. The court reasoned that White, male faculty were not barred from otherwise receiving pay adjustments, but that the one-time pay adjustment was made *only because* of the imbalance affecting the pay of minority and female faculty. *Id*. at 521-22. The court rejected the notion that, "anytime an employer attempts to address a manifest imbalance in the pay equity context, it must simultaneously consider the

7

unrelated concerns of those employees who have not demonstrated such a legally cognizable imbalance." *Id*. at 522-23.

Plaintiffs here may attempt to argue, as the plaintiffs in similar litigation have, that the Supreme Court in *Gratz v. Bollinger*, 539 U.S. 244 (2003), held that section 1981 is coextensive with the Equal Protection Clause and therefore an affirmative-action plan under section 1981 must satisfy strict scrutiny. *See* Reply Br. of Appellant at 11-12, *Am. All. for Equal Rts. v. Fearless Fund Mgmt., LLC*, No. 23-13138 (11th Cir. Jan. 3, 2024) (*Fearless Fund*). They may therefore argue that the standards announced in *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181 (2023) (*SFFA*), should govern the analysis of any voluntary affirmative-action plan under section 1981. *See Am. All. for Equal Rts. v. Fearless Fund Mgmt., LLC*, No. 1:23-CV-3424-TWT, 2023 WL 6295121, at *7 (N.D. Ga. Sept. 27, 2023) (noting the plaintiff's argument that *Gratz* and *SFFA* require strict scrutiny for affirmative-action plans under section 1981 but declining to resolve the question).[6]

That erroneous argument, made in *Fearless Fund*, is based on a misreading of the Court's twenty-third footnote in *Gratz*, in which the Court wrote that "purposeful discrimination that violates the Equal Protection Clause of the Fourteenth Amendment will also violate § 1981." *Gratz*, 539 U.S. at 276 n.23. But as the Ninth Circuit explained in *Doe*, and as is apparent both

---

[6] After declining to resolve the plaintiff's argument that *SFFA* controls the analysis, the district court inexplicably applied a hybrid of the *Johnson*/*Weber* standard and strict scrutiny. 2023 WL 6295121, at *7. It then cited *Doe*, which unequivocally rejected the idea that strict scrutiny applies to section 1981 affirmative-action plans. *See id.* (citing *Doe*, 470 F.3d at 842-45); *see also Doe*, 470 F.3d at 839. Whether the defendants' program was an affirmative-action plan was not dispositive in *Fearless Fund*, as the court denied the plaintiff's motion for a preliminary injunction on other grounds. *Fearless Fund*, 2023 WL 6295121, at *7-8. The case is currently pending before the Eleventh Circuit, which heard oral argument in the plaintiff's interlocutory appeal of the denial of its motion for a preliminary injunction on January 31, 2024. No other court has adopted the *Fearless Fund* district court's analysis.

from the wording of the footnote and its citation to *General Building Contractors Association, Inc. v. Pennsylvania*, 458 U.S. 375, 389-90 (1982), the *Gratz* Court was referring to the fact that both the Equal Protection Clause and section 1981 prohibit only purposeful discrimination and do not separately provide for disparate-impact liability. "Whether strict scrutiny applies to § 1981 claims was not at issue [in *Gratz*]." *Doe*, 470 F.3d at 839. Nor did the Court consider in *Gratz* whether institutions of higher education can consider race in admissions as a remedy for past discrimination. *See Gratz*, 539 U.S. at 268. Moreover, the *SFFA* decision said nothing about section 1981, as the plans at issue were analyzed under the Equal Protection Clause and Title VI.

In fact, "[t]he Supreme Court has never applied strict scrutiny to the actions of a purely private entity" that does not receive federal funding. *Doe*, 470 F.3d at 839. The Supreme Court did not abandon that longstanding rule—or the standards articulated in *Johnson* and *Weber*—in passing in a footnote in *Gratz*, and then *sub silentio* in *SFFA*. *See Shalala v. Ill. Council on Long Term Care, Inc.,* 529 U.S. 1, 18 (2000) ("This Court does not normally overturn, or so dramatically limit, earlier authority *sub silentio*."); *see also Cooper v. MRM Inv. Co.*, 367 F.3d 493, 507 (6th Cir. 2004) (overruling by implication disfavored). Indeed, the strict scrutiny standard would make little sense in the context of purely private action, given that the first prong of the strict scrutiny analysis demands a compelling governmental interest. *See SFFA*, 600 U.S. at 206-07.

To subject purely private affirmative-action plans to strict scrutiny would not only upset section 1981 affirmative-action precedent but could also have practical implications for race-based affirmative action that is squarely permissible under Title VII. Most employment relationships can be characterized as contractual relationships subject to section 1981. As the *Setser* court recognized, subjecting section 1981 affirmative action to a higher standard than Title

9

VII "would make little sense" and could subject employers to conflicting obligations. 667 F.2d at 966-68. In fact, were section 1981 affirmative-action plans in the employment context governed by a different, and more exacting, standard than Title VII, section 1981 would offer a back-door means to challenge, and thus to undercut, the types of voluntary affirmative-action plans that *Weber* and *Johnson* held permissible. An employer subject to both statutes would likely conform its conduct to the more stringent standard, meaning it would not develop the types of carefully designed and limited affirmative-action plans that EEOC's Guidelines contemplate as integral to effectuating equal employment opportunity under Title VII.

This year marks Title VII's 60th anniversary, but the sort of employment discrimination Congress sought to eradicate with its passage unfortunately persists. *See, e.g.*, *EEOC v. Green JobWorks, LLC*, No. CV RDB-21-1743, 2022 WL 1213478, at *6 (D. Md. Apr. 25, 2022) (alleging defendant indicated to female job applicants it "would not hire females and did not want female employees operating equipment on job sites"); *EEOC v. Mavis Discount Tire, Inc.*, 129 F. Supp. 3d 90, 111-12 (S.D.N.Y. 2015) (evidence showed defendant hired "zero female Store Managers, Mechanics, and Technicians" over four-year period, while hiring "80 male Store Managers, 655 male Mechanics, and 1,688 male Technicians"); *EEOC v. Rosebud Rests., Inc.*, 85 F. Supp. 3d 1002, 1004 (N.D. Ill. 2015) (alleging that for approximately five years, defendant "failed or refused to hire African-Americans because of their race"). EEOC enforcement actions and private-party litigation play a vital role in rooting out pervasive discrimination but cannot alone fully effectuate Title VII's vision. Empowering employers to take voluntary measures to remedy past discrimination remains an important component of our nation's progression toward equal employment opportunity. This Court should take care not to hinder such efforts.

10

## CONCLUSION

Longstanding precedent and EEOC's Guidelines permit voluntary affirmative-action plans under Title VII. Section 1981 affirmative-action caselaw in the purely private sphere is guided by the Title VII affirmative-action framework and was not modified by the Supreme Court's post-secondary education affirmative-action decisions.

    Respectfully submitted,

    KARLA GILBRIDE
    General Counsel

    JENNIFER S. GOLDSTEIN
    Associate General Counsel

    ANNE NOEL OCCHIALINO
    Assistant General Counsel

    s/*Georgina C. Yeomans*
    GEORGINA C. YEOMANS
    Attorney
    EQUAL EMPLOYMENT
    OPPORTUNITY COMMISSION
    Office of General Counsel
    131 M St. N.E., 5th Floor
    Washington, D.C. 20507
    202-921-2748
    georgina.yeomans@eeoc.gov

February 22, 2024

## CERTIFICATE OF COMPLIANCE

I certify that this brief does not exceed the page limitation set forth in L.R. 7.1(f). I further certify that this Court does not have a specific rule governing the length of submissions from amicus curiae.

s/*Georgina C. Yeomans*
GEORGINA C. YEOMANS
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
202-921-2748
georgina.yeomans@eeoc.gov

February 22, 2024

## CERTIFICATE OF SERVICE

I certify that on February 22, 2024, I electronically filed the foregoing brief in PDF format via the CM/ECF system. I certify that all counsel of record are registered CM/ECF users, and service will be accomplished via the CM/ECF system.

s/<u>*Georgina C. Yeomans*</u>
GEORGINA C. YEOMANS
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
202-921-2748
georgina.yeomans@eeoc.gov
