## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| NATHAN ROBERTS, et al., | : |
| *Plaintiffs*, | : |
| | : No. 1:23-cv-01597 |
| v. | : Hon. Patricia A. Gaughan |
| | : Mag. Judge James E. Grimes, Jr. |
| PROGRESSIVE PREFERRED | : |
| INSURANCE COMPANY, et al., | : |
| *Defendants*. | : |

## BRIEF OF EQUAL PROTECTION PROJECT OF THE LEGAL INSURRECTION FOUNDATION AS *AMICUS CURIAE* IN SUPPORT OF PLAINTIFFS

William A. Jacobson*
James R. Nault*
EQUAL PROTECTION PROJECT of the
LEGAL INSURRECTION FOUNDATION
18 Maple Avenue 280
Barrington, RI 02806
Telephone: (401)246-4192
Email: contact@legalinsurrection.com
jnault@legalinsurrection.com

*/s/ Robert J. Gargasz*
Robert J. Gargasz
Gargasz Co. L.P.A.
1670 Cooper Foster Park Rd
Lorain, OH 44053
Telephone: (440)960-1670
Email: rjgargasz@gmail.com
(SC# 0007136)
*Pro hac vice application forthcoming*

*Counsel for Proposed Amicus Curiae Equal Protection Project of the Legal Insurrection Foundation*

## TABLE OF CONTENTS

**INTEREST OF *AMICUS CURIAE*** ................................................................................................. 1

**ARGUMENT** ............................................................................................................................. 3

I. A decision in Defendants' favor on the "free speech" issue would gut existing antidiscrimination civil rights laws.................................................................................................................. 3

II. Defendant Progressive erroneously argues that Plaintiffs have not alleged injury from Defendants' racially discriminatory conduct.........................................................................7

III. 42 U.S.C. § 1981 proscribes racial discrimination in the making or enforcement of contracts against, or in favor of, any race.......................................................................................... 8

**CONCLUSION** ......................................................................................................................... 11

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*303 Creative LLC v. Elenis*,
    600 U.S. 570 (2023)..............................................................................................3, 4

*Agudath Israel of Am. v. Cuomo*,
    983 F.3d 620 (2d Cir. 2020)........................................................................................8

*Aiken v. Hackett*,
    281 F.3d 516 (6th Cir. 2002).......................................................................................7

*Am. Alliance for Equal Rights v. Fearless Fund Mgmt., LLC*,
    No. 23-13138, 2023 WL 6520763 (11th Cir. Sept. 30, 2023)..............................3, 4, 9

*Ass'n for Fairness in Bus. Inc. v. N.J.*,
    82 F. Supp. 2d 353 (D.N.J. 2000)................................................................................8

*Baker v. McDonald's Corp.*,
    686 F. Supp. 1474 (S.D. Fla. 1987)...........................................................................10

*Baker v. McDonald's Corp.*,
    865 F.2d 1272 (11th Cir. 1988).................................................................................10

*Bellows v. Amoco Oil Co.*,
    118 F.3d 268 (5th Cir. 1997).....................................................................................10

*Jackson v. BellSouth Telecomm.*,
    372 F.3d 1250 (11th Cir. 2004)..............................................................................9, 10

*Kinnon v. Arcoub, Gopman & Assocs., Inc.*,
    490 F.3d 886 (11th Cir. 2007)................................................................................9, 10

*Lanphear v. Prokop*,
    703 F.2d 1311 (D.C. Cir. 1983)..................................................................................9

*Lopez v. v. Target Corp.*,
    676 F.3d 1230 (11th Cir. 2012)..............................................................................9, 10

*McDonald v. Santa Fe Santa Fe Trail Transp. Co.*,
    427 U.S. 273 (1976)...............................................................................................9, 10

*Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.*,
  7 F.3d 1085 (2d Cir. 1993)..................................................................................10

*Morris v. Office Max, Inc.*,
  89 F.3d 411 (7th Cir. 1996)..................................................................................10

*Murray v. Thistledown Racing Club, Inc.*,
  770 F.2d 63 (6th Cir. 1985)................................................................................8, 9

*Perrea v. Cincinnati Pub. Sch.*,
  709 F. Supp. 2d 628 (S.D. Ohio 2010)...................................................................8

*Rogers v. Windmill Pointe Vill. Club Ass'n, Inc.*,
  967 F.2d 525 (11th Cir. 1992)...............................................................................8

*Rutstein v. Avis Rent-A-Car Sys., Inc.*,
  211 F.3d 1228 (11th Cir. 2000)...........................................................................10

*Runyon v. McCrary*,
  427 U.S. 160 (1976)...........................................................................................3, 4

*Vitolo v. Guzman*,
  999 F.3d 353 (6th Cir. 2021).................................................................................8

*Wisconsin v. Mitchell*,
  508 U.S. 476 (1993)...............................................................................................4

**Statutes**

42 U.S.C. § 1981..............................................................................................*passim*

Title II of the Civil Rights Act of 1964.............................................................5, 6

Title VI of the Civil Rights Act of 1964............................................................5, 6

New York State Human Rights Law........................................................................5

New York City Human Rights Law.........................................................................5

## INTEREST OF *AMICUS CURIAE*[1]

The Equal Protection Project (EPP) is a project of the Legal Insurrection Foundation (LIF),[2] a Rhode Island tax-exempt 501(c)(3), devoted to the fair treatment of all persons without regard to race or ethnicity. Our guiding principle is that there is no "good" form of racism. The remedy for racism never is more racism.

Since its creation in February 2023, EPP has filed more than twenty civil rights complaints, in various fora, against governmental or federally funded entities that have engaged in racially discriminatory conduct in various forms, and its work is ongoing. EPP updates the public on its activities at EPP's website.[3]

Defendants Progressive Preferred Insurance Company and Progressive Casualty Insurance Company (collectively, "Progressive"), and Defendant Circular Board Inc. ("Hello Alice"), (collectively "Defendants"), separately move to dismiss this action on various grounds.[4] Common to both motions, however, is the argument that "to alter the eligibility criteria" for the alleged contract in this case "would infringe Progressive's First Amendment right to freedom of expression."[5]

The Court's potential grant of Defendants' motions on this ground may negatively impact the efforts of EPP and other similar civil rights groups to vindicate constitutional and statutory protections against racial discrimination, by carving out a massive loophole to characterize discriminatory conduct as protected speech. That is because the Court holding that the racially

---

[1] All parties have consented to the filing of this amicus brief. Fed. R. App. P. 29(a)(2). No counsel to a party in this case authored this brief in whole or in part. No party or party's counsel made any monetary contribution that was intended to or did fund the preparation or submission of this brief. No person or entity other than amici and their counsel made any monetary contribution that was intended to or did fund the preparation or submission of this brief. Fed. R. App. P. 29(a)(4)(E)(i-iii).
[2] https://legalinsurrectionfoundation.org/.
[3] https://equalprotect.org/.
[4] Dkt. Nos. 34, 35, respectively.
[5] Dkt. No. 34 at 17.

discriminatory conduct alleged in this case is the equivalent of expressive speech and therefore protected by the First Amendment would eviscerate not only 42 U.S.C. § 1981, but also other civil rights laws, as racially discriminatory conduct could be excusable as protected expressive speech.

Progressive also argues that this case should be dismissed on standing grounds because "Plaintiffs fail to plausibly allege any injury-in-fact."[6] The Court's potential grant of Progressive's motion to dismiss on this ground would be equally damaging, as a finding of no alleged harm in a case of alleged racially discriminatory conduct will help normalize racial discrimination and render the very real, irreparable harm that flows from racial discrimination irremediable.

Finally, EPP is interested in addressing the brief submitted by *amicus curiae* the Southern Poverty Law Center ("SPLC"), Lawyers' Committee for Civil Rights Under Law ("Lawyers' Committee"), the Hispanic National Bar Association ("NHBA"), and Asian Americans Advancing Justice – AAJC ("Advancing Justice – AAJC") (collectively, "SPLC").[7] That brief erroneously opines that 42 U.S.C. § 1981 does not protect the interests of white citizens. That is not the law.

In short, the stakes for the nation, and EPP, could not be higher. Hence our interest in this case.

While EPP supports Plaintiffs' arguments in favor of denial of Defendants' motions to dismiss in their entirety, EPP submits this brief to address only three areas squarely in EPP's experience: (i) the societal trend toward increased racial discrimination in the name of anti-racism, which the Court's potential grant of Defendants' motions to dismiss, if left unchecked,

---

[6] Dkt. No. 34 at 6.
[7] Dkt. No. 36.

will facilitate, (ii) the destructive effects and irreparable harm resulting from racially discriminatory conduct, and (iii) the broad protections afforded by civil rights statutes, including 42 U.S.C. § 1981, which protect citizens of all races from racially discriminatory contract.

## ARGUMENT

### I. A decision in Defendants' favor on the "free speech" issue would gut existing antidiscrimination civil rights laws.

As a preliminary matter, it is important to note that this case is fundamentally different than *303 Creative*, which Defendants rely on.[8] There, the Supreme Court held that antidiscrimination statutes could not be used to *compel the creation* of speech with which the speaker disagrees. Here, the issue is whether the First Amendment protects racially discriminatory conduct. The U.S. Supreme Court already addressed this issue in *Runyon*,[9] and clearly stated that it does not.

Moreover, the Supreme Court has also ruled that not only is discriminatory conduct not protected by the First Amendment, but even some **speech** is afforded no First Amendment protection, in cases ranging from fighting words to defamation to true threats and in other cases. Defendants are simply wrong on this issue.

The Eleventh Circuit recently agreed, in a ruling on a motion for injunction pending appeal, that the First Amendment does not excuse racially discriminatory conduct.[10] *Fearless Fund* is a case similar to the case at bar, in which the *Fearless Fund* Defendants sponsored a grant contest for small businesses open only to those businesses owned by Black women. In granting Appellant's motion for an injunction pending appeal, the motions panel stated:

---

[8] *303 Creative LLC v. Elenis*, 600 U.S. 570 (2023).
[9] *Runyon v. McCrary*, 427 U.S. 160 (1976).
[10] *American Alliance for Equal Rights v. Fearless Fund Management, LLC*, No. 23-13138, 2023 WL 6520763 (11th Cir. Sept. 30, 2023) (merits opinion pending).

3

> [T]he district court reasoned that Section 1981 was likely unconstitutional under the First Amendment as applied to the defendants. We disagree. The defendants do not provide 'expressive services' or otherwise engage in 'pure speech. *303 Creative LLC v. Elenis*, 143 S. Ct. 2298, 2318 (2023). Although the First Amendment protects the defendants' right to promote beliefs about race, it does not give the defendants the right to exclude persons from a contractual regime based on their race. *Runyon v. McCrary*, 427 U.S. 160, 176 (1976).

*Fearless Fund*, 2023 WL 6520763, at *1.

As to the impact if this Court grants Defendants' motions to dismiss on First Amendment grounds, Plaintiffs argue that under Defendants' interpretation of Section 1981, a "neo-Nazi who opens a business and refuses to enter contracts with black-owned suppliers" would be engaging in "activity [that is] constitutionally protected."[11] Such a consequence would be the natural result of the Court siding with Defendants on this issue, and Plaintiffs make plain their relief that such a situation is unlikely: "Thankfully, the defendants' argument contradicts binding Supreme Court precedent, which recognizes that §1981 is a 'permissible content-neutral regulation of conduct.'"[12]

EPP agrees with Plaintiffs' arguments as to the disastrous consequences that lie ahead (i.e. "neo-Nazi[s]…refus[ing] to enter contracts with black-owned suppliers"),[13] should the Court find for Defendants on their motions to dismiss, based on EPP's experience opposing racially discriminatory conduct.

For example, in July of last year, EPP filed a civil rights Complaint with the U.S. Department of Education's Office of Civil Rights ("OCR") charging New York University ("NYU") with civil rights violations for a racially discriminatory program.[14] Specifically, EPP

---

[11] Dkt. No. 43 at 16.
[12] *Id.* at 17 (quoting *Wisconsin v. Mitchell*, 508 U.S. 476, 487 (1993)).
[13] *Id.* at 16.
[14] *NYU Whites-Only "Anti-Racist" Workshop Challenged By Equal Protection Project*, available at https://legalinsurrection.com/2023/07/nyu-whites-only-anti-racist-workshop-challenged-by-equal-protection-project/.

challenged NYU's racially discriminatory school parents' workshop, which was open only to white parents.[15] The basis for the Complaint was that the program, as here, violated 42 U.S.C. § 1981, and also Title II of the Civil Rights Act of 1964 ("Title II"), Title VI of the Civil Rights Act of 1964 ("Title VI"), and New York State and New York City Human Rights Laws. *See* OCR Complaint at 1-2.

In explaining the reasoning for the racially discriminatory parents' workshop, NYU and its representatives stressed the importance of "gathering as a white anti-racist community" in order to "unlearn racism …. without having to … subject people of color to … undue trauma or pain." OCR Complaint at 2. They also asserted that it was important to have "a space for white people to figure out what it means to be an anti-racist white person" and to "learn the skills needed to transform the larger white community." *Id.*

When questioned during the workshop about the reasons for having a white-only workshop, NYU's instructor stated:

> The purpose [of the workshop] is to create space where we can talk about our racism with each other and support each other through that and hold each other accountable to show up differently and **without burdening the people of color in our lives** …. So we have to figure it out **amongst ourselves**, we have to talk about the hard things, we have to be able to say them out loud, we have to have the safety to do that without having to worry about harming people of color and … to practice anti-racist ways of being and come back to each other for support and accountability…. And it's actually so that we can **show up better in multiracial spaces**.

OCR Complaint at 1-2 (emphasis in original). In response to EEP's OCR Complaint, NYU abandoned the program and required training for staff.[16]

---

[15] Office of Civil Rights Administrative Complaint (hereinafter "OCR Complaint"), July 14, 2022, available at https://legalinsurrection.com/wp-content/uploads/2023/07/OCR-Complaint-New-York-University.pdf.
[16] *See NYU "Permanently Discontinued" Discriminatory Whites-Only "Anti-Racist" Parent Program After Equal Protection Project Legal Challenge*, available at https://legalinsurrection.com/2024/01/nyu-permanently-discontinued-discriminatory-whites-only-anti-racist-parent-program-after-equal-protection-project-legal-challenge/.

While this case and the NYU case are not identical, the legal principle that needs to be vindicated is the same. It was not a legal defense that NYU might have "expresse[d] a distinct message"[17] in promoting and operating its [parents' workshop] program: "[It was] vitally important [to address] sociopolitical inequities"[18] while not "burdening" "people of color."[19] Whatever NYU's First Amendment free speech rights might or might not be, they could not override § 1981, Title II, and Title VI's antidiscrimination protections, as Defendants argue here regarding 42 U.S.C. § 1981 alone.

Other similar cases EPP has brought[20] demonstrate as well that discriminatory conduct, even if there is some part that is expressive, cannot evade the civil rights laws. Otherwise, those civil rights laws would be rendered meaningless. This court must not let that happen.

One aspect of this case that Defendants appear not to have considered in their motion to dismiss papers is the impact a potential ruling in Defendants' favor will have on the very minority individuals Defendants purport to be assisting. If Defendants prevail on these motions, there would be nothing stopping other entities similar to Defendants from running identical small business grant programs open only to entrepreneurs who are white. As Plaintiffs state, if Defendants' motions to dismiss are granted on First Amendment grounds, "[a] neo-Nazi [who] refuses to enter contracts with black-owned suppliers" would be engaging in "activity [that is] constitutionally protected."[21]

Importantly, grant of Defendants' motions to dismiss on this issue would embrace the growth of an entire discriminatory, Jim Crow-like nationwide regime, where discrimination

---

[17] Dkt. No. 34 at 17.
[18] Dkt. No. 35 at 14.
[19] OCR Complaint at 1-2.
[20] https://equalprotect.org/case/.
[21] Dkt. No. 43 at 16.

6

against any and all individuals based on any skin color would not only be legal, but it would also likely become the norm. All a business would have to do to evade liability is hold itself out as expressing a discriminatory opinion regarding the benefits its business solution provides to members of its preferred race.

In sum, this court must deny Defendants' motions to dismiss that argue that Defendants' First Amendment speech rights trump conduct covered by 42 U.S.C. § 1981.

## II. Defendant Progressive erroneously argues that Plaintiffs have not alleged injury from Defendants' racially discriminatory conduct.

Defendant Progressive argues that Defendants' racially discriminatory exclusion of Plaintiffs from Defendants' grant program has not caused Plaintiffs any injury:

> A plaintiff lacks standing to sue for retrospective relief unless he shows that, had he applied, he would have received the benefit. . . However, Plaintiffs do not even attempt to allege—let alone plausibly allege—that Freedom Truck Dispatch would have been selected to receive one of the . . . grants . . . .

Dkt. No. 34 at 8 (citing *Aiken v. Hackett*, 281 F.3d 516, 519 (6th Cir. 2002)). Progressive is wrong because Plaintiffs plausibly allege exactly that:

> Mr. Roberts was injured because he and his business were denied the ability to enter into contracts with the defendants—the contract to compete for the grant money, and the subsequent contract connected to receipt of the grant money—based on his race.

Dkt. No. 32 ¶ 24. Moreover, *Aiken*, an equal protection case, supports Plaintiffs' position, not Defendants'. *See id.* at 519 ("If the plaintiffs allege that a racial preference cost them some benefit under a government program, those plaintiffs may have alleged an injury in fact."). *Aiken* explained Plaintiffs there had not been injured because "absent the forbidden criterion used by the City, the Appellants still would not have been promoted," which is the opposite of the case here. Dkt. 32 ¶ 24 ("Mr. Roberts was injured because he and his business were denied the ability to enter into contracts with the defendants . . . based [only] on his race.").

7

Other cases in and out of this Circuit agree that racially discriminatory conduct causes injury. *See Perrea v. Cincinnati Pub. Sch.*, 709 F. Supp. 2d 628, 640 (S.D. Ohio 2010) ("one form of injury . . . is being forced to compete in a race-based system that may prejudice the plaintiff"); *Rogers v. Windmill Pointe Vill. Club Ass'n, Inc.*, 967 F.2d 525, 528 (11th Cir. 1992)("[I]njury may be presumed from the fact of discrimination"); *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 636 (2d Cir. 2020)("[A] presumption of . . . injury flows from a violation of constitutional rights.")(quoting *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996)); *Ass'n for Fairness in Bus. Inc. v. N.J.*, 82 F. Supp. 2d 353, 363 (D.N.J. 2000) (finding irreparable injury and entering a preliminary injunction where the Plaintiffs were forced to "compete on an unfair playing field" as a result of a racial set-aside program); *Vitolo v. Guzman*, 999 F.3d 353, 361 (6th Cir. 2021)(finding irreparable harm where the government was "allocat[ing] limited coronavirus relief funds based on the race and sex of the applicants.").

**III.     42 U.S.C. § 1981 proscribes racial discrimination in the making or enforcement of contracts against, or in favor of, any race.**

In their *amicus* brief, SPLC argues that "Plaintiffs' perversity in weaponizing this country's long-standing commitment to equalizing economic opportunities for Black business owners is antithetical to and outside of the scope of Section 1981 . . . ." Dkt. No. 36-1 at 2. SPLC continues that "Section 1981 should not now be weaponized in 2023 to challenge remedial philanthropic programs aimed at providing opportunities for Black business owners," *id.* at 7, and that "[t]his Court should not incentivize businesses to weaponize Section 1981 in this manner." *Id.* at 12.

SPLC reluctantly concedes, as it must, "that Section 1981 'prohibits racial discrimination against all groups,'" *id.* at 8 (quoting *Murray v. Thistledown Racing Club, Inc.*, 770 F.2d 63, 67 (6th Cir. 1985)), but argues that "the Sixth Circuit has explained that 'the majority plaintiff who

8

asserts a claim of racial discrimination' must still do so 'within the historical context of the Act.'" *Id.* Absent from this argument, however, is any explanation of what *Murray* meant by this. In fact, SPLC has omitted a key phrase from *Murray* that belies SPLC's argument that Section 1981 does not apply to Plaintiffs. What *Murray* really said was that "[a]s with the minority plaintiff, the majority plaintiff who asserts a claim of racial discrimination in employment does so within the historical context of the Act," 770 F.2d at 67, and *Murray* explained that Section 1981 would apply to a majority plaintiff in a case where plaintiff was "discriminated against 'despite his majority status,'" *id.* (citing *Lanphear v. Prokop,* 703 F.2d 1311, 1315 (D.C. Cir. 1983)), which is exactly the case here.

At bottom, SPLC's argument is that 42 U.S.C. § 1981 cannot, or perhaps *should not*, be used by White plaintiffs. That argument is the exact same one made by Judge Wilson in his dissent in the Eleventh Circuit's recent *Fearless Fund* case, cited *supra*, in which the court granted Plaintiffs' motion for an injunction pending appeal. 2023 WL 6520763, at *2, which SPLC cites approvingly, Dkt. No. 36-1 at 6. There, Judge Wilson argued expressly that White plaintiffs could not use Section 1981 to vindicate their right to discrimination-free contract, arguing, *inter alia*, that "Plaintiffs bringing a cause of action under § 1981 must show that . . . they are a member of a racial minority . . . ." *Fearless Fund*, 2023 WL 6520763, at *2 (citing *Lopez v. Target Corp.*, 676 F.3d 1230, 1233 (11th Cir. 2012), *Kinnon v. Arcoub, Gopman & Assocs., Inc.*, 490 F.3d 886, 891 (11th Cir. 2007), and *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1270 (11th Cir. 2004)). Judge Wilson thus concluded that "AAER fails as an organization bringing a § 1981 claim on behalf of white members." *Id.* This conclusion was erroneous as a matter of law, and was rejected by the panel majority, who held that "[t]he Supreme Court has held that Section 1981 'was meant, by its broad terms, to proscribe discrimination in the making

or enforcement of contracts against, or in favor of, any race.'" *Id.* at *1 (citing *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 295 (1976)).

Additionally, Judge Wilson ignored – and SPLC ignores – the lineage of the *Lopez*, *Kinnon*, and *Jackson* cases that he cited, each of which cite a number of Eleventh Circuit cases back to the earliest such case, *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1235 (11th Cir. 2000). That case cited three out-of-Circuit cases[22] stating that a § 1981 Plaintiff must be a racial minority, each of which cites back to *Baker v. McDonald's Corp.*, 686 F. Supp. 1474 (S.D. Fla. 1987), *aff'd without opinion*, 865 F.2d 1272 (11th Cir. 1988)(table)). *Baker* cited nothing, save for the text of § 1981 itself, for the idea that a § 1981 plaintiff must be a racial minority. Section 1981, of course, states no such requirement.

More importantly, SPLC, like Judge Wilson before them, ignore Justice Thurgood Marshall, the author of *McDonald*, 427 U.S. 273, who thoroughly dismantled the idea that § 1981 was not enacted for majority plaintiffs' benefit:

> The question here is whether [§] 1981 prohibits racial discrimination in private employment against whites as well as nonwhites. . . .
> [O]ur examination of the language and history of [§] 1981 convinces us that [§] 1981 is applicable to racial discrimination in private employment against white persons. . . .
> While it is, of course, true that the immediate impetus for the bill was the necessity for further relief of the constitutionally emancipated former Negro slaves, the general discussion of the scope of the bill did not circumscribe its broad language to that limited goal. On the contrary, the bill was routinely viewed, by its opponents and supporters alike, as applying to the civil rights of whites as well as nonwhites. . . .

*Id.* at 285-87, 289 (citing the extensive legislative history of 42 U.S.C. § 1981).

Justice Marshall concluded, 42 U.S.C. § 1981 "was meant, by its broad terms, to proscribe discrimination in the making or enforcement of contracts against, or in favor of, any

---

[22] *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997); *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996); *Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993).

race." *Id.* at 295. This Court should reiterate that legal principle, deny Defendants' motions to dismiss, and hold that Section 1981 does not bar Plaintiffs here from bringing this case against Defendants.

## CONCLUSION

For the foregoing reasons, this Honorable Court should deny Defendants' motions to dismiss and allow Plaintiffs to continue their case against Defendants' admittedly racially discriminatory grant program.

Respectfully submitted,

*/s/ William A. Jacobson*
William A. Jacobson*
James R. Nault*
EQUAL PROTECTION PROJECT of the
LEGAL INSURRECTION FOUNDATION
18 Maple Avenue 280
Barrington, RI 02806
Telephone: (401)246-4192
Email: contact@legalinsurrection.com
jnault@legalinsurrection.com

*/s/ Robert J. Gargasz*
Robert J. Gargasz
Gargasz Co. L.P.A.
1670 Cooper Foster Park Rd
Lorain, OH 44053
Telephone: (440)960-1670
Email: rjgargasz@gmail.com
 (SC# 0007136)
*Pro hac vice application forthcoming*

*Counsel for Proposed Amicus Curiae Equal Protection Project of the Legal Insurrection Foundation*

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2024 a true and correct copy of the foregoing *Motion of Equal Protection Project of the Legal Insurrection Foundation for Leave to File Amicus Curiae Brief* was filed electronically with the Clerk of the Court for the United States District Court for the Northern District of Ohio, Eastern Division, and was thereby served upon counsel via operation of the Court's CM/ECF system pursuant to Local Rule 25.1(h).

March 28, 2024 /s/ *Robert J. Gargasz*
Robert J. Gargasz
(SC# 0007136)