# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| NATHAN ROBERTS and FREEDOM TRUCK DISPATCH LLC, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PROGRESSIVE PREFERRED INSURANCE COMPANY; PROGRESSIVE CASUALTY INSURANCE COMPANY; CIRCULAR BOARD INC.,<br><br>Defendants. | Case No.: 1:23-cv-01597-PAG<br><br>JUDGE PATRICIA A. GAUGHAN<br>Magistrate Judge James E. Grimes, Jr.<br><br>**REPLY IN SUPPORT OF DEFENDANT CIRCULAR BOARD INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS-ACTION COMPLAINT, OR TO STAY AND COMPEL ARBITRATION UNDER THE FEDERAL ARBITRATION ACT, OR TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(A)** |

**TABLE OF CONTENTS**

Page

INTRODUCTION ...........................................................................................................................1

ARGUMENT ...................................................................................................................................1

    I.    PLAINTIFFS FAIL TO ALLEGE THEY WERE ELIGIBLE FOR THE GRANT .....1

    II.    THE GRANT WAS NOT A CONTRACT ...................................................................5

    III.    IF THE GRANT WAS A CONTRACT, THE COURT SHOULD COMPEL ARBITRATION OR TRANSFER THIS CASE ............................................................7

    IV.    APPLYING SECTION 1981 TO HELLO ALICE'S GRANT PROGRAM WOULD VIOLATE THE FIRST AMENDMENT .......................................................10

    V.    THE CHALLENGED GRANT PROGRAM WAS A VALID AFFIRMATIVE ACTION PROGRAM ......................................................................................................14

CONCLUSION ..............................................................................................................................15

# INTRODUCTION

This lawsuit seeks to dramatically restrain private-sector solutions to address and minimize the lingering effects of centuries of institutional racism. Contrary to Plaintiffs' assertion, Hello Alice does not contend that charitable grants to groups impacted by racism are the "only way to address" these problems, Opp., ECF No. 43, at 1, but Hello Alice strongly believes it is *one* part of a holistic solution. Section 1981 does not preclude Hello Alice from expressing that belief. *See* Br. of Southern Poverty Law Center et al., ECF No. 36-1, at 9 (noting the irony of reading "a statute intended to concretize the promises of the Thirteenth Amendment . . . to cut back private, philanthropic measures intended to further racial justice").

As a threshold matter, Plaintiffs cannot show that their lawsuit belongs in this Court because they have not adequately alleged standing, nor can they overcome Hello Alice's arguments in favor of arbitration or transfer. On the merits, Plaintiffs fail to establish that this charitable grant would be considered a "contract" under Ohio law or that the First Amendment permits Section 1981 to regulate Hello Alice's charitable giving. Finally, as the Equal Employment Opportunity Commission compellingly explains, Section 1981 does not apply to an affirmative action program like the grant here. This Court should reject Plaintiffs' misguided efforts to impose their own views about how to remedy racism on all other private actors who may approach things differently.

# ARGUMENT

**I. PLAINTIFFS FAIL TO ALLEGE THEY WERE ELIGIBLE FOR THE GRANT.**

Plaintiffs have not alleged standing because they do not plausibly allege that they were eligible for the grant even aside from the race-based criteria. Plaintiffs spend the bulk of their opposition insisting that they need only show a "lost ability to compete." *See* Opp. 9-11. But Hello Alice's standing argument *assumes* that is all they need to show, and explains why they *still*

1

have not satisfied Article III because they have not alleged they were otherwise eligible for any opportunity to compete.

Plaintiffs must show "that 'but for'" the grant's race requirement, they "would have been considered for the" grant program. *Yeager v. Gen. Motors Corp.*, 67 F. App'x 335, 338 (6th Cir. 2003) (per curiam) (quoting *Yeager v. Gen. Motors Corp.*, 265 F.3d 389, 395 (6th Cir. 2001)). In *Yeager*, the Sixth Circuit held that a candidate for an apprenticeship could not trace any injury to an affirmative action program that adjusted scores for racial minorities upward where more candidates with *unadjusted* scores than positions available outranked the plaintiff. *Yeager*, 265 F.3d at 395. Thus, the plaintiff would not have been considered for an apprenticeship setting aside the affirmative action program. *See id.*; *see also Brintley v. Aeroquip Credit Union*, 936 F.3d 489, 492 (6th Cir. 2019) (blind plaintiff lacked standing to sue credit union for failing to make a website accessible where the plaintiff was not eligible for services advertised and had not articulated any "concrete plans" for making herself eligible (citation omitted)).

Plaintiffs do not dispute that "but-for" causation is the legal test for Article III traceability. Thus, the question is whether Plaintiffs plausibly allege that they *were* eligible to compete for the grant but for the race requirement. They do not. The race-neutral eligibility criteria for this grant were not a box-checking exercise. Rather, Hello Alice and Progressive would not even *consider* a business that did not put forward "a clear plan for growth as a result of the vehicle purchase" and a "demonstrated need for a qualifying commercial vehicle." First Am. Compl. ("FAC"), ECF No. 32, Ex. 3 at 4. As Hello Alice pointed out, Mot., ECF No. 35, at 5-8, Plaintiffs' complaint is entirely devoid of *any* factual details to support the threadbare assertion that Plaintiffs could offer such a plan. The complaint does not even explain how Plaintiffs planned to use the commercial vehicle. Plaintiffs also do not offer factual allegations supporting the more clear-cut eligibility

2

criteria, including having fewer than 10 employees and less than $5 million in annual gross revenue. Equally telling, Plaintiffs do not suggest that they would be able to add *additional* factual content in a further amended complaint—and do not ask for this Court to allow yet another amendment. *See* Opp. 28.

Plaintiffs insist that this Court must simply accept their word given the Rule 12 posture. Their only support is a cherrypicked line from *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), noting that plaintiffs need not include "detailed" factual allegations. But, as *Iqbal* makes clear, there is a stark difference between "detailed" allegations, which are not always required, and "naked assertions" of fact, which cannot be accepted even at the pleading stage. *Id.* at 678. Thus, plaintiffs are required to include "sufficient 'factual content'" to make their factual allegations plausible. *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). Even after Hello Alice and Progressive identified these deficiencies in Plaintiffs' original complaint, the best response that Plaintiffs could articulate was this barebones statement that Plaintiffs "met" the recited eligibility criteria without *any* supporting factual content. *See* FAC Ex. 8. That is insufficient. The Court has "no authority to imagine the dots that [Plaintiffs] might one day connect to" establish standing. *Brintley*, 936 F.3d at 492.

Plaintiffs also strive to slice the grant program into two pieces, a contract to compete and a contract ultimately entered into by those offered a grant. *See* Opp. 8-10. This argument depends on Plaintiffs' mistaken argument that contract law governs, and fails for the same reasons. *See infra* pp. 5-7. Plaintiffs do not cite a single case that has ever treated a similar program as two separate contracts. *See* Mot. 7.[1] In the end, however, Plaintiffs' "two-contracts" argument is a red

---

[1] Moreover, Plaintiffs do not put forward any argument that they have shown traceability as to the alleged *second* contract. Their theory of injury applies only to their so-called "Competition Contract." *See* Opp. 8-9.

3

herring. Plaintiffs rely on this point to avoid pleading that they would in fact have received the grant had they been eligible to apply. *See* Opp. 10. But if Plaintiffs were not eligible for race-neutral reasons, then the race requirement did not—and could not—deprive them of any opportunity to compete. *See Carroll v. Hill*, 37 F.4th 1119, 1122 (6th Cir. 2022) ("If a plaintiff lacks the ability to take advantage of an opportunity, the deprivation of that opportunity does not count as an injury under Article III.").

Apparently recognizing this problem, Plaintiffs ask this Court to simply assume away the race-neutral eligibility criteria by accepting their claim "on information and belief" that Hello Alice and Progressive would have ignored the race requirement. Opp. 3; FAC ¶ 20. But the complaint's exhibits squarely contradict that allegation, making clear that all applicants "must meet *all* of the" eligibility criteria to be considered "for this opportunity." FAC Ex. 3 at 4. Plaintiffs do not allege *any* facts that would support their contrary speculation. This allegation thus falls squarely into the category of "information and belief" allegations that contribute nothing to a complaint even at the Rule 12 stage. *See 16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013).

In defending their standing to seek injunctive relief, Plaintiffs at least attempt to buttress their "information and belief" allegation that future grants will occur by pointing to exhibits offering different grants in different markets. Opp. 13; *see, e.g.*, FAC Ex. 5 (grant program in New York); FAC Ex. 6 (grant program in Maryland); FAC Ex. 7 (grant program in various cities where Plaintiffs do not reside). But these are separate programs, with separate criteria, and nothing suggests that Hello Alice and Progressive would offer those grants to Plaintiffs—much less that they will again offer the same grant at issue here. In any event, none of this cures Plaintiffs' failure to plausibly allege their eligibility for this grant.

4

Finally, even if Plaintiffs' allegations satisfy Article III, Plaintiffs have not offered a single case holding that being deprived of the mere opportunity to compete can satisfy the causation standard that the Supreme Court articulated as a required element of a Section 1981 claim in *Comcast Corp. v. National Association of African American-Owned Media*, 589 U.S. 327 (2020). *Comcast* requires considering whether "the defendant would have responded the same way to the plaintiff even if he had been" black. *Id.* at 333. Tellingly, Plaintiffs entirely ignore Hello Alice's causation challenge on the merits and do not attempt to argue that their complaint satisfies this demanding standard. *See* Opp. 8-13.

## II. THE GRANT WAS NOT A CONTRACT.

Plaintiffs rest their argument that the grant involves a contract on one—and only one—provision in the grant's terms and conditions: applicants' agreement "to let the defendants use their information for marketing and other purposes." Opp. 15. According to Plaintiffs, this is the beginning and end of the contract inquiry. *See id.*

That is not how Ohio law treats consideration when distinguishing between contracts and gratuitous promises. The question is not literally whether the offering party receives some benefit, but whether the benefit is reasonably understood "as the price of [the] promise." *Carlisle v. T&R Excavating, Inc.*, 704 N.E.2d 39, 46 (Ohio Ct. App. 1997). There is "no easy test for distinguishing between a condition and consideration." *Id.* at 45. The determination is context-specific—although it remains an issue of law that is "a proper question for a court"—and examines whether the supposed consideration "induced the promise." *Id.* at 43, 45.[2]

---

[2] Plaintiffs do not even attempt to argue that the grant at issue here amounts to a unilateral contract, such as a promotional contest. *Cf. Am. All. for Equal Rts. v. Fearless Fund Mgmt., LLC*, No. 23-CV-3434, 2023 WL 6295121, at *4-5 (N.D. Ga. Sept. 27, 2023).

5

Here, context shows that the exchange of personal information is not the *reason* for the bargain. The terms merely require users to agree that data submitted to Defendants may be used under their standard terms and conditions. *See* Mot. Ex. 1 at 8. There is no basis to suggest that the incidental data collection associated with creating an account to apply for the grant program is the reason Hello Alice and Progressive were induced to part with over $100,000 cash in grant money. On the contrary, the exhibits to the complaint establish that the motivation for this grant was charitable—to help remedy structural inequalities that Black entrepreneurs face in accessing capital. FAC Ex. 2 at 2; FAC Ex. 3 at 3; FAC Ex. 4 at 3. Requiring users to create an account and agree to standard data usage terms is the digital equivalent of asking a person to walk to the store to pick up the gift of a coat—which in Ohio is not consideration as a matter of law. *See Carlisle*, 704 N.E.2d at 45 n.1.

Plaintiffs argue that, in other very different commercial contexts, companies' collection of data can sometimes supply consideration. *See* Opp. 15 (discussing Google's use of search-related data for its advertising business and other purposes). But that misses the point. As the Restatement observes, "the distinction between bargain and gift may be a fine one" and depends "on the motives manifested by the parties." Restatement (Second) of Contracts § 71 cmt. C. Thus, consideration for one party may not be consideration for another. For instance, under the right circumstances, promising to pay thousands of dollars in material costs for construction, as in *Carlisle*, could amount to consideration. But, given the specific context surrounding the *Carlisle* parties' relationship—including their former marriage—the court recognized "it could not reasonably be believed that" the reimbursement arrangement was "the price of [the] promise." 704 N.E.2d at 46. So too here: The data provisions that Plaintiffs rely on are an incidental consequence of asking grant applicants to use a digital application process, not the "price of the promise."

6

Additionally, Plaintiffs' consideration argument is incompatible with their attempt to divide the grant program into two contracts. As Plaintiffs apparently recognize, applicants agree to the data usage terms simply by applying. Since the data use provisions are the only basis for consideration that Plaintiffs have identified, *see* Opp. 15, that leaves Plaintiffs' supposed "second contract"—the final grant—entirely unsupported by consideration. After all, it is well settled that "past consideration cannot be a bargained-for benefit or detriment, since it has already occurred or accrued." *Carlisle*, 704 N.E.2d at 44. Accordingly, the same data use provisions cannot serve as consideration for two successive contracts. *See* Opp. 15.[3]

All of this confirms that contract law does not apply to this grant program. Understanding the grant as a gratuitous promise is straightforward, raises none of the same problems as Plaintiffs' theory, and is consistent with settled principles of Ohio law. The Court should reject Plaintiffs' effort to shoehorn a charitable grant program into the ill-fitting mold of contract law based on incidental data-use provisions.

### III. IF THE GRANT WAS A CONTRACT, THE COURT SHOULD COMPEL ARBITRATION OR TRANSFER THIS CASE.

If the Court nevertheless concludes that contract law applies, then it follows that Plaintiffs are required to arbitrate their claims. Plaintiffs agree on the governing law: Ohio law applies estoppel "when a party who knowingly accepts the benefits of an agreement is estopped from denying a corresponding obligation to arbitrate." Opp. 25 (quoting *Cleveland-Akron-Canton Advert. Coop. v. Physician's Weight Loss Ctrs. of Am., Inc.*, 922 N.E.2d 1012, 1016 (Ohio Ct. App. 2009) ("*PWLC*")); *accord* Mot. 11. Plaintiffs also agree they seek the benefits of the Grant

---

[3] In their background section, Plaintiffs note that grantees must use the grant for a qualifying vehicle purchase, Opp. 3, but Plaintiffs never argue that this is consideration, *see id.* at 14-16. With good reason: As Hello Alice has explained, specifying how a cash gift must be spent is a classic condition on a gratuitous promise and provides no benefit to the grantor. *See* Mot. 10-11.

7

Terms here—namely, the opportunity to compete for a grant according to those terms. *See, e.g.*, Opp. 2, 9, 15-16. And Plaintiffs do not dispute that, if they had completed the grant application they began, they would have been party to a binding arbitration agreement. *See id.* at 25.

Those stipulations provide all the ingredients for estoppel. A party may not "pick[] and choos[e]" which contract terms apply. *Atricure, Inc. v. Meng*, 12 F.4th 516, 527 (6th Cir. 2021). Because Plaintiffs undisputedly "seek to enforce duties that 'arise from the contract containing the arbitration clause,'" they are required to arbitrate even though they stopped short of completing the application before bringing suit. *Id.* (quoting *Taylor v. Ernst & Young, L.L.P.*, 958 N.E.2d 1203, 1213 (Ohio 2011)); *see also Javitch v. First Union Securities, Inc.*, 315 F.3d 619, 629 (6th Cir. 2003) ("a nonsignatory may be bound to an arbitration agreement under an estoppel theory when the nonsignatory seeks a direct benefit from the contract while disavowing the arbitration provision") (emphasis omitted).

Plaintiffs' contrary argument is difficult to follow. They claim that they have not yet "accepted the benefits of any agreement containing a corresponding obligation to arbitrate," Opp. 25, but they do not deny that they "*seek* to enforce duties" under such a contract, which is the relevant legal test, *AtriCure*, 12 F.4th at 527 (emphasis added). The very next sentence of their opposition confirms as much, reiterating that "the entire point of the suit" is that they seek "to accept those benefits" without regard to their race. Opp. 25. Plaintiffs also insist that courts "cannot compel parties to arbitrate an agreement they never entered." *Id.* That bold pronouncement is offered without legal citation, and it flatly contradicts Plaintiffs' concession that Ohio law applies estoppel to arbitration agreements. *Id.* (citing *PWLC*, 922 N.E.2d at 1016).

Ultimately, the question of arbitrability is for an arbitrator, not this Court, to decide. Plaintiffs do not dispute that this arbitration provision contains a clause delegating the threshold

8

question of arbitrability to an arbitrator, *see* Mot. 12, and they entirely ignore controlling Sixth Circuit precedent holding that equitable estoppel is a question "delegated to an arbitrator" under such circumstances. *Swinger v. Rosette*, 989 F.3d 501, 507 (6th Cir. 2021); *accord Becker v. Delek US Energy, Inc.*, 39 F.4th 351, 355 (6th Cir. 2022); Mot. 12 (citing these cases); Opp. 25-26 (ignoring these cases). Instead, Plaintiffs cite inapposite cases reciting general principles that did not involve estoppel. *See Anderson v. Charter Commc'ns*, 860 F. App'x 374, 375 (6th Cir. 2021) (affirming a motion to compel arbitration); *In re Automotive Parts Antitrust Litig.*, 951 F.3d 377, 383 (6th Cir. 2020) (rejecting arbitration claim based on case-specific language not present here). The Court should follow the controlling, on-point authority, stay this case, and compel arbitration. *See* 9 U.S.C. §§ 3-4.

Should this Court disagree with Hello Alice's arbitration argument, it should nevertheless enforce the plain terms of the venue provision that Plaintiffs agreed to when Roberts created an account with Hello Alice on behalf of himself and his business. That provision requires all claims "relating in any way to" Plaintiffs' use of Hello Alice's "Platform"—including its website—or its "Services" to be brought in the Northern District of California. Mot. Ex. 3 at 2, 17. This suit relates to a service offered on Hello Alice's website, and should therefore be transferred.

Plaintiffs cannot overcome this straightforward logic. First, they claim that "Hello Alice never even argues that Freedom Truck Dispatch . . . is bound by these terms." Opp. 26. Not so. Hello Alice explained that "Roberts acted on behalf of himself and Freedom Truck Dispatch in filling out the forms," Mot. 12 n.5, citing Plaintiffs' *own allegation* that Roberts was acting "on behalf of himself and Freedom Truck Dispatch" in his efforts to apply for a grant, FAC ¶ 29. Second, Plaintiffs dispute that Roberts agreed to this clause. But Hello Alice supplied proof that Roberts created an account with Hello Alice using his business email account on May 24, 2023,

9

Mot. Ex. 2; that users were clearly advised that by "creating an account," they would "agree to Hello Alice's Terms of Use and Privacy Policy," Mot. Ex. 4; and that those terms at the relevant time included the forum selection clause, Mot. Ex. 3. Plaintiffs do not dispute that courts in this District and elsewhere routinely enforce similar agreements. *Compare* Mot. 13, *with* Opp. 26-27.

Plaintiffs also contend that the forum selection clause does not cover a Section 1981 suit. The clause's plain language refutes that reading. It covers "*any* claim or dispute"—no matter what source of law applies—"relating *in any way* to your use of" Hello Alice's website or services. Mot. Ex. 3 at 2, 17 (emphases added). That language reaches this dispute in at least two different ways: First, this case involves a "service" offered on Hello Alice's website—namely, the grant application. Second, the case "relates to" Roberts' "use of" Hello Alice's website, where he began applying for a grant. Plaintiffs' contorted contrary argument rests on the false assumption that Hello Alice's interpretation "capture[s] literally every dispute with Hello Alice." Opp. 26. Not so. This language would not reach, for example, an employment relationship between Hello Alice and Roberts, or Roberts' attendance at an in-person event. But the clause is broadly worded to capture any dispute growing out of Plaintiffs' use of their Hello Alice online account. This suit falls squarely within that language.[4]

## IV. APPLYING SECTION 1981 TO HELLO ALICE'S GRANT PROGRAM WOULD VIOLATE THE FIRST AMENDMENT.

On the merits, the Court should reject Plaintiffs' theory of liability because, as applied to this grant program, dictating the terms of Hello Alice's charitable grantmaking would violate the First Amendment. Plaintiffs' opposition dramatically narrows the scope of the dispute on this issue. Most importantly, Plaintiffs agree that "charitable donations" of money can qualify "as

---

[4] Plaintiffs acknowledge that their fair-notice argument depends on their misreading of the scope of the agreement, and it therefore fails for the same reasons. *See* Opp. 27.

10

expressive conduct" that is protected by the First Amendment. Opp. 17 (quoting *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247, 1254 (11th Cir. 2021)). Plaintiffs' argument thus boils down to the notion that if a charitable donation is structured as a contract, the First Amendment will *always* treat that donation as unprotected "conduct." *See id.*[5]

The Supreme Court's First Amendment precedent refutes that highly formalistic distinction. The Court has held that even contracting *for profit* can qualify as protected expression when the underlying activity is expressive. *See 303 Creative LLC v. Elenis*, 600 U.S. 570, 600 (2023) ("the First Amendment extends to all persons engaged in expressive conduct, including those who seek profit"). It follows that charitable donations structured as contracts do not lose their First Amendment protection merely because they involve contracts.

Plaintiffs unconvincingly attempt to confine *303 Creative* to situations involving "pure speech." Opp. 19. This argument suffers from two independent flaws. First, *303 Creative* self-consciously applied principles developed in expressive conduct cases like *Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston*, 515 U.S. 557 (1995) (parade organizing), and *Boy Scouts of Am. v. Dale*, 530 U.S. 640 (2000) (expressive association). *See 303 Creative*, 600 U.S. at 585-587. Its reasoning does not depend on the speech-versus-expressive conduct distinction. *303 Creative*, 600 U.S. at 600 (noting First Amendment "extends to all persons engaged in expressive conduct"). Second, the grant program here is pure speech because it is particularly directed at inequalities in capital infrastructure and is therefore speech that is "made possible by the giving and spending of money." *Buckley v. Valeo*, 424 U.S. 1, 16 (1976) (per

---

[5] Hello Alice assumes for argument's sake in this section that the grant is governed by contract law. *But see supra* pp. 5-7.

11

curiam). Although Hello Alice raised both these points in its motion, Mot. 14, 17, Plaintiffs venture no response to either.

The consequences of Plaintiffs' argument would be startling. For instance, a common form of charitable giving is a charitable trust, which is a creature of contract law. *See, e.g.*, *He Depu v. Yahoo! Inc.*, 950 F.3d 897, 904 (D.C. Cir. 2020) (charitable trusts can be created by contract). By insisting contracts are necessarily "conduct," Plaintiffs would leave this traditional form of charity without protection despite their concession that it is "uncontroversial" that charitable giving enjoys First Amendment protection. Opp. 16. For example, would the First Amendment protect a private charitable trust funding scholarships for Black students at a historically Black private college? What about a trust to provide graves for Jewish or Catholic persons? Under Plaintiffs' theory, it is hard to see how.

Plaintiffs garner no support from *Runyon v. McCrary*, 427 U.S. 160 (1976). *Runyon* held that a school's non-expressive conduct related to student admissions was not protected by the First Amendment. *Id.* at 176. Although the Court was willing to assume "that parents have a First Amendment right to send their children to educational institutions that promote the belief that racial segregation is desirable," the Court held that this right was simply not implicated by the "practice of excluding racial minorities from such institutions." *Id.* The Court thus distinguished between presumably protected association—a parent's determination of their child's school—and unprotected non-expressive conduct—school admissions. *Runyon* accordingly does not consider what would happen if Section 1981 or another non-discrimination law purported to regulate

12

*protected* expression. *See* Mot. 17-18. For that reason, it is no surprise that the *303 Creative* Court did not even cite *Runyon*. *See 303 Creative*, 427 U.S. at 620 (Sotomayor, J., dissenting).[6]

This all exposes Plaintiffs' parade of horribles as deeply misguided. Nothing about Hello Alice's argument asks this Court to sanction the return of "Whites Only" signs in businesses, or a neo-Nazi's refusal to deal with black-owned suppliers. *See* Opp. 16. Recognizing a narrow, as-applied limitation on applying Section 1981 to charitable giving has nothing to do with commercial transactions, and certainly does not suggest *all* contracts would be considered protected expression. On the contrary, Plaintiffs *admit* treating charitable donations as protected is "uncontroversial." *Id.* That concession is dispositive; no amount of fear-mongering can overcome it. The dispute is whether the Court should treat a charitable donation as unprotected "conduct" if it takes the form of a contract. The Constitution's protections do not turn on such formalism.

In a single sentence, Plaintiffs also assert a more case-specific argument that the grant program here is unprotected by claiming that Defendants are "selling a chance to compete for grants in exchange for participants' information." Opp. 17. As Hello Alice has explained, *supra* pp. 5-7, that is not a plausible way to construe the grant program in light of the complaint's exhibits. Regardless, *303 Creative* decisively rejects the notion that any element of commercial motivation defeats an otherwise meritorious claim that the First Amendment's protections apply. *303 Creative*, 600 U.S. at 600 ("the First Amendment extends to . . . those who seek profit").

Plaintiffs rest their First Amendment argument entirely on their claim that the grant program is unprotected conduct. They make no argument that if the First Amendment applies to

---

[6] Plaintiffs are wrong that, on Hello Alice's reading, *Runyon* would have had a different outcome had the challengers "identified expressive conduct that integrated admissions would incidentally burden." Opp. 19. Here, the grant *is* the protected expression; this case does not implicate speech incident to conduct, *id.*, or conduct with accompanying speech, *id.* at 17.

13

Hello Alice's grant, Section 1981 may validly be applied under strict scrutiny—or any other level of scrutiny. *See* Opp. 16-20. The Court should reject Plaintiffs' misguided attempt to exclude contractual charitable donations from the First Amendment's scope and conclude that the grant here is protected First Amendment expression.

## V. THE CHALLENGED GRANT PROGRAM WAS A VALID AFFIRMATIVE ACTION PROGRAM.

Finally, the Court should dismiss because the grant program was a lawful affirmative action program under *Johnson v. Transportation Agency, Santa Clara County*, 480 U.S. 616 (1987).

Plaintiffs first argue that *Johnson*'s "affirmative action defense does not apply to § 1981 claims." Opp. 20. On this point, however, Plaintiffs readily acknowledge they swim against the tide, recognizing that multiple courts around the country have reached the opposite conclusion. *See id.* at 22; *accord* Mot. 19; Br. of EEOC, ECF No. 38-1, at 4-5 (collecting cases). Despite Plaintiffs' speculation that this precedent "appears to be on its last legs," Plaintiffs have not cited a single decision ever reaching a contrary conclusion, recently or otherwise. *See* Opp. 21.

Plaintiffs are also wrong that the Supreme Court somehow implicitly overruled *Johnson* as applied to Section 1981 in a footnote of *Gratz v. Bollinger*, 539 U.S. 244, 275-276 & n.23 (2003). The *Gratz* Court noted only that "purposeful discrimination" would violate both Section 1981 and the Equal Protection Clause, reflecting the fact that neither Section 1981 nor the Equal Protection Clause cover disparate-impact theories of liability. *See id.* at n.23 (citing *Gen. Building Contractors Ass'n v. Pennsylvania*, 458 U.S. 375 (1982)). Thus, immediately after the language at issue, the Court cited the landmark case holding that Section 1981 does not reach disparate-impact liability. *See id.*; *accord* Br. of EEOC 8-9. The Court did not purport to address its longstanding distinction between private and public affirmative action programs, and it has stressed that it "does not normally overturn, or so dramatically limit, earlier authority *sub silentio*."

14

*Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 18 (2000). And it would be passing strange for *Johnson* to read Title VII not to reach affirmative action programs in employment contracts, only for the Court to later hold in a footnote that they were forbidden all along by a statute a century older. *See* Br. of EEOC 9-10.

Nor can Plaintiffs constrain *Johnson* to the employment context. *See* Opp. 23. As the EEOC explains, courts apply *Johnson* beyond employment, including private school admissions. *See* Br. of EEOC 4 (citing *Doe v. Kamehameha Schs.*, 470 F.3d 827 (9th Cir. 2006) (en banc)). That is because *Johnson*'s reasoning centered on the distinction between *public* differential treatment and voluntary, *private* action. *See* 480 U.S. at 629-630. That distinction is just as vital in the grantmaking context. Indeed, if anything, employment contracts are far *more* within the heartland of Title VII and Section 1981 than charitable grants.

Finally, Plaintiffs' case-specific arguments that the challenged grant program does not meet *Johnson*'s requirements for lawful affirmative action are baseless. Importantly, although Plaintiffs suggest that Hello Alice bears the burden on this issue, Opp. 20, *Johnson* could not be clearer that *Plaintiffs* bear the burden of pleading and proving that an asserted voluntary affirmative action program is unlawful, including that it unfairly trammels others' rights or is otherwise insufficiently tailored. 480 U.S. at 626-627. Here, Hello Alice simultaneously offered a comparable grant to "small business owners of all backgrounds." FAC Ex. 1 at 3. Plaintiffs never acknowledge this—much less attempt to reconcile it with their assertion that Hello Alice's program was "entirely closed to white-owned businesses." Opp. 23-24. The Court may therefore conclude that Plaintiffs' allegations are insufficient as a matter of law.

## **CONCLUSION**

For these reasons, Hello Alice's motion should be granted. *See* Mot. 20 (explaining the order in which each argument should be addressed).

Dated: April 19, 2024                                    Respectfully submitted,


                                                         /s/ Michael N. Ungar
                                                         Michael N. Ungar (0016989)
                                                         Dolores Garcia (0085644)
                                                         Halden R. Schwallie (0093665)
                                                         UB GREENSFELDER LLP
                                                         Skylight Office Tower
                                                         1660 West 2nd Street, Suite 1100
                                                         Cleveland, Ohio 44113-1406
                                                         Phone: (216) 583-7000
                                                         Facsimile: (216) 583-7001
                                                         Email: mungar@ubglaw.com
                                                         Email: dgarcia@ubglaw.com
                                                         Email: hschwallie@ubglaw.com

                                                         Neal Kumar Katyal (admitted pro hac vice)
                                                         David M. Foster (admitted pro hac vice)
                                                         Reedy C. Swanson (admitted pro hac vice)
                                                         HOGAN LOVELLS US LLP
                                                         555 Thirteenth Street, NW
                                                         Washington, D.C. 20004
                                                         Phone: (202) 637-5600
                                                         Facsimile: (202) 637-5910
                                                         Email: neal.katyal@hoganlovells.com
                                                         Email: david.foster@hoganlovells.com
                                                         Email: reedy.swanson@hoganlovells.com

                                                         *Attorneys for Defendant*
                                                         *Circular Board Inc.*

## CERTIFICATE OF COMPLIANCE

I, Michael N. Ungar, certify that this case has not been assigned to any track under L.R. 16.2(a).  I further certify that this memorandum complies with the page limitation set forth in L.R. 7.1(f) for unassigned cases.

> */s/ Michael N. Ungar*
> *One of the Attorneys for Defendant*
> *Circular Board Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of April, 2024, a copy of this filing was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

> */s/ Michael N. Ungar*
> *One of the Attorneys for Defendant*
> *Circular Board Inc.*