IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

Nathan Roberts and Freedom Truck Dispatch LLC,

    *Plaintiffs*,

  v.

Progressive Preferred Insurance Company; Progressive Casualty Insurance Company; and Circular Board Inc.,

    *Defendants*.

Case No. 1:23-cv-01597 (PAG)

District Judge Patricia A. Gaughan

**DEFENDANTS PROGRESSIVE PREFERRED INSURANCE COMPANY AND PROGRESSIVE CASUALTY INSURANCE COMPANY'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................................... 1

ARGUMENT ................................................................................................................................2

    I.     Plaintiffs Fail To Demonstrate Article III Standing ........................................................2

    II.    Plaintiffs Fail To State A Claim.......................................................................................6

          A.     Plaintiffs Do Not Plausibly Allege A Contractual Relationship..........................6

          B.     The First Amendment Bars Plaintiffs' Claim Because The Grant
                Program Is Expressive ........................................................................................7

CONCLUSION............................................................................................................................11

i

# **TABLE OF AUTHORITIES**

**Cases**

*16630 Southfield L.P. v. Flagstar Bank, F.S.B.*,
　727 F.3d 502 (6th Cir. 2013) ................................................................................................4

*303 Creative LLC v. Elenis*,
　143 S. Ct. 2298 (2023)........................................................................................................10

*Aiken v. Hackett*,
　281 F.3d 516 (6th Cir. 2002) ............................................................................................2, 3

*Allen v. Wright*,
　468 U.S. 737 (1984).............................................................................................................3

*Allstate Ins. Co. v. Glob. Med. Billing, Inc.*,
　520 F. App'x 409 (6th Cir. 2013) ......................................................................................11

*Braunstein v. Ariz. Dep't of Transp.*,
　683 F.3d 1177 (9th Cir. 2012) .............................................................................................3

*Brown v. Google LLC*,
　2023 WL 5029899 (N.D. Cal. 2023) ...................................................................................6

*Carlisle v. T & R Excavating, Inc.*,
　704 N.E.2d 39 (Ohio App. 1997).....................................................................................6, 7

*City of Los Angeles v. Lyons*,
　461 U.S. 95 (1983)...............................................................................................................3

*Clapper v. Amnesty Int'l*,
　568 U.S. 398 (2013).............................................................................................................5

*Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*,
　6 F.4th 1247 (11th Cir. 2021) ..........................................................................................8, 9

*Cotter v. City of Boston*,
　323 F.3d 160 (1st Cir. 2003)................................................................................................3

*In re Darvocet, Davron & Propoxyphene Products Liab. Litig.*,
　756 F.3d 917 (6th Cir. 2014) ...............................................................................................4

*Edwards v. Woodforrest Nat'l Bank*,
　2012 WL 1906309 (N.D. Ohio 2012)..................................................................................7

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp.*,
　515 U.S. 557 (1995).............................................................................................................9

*McNamara v. City of Chicago*,
 138 F.3d 1219 (7th Cir. 1998) ...................................................................................................3

*R.A.V. v. City of St. Paul*,
 505 U.S. 377 (1992)................................................................................................................8, 9

*Runyon v. McCrary*,
 427 U.S. 160 (1976)....................................................................................................................8

*Thomas v. City of Memphis*,
 996 F.3d 318 (6th Cir. 2021) .....................................................................................................5

*Wisconsin v. Mitchell*,
 508 U.S. 476 (1993)....................................................................................................................9

**Statutes**

42 U.S.C. § 1981..............................................................................................................................1

**INTRODUCTION**

In its opening brief, Progressive demonstrated that (i) Plaintiffs lack Article III standing to seek damages or prospective relief; (ii) Plaintiffs' claim is facially deficient because they challenge a charitable donation, not a contract subject to 42 U.S.C. § 1981; and (iii) Progressive's choice about where to direct charitable donations is expressive conduct protected by the First Amendment. Plaintiffs do not meaningfully meet these arguments in their opposition. Instead, Plaintiffs largely fail to respond to Progressive's arguments or otherwise to grapple with controlling law.

*First*, Plaintiffs assert that their alleged inability to compete for the Grant Program in the past is an injury-in-fact sufficient to give them standing to seek damages. The Sixth Circuit has squarely rejected that argument and held that plaintiffs challenging a race-conscious preference have standing to seek damages only if they allege they would otherwise have received the benefit. Although Plaintiffs ignore it, binding precedent is fatal to their standing to seek damages.

Plaintiffs similarly insist they have standing to seek prospective relief, even though the Grant Program ended before this case was filed, based solely on their allegation—based solely "on information and belief"—that Progressive will offer similar grants at some future time. Plaintiffs ignore settled law that such conclusory allegations are insufficient to satisfy the pleading standard, and they fail to explain how their conclusory and vague allegation demonstrates a certainly impending future injury sufficient to give them standing to seek prospective relief.

*Second*, Plaintiffs insist grant applicants' authorization of the use of their information provides the missing consideration necessary for the application and the grant to be contracts. They base that assertion on an out-of-circuit decision applying California law in a case where the existence of an enforceable contract was undisputed. Plaintiffs ignore that Ohio law—which is

1

controlling on the contract-law question here—requires consideration to have been bargained for *and* reasonably understood by the parties as consideration for the promise. They fail to distinguish authorization for the use of information in connection with an online grant application from any other condition for a gratuitous promise. Neither the grant application nor the grant itself are contracts, and Plaintiffs fail to state a claim.

*Finally*, in resisting Progressive's First Amendment argument, Plaintiffs ignore precedent holding that charitable donations are a form of expressive conduct. They ignore precedent demarcating the line between content-neutral and content-based restrictions. And they simply do not address Progressive's argument that their attempt to apply Section 1981 to Progressive's expressive conduct in this case fails strict scrutiny, thereby conceding the point.

For these reasons and others, discussed below, the FAC should be dismissed for lack of subject-matter jurisdiction or, alternatively, with prejudice for failure to state a claim.

## ARGUMENT

### I. PLAINTIFFS FAIL TO DEMONSTRATE ARTICLE III STANDING.

Plaintiffs lack standing to seek damages or prospective relief, but for different reasons. They lack standing to seek damages because they do not allege that, absent the challenged preference, Freedom Truck Dispatch would have been one of the ten applicants selected (from over 30,000) to be awarded the grant. *See* Progressive Br. 7–8. Plaintiffs insist that their purported "lost ability to compete" for the grant—for which they did not even apply—is alone a "past injury … justifying plaintiffs' request for retrospective relief." Pl. Br. 9. Binding precedent belies that unsupported assertion.

Specifically, in *Aiken v. Hackett*, 281 F.3d 516 (6th Cir. 2002), the Sixth Circuit held that an alleged inability to "compete on equal footing" is the sort of injury that may support standing

2

"to seek *forward-looking* relief to level the playing field," but not retrospective relief. *Id.* at 519 (emphasis added). Plaintiffs lack standing to seek retrospective relief unless they also "allege and show that under 'a race-neutral policy' they would have received the benefit." *Id.* (quoting *Texas v. Lesage*, 528 U.S. 18, 20 (1999)). A past inability to compete for something the plaintiff would not have won is not "an injury in fact because" it is not "an invasion of some interest the law protects." *Id.* This proposition is not controversial.[1]

Plaintiffs fail to grapple with or even acknowledge *Aiken*, even though Progressive cited it. *See* Progressive Br. 7–8. *Aiken* is controlling and defeats Plaintiffs' bid for standing to seek damages. Article III standing does not "extend nationwide to all members of the particular racial groups" allegedly discriminated against: only "persons who are *personally denied* equal treatment" have sustained the sort of concrete and particularized injury Article III requires. *Allen v. Wright*, 468 U.S. 737, 755–56 (1984) (emphasis added).

Plaintiffs also lack standing to seek prospective relief for three, independently sufficient reasons. *First*, Plaintiffs fail to plausibly allege the "real and immediate" threat of future injury necessary for standing to seek prospective relief. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Plaintiffs did not file a lawsuit while the Grant Program was ongoing and attempt to seek immediate relief; they waited until after the Grant Program ended to initiate this lawsuit. *See* FAC

---

[1] *See, e.g.*, *McNamara v. City of Chicago*, 138 F.3d 1219, 1221 (7th Cir. 1998) ("A plaintiff who would have been no better off had the defendant refrained from the unlawful acts of which the plaintiff is complaining does not have standing under Article III of the Constitution to challenge those acts in a suit in federal court."); *Cotter v. City of Boston*, 323 F.3d 160, 166–67 (1st Cir. 2003) ("It is uncontested that had the Department not used race-conscious criteria, it would have only promoted candidates with a score of eighty-five or higher. Because appellants only scored eighty-four, they cannot show standing for damages."); *Braunstein v. Ariz. Dep't of Transp.*, 683 F.3d 1177, 1186–87 (9th Cir. 2012) (no standing to seek damages where plaintiff conceded he would not have won the bid absent the challenged preference).

3

¶¶ 26–28 (Plaintiffs knew about the Grant Program when the application period was open); FAC Ex. 3 (the application period closed June 2, 2023); ECF No. 1 (Plaintiffs commenced this lawsuit on August 16, 2023).

The only allegation on which they base their standing to seek prospective relief is the following vague and conclusory assertion: "On information and belief, Progressive will resume its 'Driving Small Business Forward' grant program (or another program under which Progressive offers only businesses operated by individuals of a specified race the right to compete for grant funds) in the future, and will do so in conjunction with Hello Alice." FAC ¶ 24. That conclusory, on-information-and-belief allegation can and should be summarily disregarded for purposes of assessing Progressive's facial challenge to Plaintiffs' standing allegations. *See, e.g.*, *16630 Southfield L.P. v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013) (conclusory factual allegations asserted "upon information and belief" "are precisely the kinds of conclusory allegations that *Iqbal* and *Twombly* condemned and thus told us to ignore when evaluating a complaint's sufficiency"); *In re Darvocet, Davron & Propoxyphene Products Liab. Litig.*, 756 F.3d 917, 931 (6th Cir. 2014) ("The mere fact that someone believes something to be true does not create a plausible inference that it is true.").[2]

Plaintiffs' attempt to supplement their pleading with an unsubstantiated request for judicial notice about events *in 2022*, *see* Pl. Br. 9, cannot make plausible their allegations about Progressive's activities at some unspecified time "in the future." A threatened future injury "must

---

[2] Plaintiffs' assertion that *16630 Southfield* never condemned allegations made on information and belief, Pl. Br. 13, is baseless. *See In re Darvocet*, 756 F.3d at 931 (summarizing *16630 Southfield* as "finding a series of 'upon information and belief' claims insufficient, because the plaintiffs 'have merely alleged their belief.') (quoting *16630 Southfield*, 727 F.2d at 506).

4

be *certainly impending* to constitute injury in fact." *Clapper v. Amnesty Int'l*, 568 U.S. 398, 409 (2013) (emphasis in original). Neither Plaintiffs' allegations nor their half-hearted request for judicial notice satisfies that standard.

*Second*, Progressive demonstrated through sworn testimony that in fact it will *not* resume the Grant Program or sponsor a similar grant. *See* Progressive Br. 11–12. Progressive further demonstrated that it began planning to expand the 2024 Driving Small Business Forward grant to all eligible small businesses without regard to race or other demographics before this case was filed. Declaration of Gargi Patel Duirk ¶¶ 5–7. As such, even if Plaintiffs' allegations were sufficient to survive Progressive's facial challenge to their standing, Plaintiffs cannot overcome Progressive's factual challenge. That is because Plaintiffs in fact cannot demonstrate a real and immediate threat of future injury and, therefore, lack standing to seek prospective relief.

Plaintiffs' response focuses on the "voluntary cessation" exception to *mootness*. *See* Pl. Br. 12. That exception has no application here. Plaintiffs' challenge to the Grant Program became moot because the Grant Program ended, not because of Progressive's voluntary cessation of ongoing conduct. Progressive's declaration disproves Plaintiffs' separate, on-information-and-belief allegation that Progressive will offer a different grant with race-conscious eligibility criteria in the future—which demonstrates that Plaintiffs *lack standing*. Moreover, Plaintiffs fail to cite any authority applying the "voluntary cessation" exception where, as here, the purported mootness arose from the defendant's *pre-litigation* activities and had nothing to do with any legal proceeding. Those facts alone demonstrate that "there is no reasonable expectation that the alleged violation will recur." *Thomas v. City of Memphis*, 996 F.3d 318, 324 (6th Cir. 2021).

5

## II. PLAINTIFFS FAIL TO STATE A CLAIM.

### A. Plaintiffs Do Not Plausibly Allege A Contractual Relationship.

In the FAC, Plaintiffs asserted that (non-existent) restrictions on the use of grant funds and "goodwill" received from a race-conscious charitable donation provided the consideration necessary to make the grant and the application for it contracts. FAC ¶ 25. Those assertions were meritless, *see* Progressive Br. 13–14, which presumably is why Plaintiffs do not press them in their brief. Instead, Plaintiffs focus entirely on the alleged "benefit" to Progressive of being permitted to use applicants' information "for marketing and other purposes." Pl. Br. 15. That is not consideration under Ohio law.

Tellingly, rather than ground their argument in Ohio law, Plaintiffs rely entirely on *Brown v. Google LLC*, 2023 WL 5029899 (N.D. Cal. 2023), a decision applying *California* law in a case where the existence of a contract was not even disputed. *See id.* at *13. Ohio law is controlling here. And contrary to Plaintiffs' view, "something of value" is not all that is required for that "something" to qualify as consideration under Ohio law. Pl. Br. 16. For starters, there must be an *exchange* of value. *See Carlisle v. T & R Excavating, Inc.*, 704 N.E.2d 39, 43 (Ohio App. 1997) ("To constitute consideration, the benefit or detriment must be 'bargained for.' Something is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise."). Plaintiffs fail to identify anything of value conveyed by Progressive in connection with the *application* for the Grant Program.

In addition, the value exchanged is not consideration unless it was "reasonably understood by the parties as the consideration for the promise." *Id.* at 45. A "requested performance attached to a gratuitous promise is a condition and not consideration … because of the reasonable understanding of the promisor and the promisee that the performance is requested as a condition of the promise and *not as the price or exchange for the promise*." *Id.* (emphasis added). Plaintiffs

6

fail to explain how applicants' voluntary provision of information to Progressive was reasonably understood by either party as consideration. Indeed, especially because the Grant Program was made available on a website, applicants' authorization of the use of their information "was obviously aimed at enabling them to receive a benefit"—the gratuitous grant money. *Id.* at 46. That was the whole point of the application. That is not consideration. *See id.*

Individual Plaintiff Roberts's claim is doubly lacking in the necessary contractual relationship. If the grant were a contract at all, it could only have been between Progressive *and the grant recipient*. Only the business entity was the "Entrant," and only the business entity "Entrant" could receive the grant funds. https://perma.cc/QU33-LQ6H (link provided by Plaintiffs, Pl. Br. 24) (stating, under "Review Criteria and Selection of Grant Recipients," that "Sponsor will award Grants … to *Entrants* whose Entries receive the highest cumulative score (the 'Grant Recipients')."). As this Court held in *Edwards v. Woodforrest National Bank*, 2012 WL 1906309 (N.D. Ohio 2012) (Gaughan, J.), the "owner and founder" of a contracting business cannot state a claim under a purported contract under which the individual did not "personally have rights." *Id.* at *10.

>  **B.** **The First Amendment Bars Plaintiffs' Claim Because The Grant Program Is Expressive.**

Plaintiffs' Section 1981 claims must be dismissed because the First Amendment protects Progressive's decision to limit the Grant Program to Black-owned small businesses. Plaintiffs base their entire opposition to this well-settled principle on a single false premise: that "donating money qualifies as expressive conduct" only in "some circumstances." Pl. Br. 16. That is incorrect. Courts have consistently held that donations are a *form* of expression, which means that donating money

7

qualifies as expressive conduct in all circumstances. Plaintiffs have not identified a single authority to the contrary.

Instead, Plaintiffs rely on false equivalents. Plaintiffs suggest that protecting Progressive's First Amendment right to fund a charitable grant program for Black-owned small businesses would require courts to permit neo-Nazis to refuse to do business with Black-owned suppliers. That slippery-slope argument is illogical. Courts have never held that selecting a supplier is a form of expression, so the First Amendment does not protect a business's decision about where to purchase supplies. Nor have courts held that private school admissions decisions are expressive, so Plaintiffs misplace their reliance on *Runyon v. McCrary*, 427 U.S. 160 (1976), where the Court held that Section 1981, *as applied in that case*, did not violate the plaintiffs' constitutional rights to free association, privacy, or to direct their children's education. *Id.* at 175–79. By contrast, courts have consistently held that choosing where to donate money is expressive. *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247, 1254 (11th Cir. 2021). The First Amendment thus protects Progressive's right to express a point of view by sponsoring a grant program for Black-owned businesses.

The cases Plaintiffs cite underscore the critical distinction Plaintiffs try to sidestep. In *R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992), the Supreme Court explained that content-neutral regulations, which are permissible under the First Amendment, are those that address an "intolerable (and socially unnecessary) *mode* of expressing *whatever* idea the speaker wishes to convey." *Id.* at 393 (emphases in original). But content-based regulations, which the First Amendment forbids, are those that prohibit organizations from using modes of expression to communicate particular messages, even messages of "racial, gender, or religious intolerance,"

8

because "[s]electivity of this sort creates the possibility [of] seeking to handicap the expression of particular ideas." *Id.* at 393–94.[3]

Thus, Plaintiffs' suggestion that their claims do "not target conduct on the basis of its expressive content" misses the whole point. Pl. Br. 17. Progressive's expression is precisely what Plaintiffs target. Plaintiffs do not argue that operating a grant program—a particular *mode* of expression—is generally unlawful. Indeed, Plaintiffs appear to acknowledge that expanding the Grant Program to include small businesses from all backgrounds would moot their claims. Plaintiffs' challenge is therefore *not* content-neutral. Plaintiffs specifically target Progressive's selection of its grantees, arguing that Progressive's decision to limit grants to only Black-owned businesses was unlawful. Because courts have consistently recognized that selecting grantees is expressive—because the selection of a grantee conveys a point of view—Plaintiffs' claims *necessarily do* target Progressive's expression, and the First Amendment prohibits the content-based relief they seek. *See Coral Ridge*, 6 F.4th at 1254–55 (Amazon "engage[d] in expressive conduct when it decide[d] which charities to support" through its AmazonSmile program"); *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp.*, 515 U.S. 557 (1995) (forcing an

---

[3] Plaintiffs also cite *Wisconsin v. Mitchell*, 508 U.S. 476, 487 (1993), where the Court held that a Wisconsin statute enhancing criminal sentences for race-based violent crimes does not violate the First Amendment. This case is inapposite for the same reasons: selecting the victim of a violent crime is certainly not protected expressive conduct, whereas choosing where to donate money is always expressive, so lawsuits that attempt to infringe on an organization's decision about where to donate money do indeed target expression.

9

organization to permit "one banner" from an LGBTQ+ organization in its parade would change the parade's expressive content).

Plaintiffs fail to persuasively distinguish *303 Creative LLC v. Elenis*, 143 S. Ct. 2298 (2023), for the same reason. Plaintiffs acknowledge that in *303 Creative*, the Supreme Court held that enforcing Colorado's antidiscrimination law to compel a designer to design wedding websites for same-sex couples would violate her First Amendment rights because designing wedding websites is expressive. Even though Colorado's antidiscrimination law was generally a content-neutral regulation that applied to commercial activity, Plaintiffs agree with the Supreme Court that the First Amendment barred its application to the wedding website designer's expressive conduct. Plaintiffs argue that *303 Creative* is nevertheless inapplicable here because "[Section] 1981 does not compel the defendants to say or refrain from saying anything. It merely prohibits them from *doing* something: namely, from discriminating on the basis of race." Pl. Br. 19. Here, too, Plaintiffs ignore the well-settled proposition that donating money is no less expressive than designing a wedding website. Applying Section 1981 to prohibit Progressive from directing its donations to Black-owned businesses would indeed refrain Progressive's expression in precisely the manner the Supreme Court held impermissible in *303 Creative*.

Finally, Plaintiffs do not even attempt to argue that they can satisfy the "strict scrutiny" standard that would apply even if their claims did not violate the First Amendment *per se*. Pl. Br. 18–19. As Progressive explained, even if Plaintiffs' claim does not violate the First Amendment *per se*, to satisfy strict scrutiny, Plaintiffs bear the burden of identifying a compelling interest that would justify applying Section 1981 to restrict the Grant Program. *See id.* Plaintiffs do not attempt to meet that burden or otherwise dispute that their Section 1981 claims fail strict

scrutiny, thereby waiving the argument and conceding the point. *See, e.g.*, *Allstate Ins. Co. v. Glob. Med. Billing, Inc.*, 520 F. App'x 409, 412 (6th Cir. 2013) (affirming dismissal of complaint because plaintiff failed to address arguments in motion to dismiss and therefore waived any arguments in opposition) (citing *Humphrey v. Attorney General*, 279 F. App'x 328, 331 (6th Cir. 2008) ("[W]here, as here, plaintiff has not raised arguments in the district court by virtue of his failure to oppose defendants' motions to dismiss, the arguments have been waived.")).

## CONCLUSION

For all of the reasons set forth above, as well as in Progressive's opening brief, the Complaint should be dismissed for lack of subject-matter jurisdiction or, alternatively, with prejudice for failure to state a claim.

Dated: April 19, 2024 					Respectfully submitted,

<div style="margin-left: 3em;">

s/ *Michael J. Ruttinger*
Michael J. Ruttinger (0083850)
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113
Telephone:   216.696.4456
Facsimile:   216.592.5009
E-mail: michael.ruttinger@tuckerellis.com

Stephanie Schuster*
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone:   202.373.6595
Facsimile:   202.739.3001
E-mail: stephanie.schuster@morganlewis.com

Emily Cuneo DeSmedt*
MORGAN, LEWIS & BOCKIUS LLP
502 Carnegie Center
Princeton, NJ 08540
Telephone:   609.919.6673
Facsimile:   877.432.9652
E-mail: emily.desmedt@morganlewis.com

Hanna E. Martin*
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
Telephone:   212.309.6716
Facsimile:   212.309.6000
E-mail: hanna.martin@morganlewis.com

*admitted *pro hac vice*

*Attorneys for Progressive Preferred Insurance Company and Progressive Casualty Insurance Company*

</div>

12

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(f)**

I hereby certify that this brief complies with the track and page-number limitations required by Local Rule 7.1(f) for cases that have not yet been assigned to a track.

/s/ Michael J. Ruttinger
MICHAEL J. RUTTINGER (0083850)
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113-7213
Telephone:  216.592.5000
Facsimile:  216.592.5009
E-mail:  michael.ruttinger@tuckerellis.com

*One of the Attorneys for Defendants Progressive Preferred Insurance Company and Progressive Casualty Insurance Company*

**CERTIFICATE OF SERVICE**

    I hereby certify that, on April 19, 2024, a copy of the foregoing Defendants Progressive Preferred Insurance Company and Progressive Casualty Insurance Company's Motion to Dismiss was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Michael J. Ruttinger
MICHAEL J. RUTTINGER (0083850)
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113-7213
Telephone:  216.592.5000
Facsimile:  216.592.5009
E-mail:  michael.ruttinger@tuckerellis.com

*One of the Attorneys for Defendants Progressive Preferred Insurance Company and Progressive Casualty Insurance Company*

14