UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISON

| | | |
|---|---|---|
| Nathan Roberts, et al., | ) | CASE NO. 1:23 CV 1597 |
| | ) | |
| Plaintiffs, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| Progressive Preferred Insurance Co., et al., | ) | |
| | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendants. | ) | |

## INTRODUCTION

This matter is before the Court upon Defendants Progressive Preferred Insurance Company and Progressive Casualty Insurance Company's Motion to Dismiss (Doc. 34) and Defendant Circular Board Inc.'s Motion to Dismiss Plaintiffs' First Amended Class-Action Complaint, or to Stay and Compel Arbitration Under the Federal Arbitration Act, or to Transfer Venue Under 28 U.S.C. § 1404(A) (Doc. 35). This case alleges a violation of 42 U.S.C. § 1981. For the reasons that follow:

1. Defendants Progressive Preferred Insurance Company and Progressive Casualty Insurance Company's Motion to Dismiss (Doc. 34) is granted for lack of subject matter jurisdiction; and

2. Defendant Circular Board Inc.'s Motion to Dismiss Plaintiffs' First Amended Class-Action Complaint, or to Stay and Compel Arbitration Under the Federal Arbitration

Act, or to Transfer Venue Under 28 U.S.C. § 1404(A) (Doc. 35) is granted for lack of subject matter jurisdiction.

**FACTS**

Plaintiffs Nathan Roberts ("Roberts") and Freedom Truck Dispatch LLC ("Freedom Truck Dispatch") (collectively, "Plaintiffs") bring this lawsuit against defendants Progressive Preferred Insurance Company ("Progressive Preferred"), Progressive Casualty Insurance Company ("Progressive Casualty") (collectively, "Progressive"), and Circular Board Inc. ("Circular Board") (collectively with Progressive, "Defendants"). For purposes of ruling on the pending motions, all well-plead factual allegations in Plaintiffs' First Amended Class-Action Complaint ("Amended Complaint") (Doc. 32) are presumed true.

Roberts identifies as a white man and is a citizen of Ohio. Freedom Truck Dispatch is an Ohio limited-liability company with its principal place of business in Cleveland, Ohio. Roberts is the sole owner and sole member of Freedom Truck Dispatch. Progressive Preferred and Progressive Casualty are corporations organized under the laws of Ohio with principal places of business in Ohio. Circular Board is a corporation organized under the laws of Delaware. Circular Board operates Hello Alice, which is an online resource platform.

Progressive Preferred provides commercial insurance coverage to delivery trucking companies. Freedom Truck Dispatch, through Roberts, obtained a commercial policy from Progressive Preferred on October 17, 2022. On May 24, 2023, Progressive Preferred emailed Roberts about a grant opportunity for their commercial-trucking small-business owners (the "2023 Grant"). According to Plaintiffs' allegations, the 2023 Grant was offered through Progressive Casualty in conjunction with Hello Alice.

2

According to the email Roberts received, "Black-owned small businesses" were eligible for one of ten available 2023 Grants "to use toward the purchase of a commercial vehicle." (Doc. 32-1.) To receive the 2023 Grant, businesses were required to complete an application. To be eligible for consideration of the 2023 Grant, applicants had to meet the following criteria:

1. Be a for-profit business majority (51%+) owned and operated by a Black-identifying entrepreneur(s);

2. Have 10 or fewer employees and less than $5M in annual gross revenue;

3. Have a demonstrated need for a qualifying commercial vehicle to run your business and a clear plan for growth as a result of this vehicle purchase; and

4. Not be an independent contractor whose primary business is for a rideshare service such as Uber or Lyft, or third-party food delivery such as UberEats, DoorDash, PostMates, Grubhub, Instacart, etc.

(Doc. 32 ¶ 18 (citing Doc. 32-3, at 4).) Further, a website setting forth terms and conditions included one other eligibility requirement: "Heavy trucks with Gross Vehicle Mass (GVM) over 26,000 lbs. and vehicles designed principally for use off public roads (e.g. bulldozers, farm machinery, forklifts, etc.) are not considered qualifying commercial vehicles for this program."[1] By submitting an application, applicants agreed to certain terms and conditions, including terms that allow the Defendants to use an applicant's information for cross-selling and other marketing purposes. The terms also give Defendants a license for their commercial use of the information. Additionally,

---

[1] Plaintiffs allege on information and belief that "the black-owned business criterion was the only one of these eligibility criteria that applicants had to satisfy in order to compete for the grant funds: Progressive and Hello Alice were both able and willing to excuse non-compliance with the other purported requirements." (Doc. 32 ¶ 20.)

3

ultimate recipients of the 2023 Grant agreed to use the money toward the purchase of a qualifying commercial vehicle.

Roberts alleges that after receiving the email, he did not realize the 2023 Grant was available only for black-owned small businesses. Roberts opened the application and began filling it out. At some point, Roberts "came to a part of the application that made clear that the grants were available only to black-owned businesses, so he closed the application and did not apply because he is white and his business is white-owned." (Doc. 32 ¶ 28.) Plaintiffs allege that "Roberts, on behalf of himself and Freedom Truck Dispatch LLC, wished to apply for the grant and was 'able and ready to apply[,]'" and that "Freedom Truck Dispatch, satisfied all of the purported eligibility requirements except for the requirement that the applicant be a black-owned business." (*Id.* ¶¶ 29–30.) The 2023 Grant application window closed on June 2, 2023.

Plaintiffs filed this action on August 16, 2023, alleging that the Defendants' actions violate 42 U.S.C. § 1981. Defendants move to dismiss Plaintiffs' Amended Complaint for lack of subject matter jurisdiction or, in the alternative, failure to state a claim. Defendants alternatively move to compel arbitration. Further, Circular Board also moves in the alternative to transfer this action to the Northern District of California. Plaintiffs oppose the motions.

**STANDARD OF REVIEW**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges a court's subject matter jurisdiction. "Federal courts are courts of limited jurisdiction" and, "[u]nlike state trial courts, they do not have general jurisdiction to review questions of federal and state law." *See Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468, 474 (6th Cir. 2008). Instead, their authority is limited to deciding "cases that the Constitution and Congress have empowered them to resolve." *Id.*

Consequently, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citation omitted).

Rule 12(b)(1) motions may challenge jurisdiction facially or factually. Fed. R. Civ. P. 12(b)(1); *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). In a facial attack, the challenger asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction. *See In re Title Ins. Antitrust Cases*, 702 F. Supp. 2d 840, 884–85 (N.D. Ohio 2010). By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction. *Id.*

A challenge to subject matter jurisdiction may be considered a factual attack when the attack relies on extrinsic evidence, as opposed to the pleadings alone, to contest the truth of the allegations. *Id.* "[A] factual attack [to standing] raises a factual controversy requiring the district court to weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist." *Mitchell v. BMI Fed. Credit Union*, 374 F. Supp. 3d 664, 667 (S.D. Ohio 2019) (internal quotation marks omitted). The court may allow "affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

**ANALYSIS**

Defendants present several reasons in their respective motions for why Plaintiffs' claims should not proceed before this Court. Chiefly, all Defendants contend that Plaintiffs' claims should be dismissed because Plaintiffs lack standing and, therefore, this Court lacks subject matter jurisdiction. For the reasons discussed below, this Court agrees. Accordingly, the Court cannot

5

address any of the alternative arguments raised in Defendants' motions.[2] *State ex rel. Tenn. Gen. Assembly v. United States*, 931 F.3d 499, 507 (6th Cir. 2019) ("Standing is a jurisdictional requirement. If no plaintiff has standing, then the court lacks subject-matter jurisdiction. When a court lacks jurisdiction, it cannot proceed at all in any cause." (internal quotation marks and citations omitted)).

Standing is an essential component of the case or controversy requirement of Article III, section 2 of the United States Constitution. Standing "ensure[s] that federal courts do not exceed their authority" and "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

Supreme Court precedent has established that the "irreducible constitutional minimum" of standing consists of three elements: (1) the plaintiff must have suffered an "injury in fact," which is concrete and particularized, and actual or imminent, not conjectural or hypothetical; (2) the injury must be caused by the defendant; and (3) it must be likely, rather than speculative, that the injury will be redressable by the court. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements. *FW/PBS, Inc.*

---

[2] In addition to their contention that Plaintiffs lack standing to maintain their claims, all Defendants contend that Plaintiffs' claims should be dismissed because Plaintiffs have failed to state a claim. Progressive Preferred Insurance alternatively contends that, at a minimum, Plaintiffs have failed to allege any claim against it. All Defendants contend that applying 42 U.S.C. § 1981 would violate Defendants' rights under the First Amendment. Circular Board also contends that the 2023 Grant is a voluntary, private affirmative action program under *Johnson v. Transportation Agency, Santa Clara County*, 480 U.S. 616 (1987). In the event this Court does not dismiss Plaintiffs' claims, all Defendants alternatively move to compel arbitration. Lastly, in the event this Court neither dismisses Plaintiffs' claims nor compels arbitration, Circular Board alternatively moves to transfer this action to the Northern District of California.

*v. City of Dallas*, 493 U.S. 215, 231 (1990).³ When a case "is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Spokeo*, 578 U.S. at 338 (quoting *Warth*, 422 U.S. at 518). To determine whether the plaintiff has met this burden, the court must ask itself whether, "[a]ccepting as true the complaint's factual allegations (as opposed to its legal conclusions)," the plaintiff "asserts a 'plausible claim' that [he or she] has standing." *Ass'n of Am. Physicians & Surgeons v. United States Food & Drug Admin.*, 13 F.4th 531, 543–44 (6th Cir. 2021) (applying the plausibility test articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) to a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1)).

In their opposition to Defendants' pending motions, Plaintiffs argue that they were injured due to their "inability to compete on an equal footing in the [2023 Grant] process" because Freedom Truck Dispatch did not satisfy the 2023 Grant's race-based eligibility requirement.⁴ (Doc. 43, at 14–15.) Plaintiffs contend that their "lost ability to compete constitutes a past injury—one justifying the

---

³ "That a suit may be a class action . . . adds nothing to the question of standing[.]" *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976). Plaintiffs who represent a class must still "allege and show" the three constitutional elements of standing. *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)). *See also Horne v. Flores*, 557 U.S. 433, 446–47 (2009) ("[T]he critical question is whether at least one petitioner has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction." (internal quotation marks and citation omitted)).

⁴ Plaintiffs contend, without citing any authority, that the 2023 Grant is comprised of two distinct contracts (the "Competition Contract" and the "Final Grant"). Because the Court does not have subject matter jurisdiction over Plaintiffs' claims, it cannot address the merits of whether the 2023 Grant is a contract—let alone whether it is two contracts. Even so, Plaintiffs have not offered any legitimate reason as to how this issue—whether the 2023 Grant is a contract (or two contracts)—has any impact on the issue of standing.

[P]laintiffs' request for retrospective relief[]" and "it also constitutes an ongoing injury supporting a claim for prospective relief." (*Id.* at 15.)[5]

A plaintiff must have standing for each claim pursued in federal court. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). The Sixth Circuit has articulated that whether plaintiffs have alleged a sufficient injury to satisfy Article III standing depends on the relief that plaintiffs seek. *Aiken v. Hackett*, 281 F.3d 516, 519 (6th Cir. 2002), *cert denied Ashton v. City of Memphis*, 537 U.S. 817 (2002).[6] "If the plaintiffs allege that a racial preference cost them some benefit . . . those plaintiffs may have alleged an injury in fact." *Id.* at 519. "But if those same plaintiffs cannot also allege and show that 'under a race-neutral policy' they would have received the benefit, those plaintiffs have not

---

[5] That Plaintiffs did not apply for the 2023 Grant does not itself doom their claim because a plaintiff need not submit a formal application where that application would be merely a "futile gesture." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 365–66 (1977); *see also Sporhase v. Nebraska ex rel. Douglas*, 458 U.S. 941, 944, n.2 (1982). Plaintiffs did not explicitly allege that it would have been futile to apply for the 2023 Grant but, construing the factual allegations of the Amended Complaint in the light most favorable to Plaintiffs, this Court finds that an application would have been futile because, regardless of whether or not they satisfied the other requirements, Plaintiffs did not satisfy the 2023 Grant's requirement that applicants "be a for-profit business majority (51%+) owned and operated by a Black-identifying entrepreneur(s)."

[6] In *Aiken*, the Sixth Circuit addressed allegations that a government program violated the Equal Protection Clause. Here, no party contends that the reasoning found in Equal Protection case law (such as in *Aiken*) does not apply to challenges brought under Section 1981. In fact, other courts, including the Supreme Court, have applied Equal Protection case law to Section 1981 challenges, pointing to their common history and purpose. *See, e.g.*, *Gratz v. Bollinger*, 539 U.S. 244, 276 n.23 (2003) ("[P]urposeful discrimination that violates the Equal Protection Clause of the Fourteenth Amendment will also violate § 1981." (citing *Gen. Building Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 389–90, (1982)). Even further, in their response to Defendants' motions, Plaintiffs rely on a case that applied Equal Protection case law to a Section 1981 challenge. *Am. All. for Equal Rights v. Fearless Fund Mgmt., LLC*, 2023 WL 6295121, at *4 (N.D. Ga. Sept. 27, 2023) ("[N]o authority before the Court suggests that the 'inability to compete on equal footing' reasoning from *Gratz* should not extend to challenges to affirmative action programs brought under § 1981.").

alleged an injury in fact because they have not alleged an invasion of some interest that the law protects." *Id.* (citing *Texas v. Lesage*, 528 U.S. 18, 20 (1999)). "Those plaintiffs lack Article III standing." *Id.* (citing among authority *Ne. Fla. Chapter, Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993)).

"If, however, the plaintiffs allege some kind of on-going constitutional violation and seek forward-looking relief to level the playing field" *id.*, then plaintiffs "'need not allege that [they] would have obtained the benefit but for the [unlawful] barrier in order to establish standing'" to seek prospective relief. *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 211 (1995) (quoting *Ne. Fla. Chapter, Associated Gen. Contractors of Am.*, 508 U.S. at 667). Plaintiffs seeking prospective relief "need only show that the racial preference hinders their ability to 'compete on an equal footing.'" *Aiken*, 281 F.3d at 519. To do so, plaintiffs must allege that they were "able and ready" to apply for the program or benefit but that a discriminatory policy prevents it from doing so on an equal basis. *Beztak Land Co. v. City of Detroit*, 298 F.3d 559, 566 (6th Cir. 2002) (citing *Ne. Fla. Chapter, Associated Gen. Contractors of Am.*, 508 U.S. at 666); *see also Carney v. Adams*, 592 U.S. 53, 63 (2020) (reiterating that a plaintiff challenging an allegedly discriminatory process must show that he "was 'able and ready' to apply for [the benefit] in the reasonably foreseeable future").

Here, Plaintiffs fail to allege any injury in fact that would support their standing to seek either retrospective or prospective relief.

**1. Retrospective Relief – Damages**

Plaintiffs contend that their claim for retrospective relief is based on their alleged inability to compete on equal footing for the 2023 Grant. Plaintiffs go so far as to suggest that they do not need to allege they would have obtained one of the 2023 Grants to have standing to seek retrospective

9

damages. Plaintiffs maintain that all they need to show is that they were ready and able to apply for the 2023 Grant. In doing so, Plaintiffs completely ignore highly relevant and persuasive Sixth Circuit case law in *Aiken*. Further, Plaintiffs do not point to any authority that supports their position or suggests that *Aiken* should not be applied here.[7]

At most, Plaintiffs cite a decision from the Northern District of Georgia, which resolved a motion for a preliminary injunction. *Fearless Fund Mgmt., LLC*, 2023 WL 6295121, at *1. In *Fearless Fund*, the district court found that the plaintiffs had established an injury based on their "inability to compete on equal footing (and not their ultimate inability to obtain the grant)." *Id.* at *4. However, the plaintiffs in *Fearless Fund* sought only *prospective* relief related to defendants' ongoing grant program, i.e., declaratory judgment that the grant violated Section 1981 and injunctive relief barring the defendants from continuing their grant program. *Id.* at *1. Nothing in *Fearless Fund* supports Plaintiffs' position here that they can establish standing to recover *retrospective* damages based on their alleged inability to compete for the 2023 Grant without also alleging "that 'under a race-neutral policy' they would have received the benefit." *Aiken*, 281 F.3d at 516.[8]

---

[7] In fact, as mentioned above, in their response to Defendants' motions, Plaintiffs rely on a case that applied Equal Protection case law to a Section 1981 challenge. (*E.g.*, Doc. 43, at 16 (citing *Fearless Fund Mgmt., LLC*, 2023 WL 6295121, at *4).)

[8] At least one other circuit has explicitly agreed with *Aiken*'s interpretation of Supreme Court precedent, holding that "[the] standing inquiry on [a] claim for damages therefore asks whether [the plaintiff] can demonstrate that, under a race-neutral policy, he would have received the benefit for which he now seeks compensation." *Donahue v. City of Boston*, 304 F.3d 110, 118–19 (1st Cir. 2002) ("We think that *Lesage* is a clear cue from the Supreme Court that we cannot apply identical standing analyses to claims for damages and claims for prospective relief. It is equally apparent, in light of *Lesage*, that the "equal footing" analysis is applied only in claims for the latter type of relief.").

Accordingly, the Court sees no reason why the Sixth Circuit's reasoning in *Aiken* should not apply to Plaintiffs' Section 1981 challenge. Applying *Aiken*, the Court finds that Plaintiffs lack standing to seek retrospective relief because Plaintiffs do not allege anywhere in their Amended Complaint that Freedom Truck Dispatch would have received one of the ten 2023 Grants under a race-neutral policy. Plaintiffs do not refute this missing allegation. Instead, as noted above, they merely insist—without citing any authority—that it is unnecessary.[9] (Doc. 43, at 16.)

Even if this Court were to accept Plaintiffs' injury theory that they can seek retrospective relief for their inability to compete on equal footing for the 2023 Grant without also alleging that they would have otherwise received the 2023 Grant, Plaintiffs have not explained how compensatory damages would redress their inability to compete for a grant they do not allege they would have received. Compensatory damages aim to place an injured person in the position they would have been in had the offensive conduct never occurred. Compensatory damages are not intended to place a plaintiff in a better position than they would have been in had the offensive conduct not occurred. *E.g.*, *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418–19 (1975) ("'[T]he general rule is, that when a wrong has been done, and the law gives a remedy, the compensation shall be equal to the injury. The latter is the standard by which the former is to be measured. The injured party is to be placed, as near as may be, in the situation he would have occupied if the wrong had not been committed.'"

---

[9] There may be cases where a plaintiff alleges that he or she would have received a benefit under a race-neutral policy, but the ultimate disposition of that allegation is too fact intensive to be resolved on a motion to dismiss. Here, however, Plaintiffs have not alleged in their Amended Complaint that they would have received one of the 2023 Grants under a race-neutral policy. Plaintiffs, therefore, have clearly failed to establish standing to seek retrospective relief and their claim is properly dismissed on a motion to dismiss.

11

(quoting *Wicker v. Hoppock*, 6 Wall. 94, 99 (1867)); *see also Smith v. Heath*, 691 F.2d 220, 226 (6th Cir. 1982) (citing *Zarcone v. Perry*, 572 F.2d 52, 55 (2d Cir. 1978) ("[T]here is no logical reason why general principl[]es of damages should not apply to a civil rights action.")).

Awarding compensatory damages to plaintiffs for their inability to compete for a benefit that they would not have otherwise received would put those plaintiffs in a better position than had the discrimination not occurred. Accordingly, the more appropriate way to redress a plaintiff's inability to compete on equal footing is to remove the barrier—*i.e.*, prospective relief. It is, thus, not surprising that the cases Plaintiffs cite that address standing to challenge alleged violations of Section 1981 seek either prospective relief exclusively or damages based on allegations that the plaintiff would have received the at-issue benefit. *E.g.*, *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181 (2023) (declaratory and injunctive relief); *Fearless Fund Mgmt., Inc.*, 2023 WL 6295121, at *1 (same); *Gratz*, 539 U.S. at 262 (declaratory and injunctive relief and damages based on allegation that "minority applicant with his qualifications would have been admitted").[10]

For all the aforementioned reasons, this Court lacks subject matter jurisdiction to hear Plaintiffs' claim for retrospective relief and it must be dismissed.

---

[10] The same is true for the cases cited in the Brief of Equal Protection Project of the Legal Insurrection Foundation as Amicus Curie in Support of Plaintiffs. (Doc. 48, at 12 (citing *Perrea v. Cincinnati Pub. Sch.*, 709 F. Supp. 2d 628, 639–40 (S.D. Ohio 2012) (addressing plaintiff's standing to seek declaratory relief); *Rogers v. Windmill Pointe Vill. Club Ass'n, Inc.*, 967 F.2d 525, 528 (11th Cir. 1992) (discussing injury for purposes of issuing a preliminary injunction); *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 636 (2d Cir. 2020) (same); *Ass'n for Fairness in Bus., Inc. v. New Jersey*, 82 F. Supp. 2d 353, 363 (D.N.J. 2000) (same); *Vitolo v. Guzman*, 999 F.3d 353, 361 (6th Cir. 2021) (same)).)

### 2. Prospective Relief – Declaratory Judgment and Injunction

Plaintiffs likewise fail to allege any injury to support their standing to seek prospective relief. "[W]hen seeking declaratory and injunctive relief, a plaintiff must show actual present harm or a significant possibility of future harm[.]" *Grendell v. Ohio Supreme Court*, 252 F.3d 828, 832 (6th Cir. 2001) (quoting *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997)). As an initial matter, Plaintiffs do not allege any risk of present harm. Plaintiffs do not allege that when they filed this lawsuit, any grants were being offered by Defendants for which Plaintiffs were "able and ready" to apply. Plaintiffs allege that they were "able and ready" to apply for the 2023 Grant (*see* Doc. 32 ¶ 29), but the 2023 Grant's application window closed on June 2, 2023, and Plaintiffs did not file their original complaint until August 16, 2023. Plaintiffs cannot seek prospective relief for the now-closed 2023 Grant.

Further, Plaintiffs fail to allege any facts that suggest Progressive will offer the 2023 Grant, as challenged, in the reasonably foreseeable future. In fact, Progressive avows in a declaration attached to its motion that it does not plan to offer a grant with race-based eligibility criteria in the future. To be sure, Progressive's 2024 grant program, which it declares was planned before Plaintiffs filed this lawsuit, does not include any race-based eligibility criteria. (Doc. 34-1 ¶ 7 ("[T]he 2024 Program will . . . be open to eligible small businesses of all demographic backgrounds. Progressive does not plan to sponsor grants in the future that include race- or other demographic-based eligibility criteria.").) In response, Plaintiffs point only to their allegation in the Amended Complaint that "[o]n information and belief, Progressive will resume its "Driving Small Business Forward" grant program (or another program under which Progressive offers only businesses operated by individuals of a

specified race the right to compete for grant funds) in the future, and will do so in conjunction with Hello Alice." (Doc. 32 ¶ 24.)

Plaintiffs bear the burden of establishing standing. As such, in the face of Progressive's declaration that its 2024 grant program will not consider race, and that it does not plan to include a race- or other demographic-based eligibility criteria in the future, Plaintiffs must point to some evidence that suggests otherwise. Plaintiffs have not. Plaintiffs' conclusory allegations based on information and belief are not enough to overcome Progressive's factual attack to standing.[11]

Plaintiffs attempt to save their claim for prospective relief by alleging that Progressive and Circular Holdings will offer other "similar" grants "in the future." (Doc. 32 ¶ 32.) But Plaintiffs have not alleged any facts that suggest they would otherwise be eligible or "able and ready" to apply for any "similar" grant. Plaintiffs point to different grants offered by Defendants to "illustrate the [D]efendants' commitment to supporting" "grants for which only businesses run by non-whites are eligible." (Doc. 43, at 19.) But the application deadlines for these other grant programs passed before Plaintiffs filed their complaint in this case, and Plaintiffs do not allege that any of the programs are offered on an ongoing basis.

---

[11] Plaintiffs contend that Progressive's factual challenge to standing is an attempt to argue that Plaintiffs' claims are moot because of voluntary cessation—which is a "heavy" burden for Progressive to meet. *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 767 (6th Cir. 2019). Plaintiffs' contention is misguided. Plaintiffs bear the burden of establishing standing *at the time they filed suit*. Because Plaintiffs have not established that there was any grant with allegedly discriminatory terms for which they were otherwise able and ready to apply at the time their initial complaint was filed, mootness by voluntary cessation is irrelevant. *See Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 513, 525 (6th Cir. 2001) ("[S]tanding concerns only whether a plaintiff has a viable claim that a defendant's unlawful conduct 'was occurring at the time the complaint was filed,' while mootness addresses whether that plaintiff continues to have an interest in the outcome of the litigation." (internal citations omitted)).

Notwithstanding that fact, Plaintiffs have not alleged that they are "able and ready" to apply or are even otherwise eligible for any of these other grant programs. As an example, Plaintiffs attach an information sheet concerning a "Democratizing the Friends and Family Grant (New York)" (Doc. 32-5) as evidence that Plaintiffs face future injury from grants that Circular Holdings may offer. But that particular grant was open only to a "resident of NYC (defined as residing within the official zip codes of the five boroughs of Bronx, Brooklyn, Manhattan, Queens, and/or Staten Island[,]" whose business was, likewise, located and registered in NYC. (*Id.* at 5–6.) By Plaintiffs' own allegations, Roberts is a resident of Ohio and Freedom Truck Dispatch is an Ohio limited liability company with its principal place of business in Ohio. (Doc. 32 ¶¶ 4–5.) Plaintiffs cannot be "able and ready" to apply for a grant that they were not eligible for even without a race-based eligibility requirement.

Plaintiffs also point to a different grant offered by Progressive in 2022 as some supposed evidence that Progressive "will continue offering racially exclusionary grants for which the plaintiffs will be denied the right to compete." (Doc. 43, at 15.) Plaintiffs do not allege that they were otherwise able and ready to apply for the grant offered in 2022. Plaintiffs do not allege that Progressive ever offered the 2022 grant again or that the 2022 grant had the same terms as the 2023 Grant that Plaintiffs challenge. Plaintiffs also do not allege that Progressive has a history of offering the 2023 Grant. Rather, the record before the Court suggests that the Grant, as challenged, was offered as a one-time opportunity in 2023.

Plaintiffs' claim for prospective relief based on these hypothetical, future grants—that Plaintiffs may or may not be eligible for—amounts to nothing more than a generalized grievance about Defendants' programs. The Supreme Court has "repeatedly held that such a 'generalized grievance,' no matter how sincere, is insufficient to confer standing." *Hollingsworth v. Perry*, 570

15

U.S. 693, 706 (2013). "A litigant 'raising only a generally available grievance . . . claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy.'" *Id.* (quoting *Lujan*, 504 U.S. at 573–74) (citing *Lance v. Coffman*, 549 U.S. 437, 439 (2007) (per curiam) ("Our refusal to serve as a forum for generalized grievances has a lengthy pedigree.")).

For all the aforementioned reasons, Plaintiffs lack standing to seek any prospective relief concerning either the 2023 Grant (which ended before Plaintiffs filed this suit) or unnamed, hypothetical future grants. Without standing, this Court lacks subject matter jurisdiction to hear Plaintiffs' claim for prospective relief and it must be dismissed.[12]

---

[12] In its motion, Circular Holdings argues that Plaintiffs lack standing because Plaintiffs failed to allege that any injury is "fairly traceable to the challenged conduct of the defendant." (Doc. 35, at 15–19.) The Court need not consider this issue because the Court has determined that Plaintiffs lack standing due to their failure to allege any injury in fact.

**CONCLUSION**

For the foregoing reasons, this Court lacks subject matter jurisdiction over Plaintiffs' claims. Accordingly, Defendants Progressive Preferred Insurance Company and Progressive Casualty Insurance Company's Motion to Dismiss (Doc. 34) is GRANTED and Defendant Circular Board Inc.'s Motion to Dismiss Plaintiffs' First Amended Class-Action Complaint, or to Stay and Compel Arbitration Under the Federal Arbitration Act, or to Transfer Venue Under 28 U.S.C. § 1404(A) (Doc. 35) is GRANTED.

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated:  5/21/24